**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JOHN BRDA,<br>GEORGIOS PALIKARAS,<br><br>Defendants. | 24 Civ. 4806 (KPF)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO TRANSFER VENUE**

Dated:  September 4, 2024

Respectfully submitted,

/s/ *Patrick Disbennett*
Patrick Disbennett (*pro hac vice*)
Christopher Rogers (*pro hac vice*)
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Tel: 817-978-3821
disbennettpa@sec.gov
rogerschri@sec.gov

i

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................iii-v

I.     PRELIMINARY STATEMENT .........................................................................1

II.    RELEVANT BACKGROUND .........................................................................3

     A.  Relevant Allegations Against Defendants and Locations of Operative Facts .................3

     B.  Background Relevant to Certain Convenience Factors ....................................5

III.   ARGUMENTS & AUTHORITIES .....................................................................7

     A.  The Convenience of the Parties Weighs Against Transfer .................................8

     B.  The Means of the Parties Factor is Neutral ................................................10

     C.  The Availability of Process to Compel Unwilling Witnesses Factor is Neutral.............10

     D.  The E.D. Texas is Not More Convenient for the Relevant Non-Party Witnesses .........11

     E.  The Locus of Operative Facts Does Not Favor Transfer .................................13

     F.  The Location of Relevant Documents Factor is Neutral .................................17

     G.  The Public Interest Factors Do Not Favor Transfer.......................................19

     H.  The SEC's Choice of Venue Decisively Weighs Against Transfer..............................21

    IV.  CONCLUSION..........................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Amorphous v. Flipboard, Inc.,*
No. 15-CIV-5802 (KPF), 2016 WL 1651868 (S.D.N.Y. Apr. 26, 2016) .............................. 18, 19

*Beatie & Osborn LLP v. Patriot Sci. Corp.,*
431 F. Supp. 2d 367 (S.D.N.Y. 2006) ...................................................................... 12-13, 22

*Beres v. Thomson McKinnon Sec., Inc.,*
No. 85-CIV-6674 (SWK), 1987 WL 16977 (S.D.N.Y. Sept. 10, 1987) ................................ 13

*Bryant v. Potbelly Sandwich Works, LLC,*
No. 17-CIV-7638 (CM), 2018 WL 898230 (S.D.N.Y. Feb. 5, 2018) ...................................... 1

*CFTC v. EOX Holdings LLC,*
No. 18 CIV. 8890 (GBD), 2019 WL 5203661 (S.D.N.Y. July 31, 2019) .......................... 7, 21

*CFTC v. Wilson,*
27 F. Supp. 3d 517 (S.D.N.Y. 2014) ..................................................................................... 14

*Collins & Aikman Corp. Sec. Litig.,*
438 F. Supp. 2d 392 (S.D.N.Y. 2006) ................................................................................... 10

*DataCatalyst, LLC v. Infoverity, LLC,*
No. 20 CIV. 310 (AKH), 2020 WL 1272199 (S.D.N.Y. Mar. 17, 2020) ................. 10, 18, 19

*Herbert Ltd. P'ship v. Elec. Arts Inc.,*
325 F. Supp. 2d 282 (S.D.N.Y. 2004) ................................................................................... 18

*In re Triton Ltd. Sec. Litig.,*
70 F. Supp. 2d 678 (E.D. Tex. 1999) .................................................................................... 16

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,*
419 F. Supp. 2d 395 (S.D.N.Y. 2005) ................................................................................... 11

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.,*
575 F. Supp. 3d 445 (S.D.N.Y. 2021) ................................................................................... 18

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.,*
599 F.3d 102 (2d Cir. 2010) ........................................................................ 2-3, 4, 5, 6, 7, 8

*Sadiant, Inc. v. Penstock Consulting, LLC, No. 23 CIV. 7872*
No. 23-CIV-7872, (KPF), 2024 WL 2847195 (S.D.N.Y. May 30, 2024) ................... 7, 19, 20

*Samrat Ashoka Exp. Ltd. v. Mannix World Imp., Inc.,*
No. 00-CV-3586, 2005 WL 77099 (S.D.N.Y. Jan. 12, 2005) ................................................ 22

*Scheinbart v. Certain-Teed Prod. Corp.,*

367 F. Supp. 707 (S.D.N.Y. 1973) ...................................................................... 9

*SEC v. Contrarian Press, LLC,*
    No. 16-CIV-6964, 2017 WL 4351525 (S.D.N.Y. Sept. 29, 2017) ......................... 14

*SEC v. Hill International, Inc.,*
    No. 20-CIV-447 (PAE), 2020 WL 2029591 (S.D.N.Y. Apr. 28, 2020) ................. 17

*SEC v. Kearns,*
    No. 09-CIV- 2296 (DLC), 2009 WL 2030235 (S.D.N.Y. July 14, 2009) .......... 8, 17

*SEC v. KPMG,*
    No. 03-CIV-671, 2003 WL 1842871 (S.D.N.Y. April 9, 2003) ................. 21, 22, 23

*SEC v. Milton,*
    No. 21-CIV- 6445 (AKH), 2022 WL 3156180 (S.D.N.Y. Aug. 8, 2022) ...... 9, 13, 14, 16, 21-22, 23

*SEC v. Thrasher,*
    No. 92-CIV-6987 (JFK), 1993 WL 37044 (S.D.N.Y. Feb. 8, 1993) ..................... 21-22

*SEC v. Yaroshinksy,*
    No. 06-CIV-2401, 2006 WL 8459557 (S.D.N.Y. Oct. 6, 2006) ..................... 11, 12

*Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC,*
    324 F. Supp. 3d 366 (W.D.N.Y. 2018) ................................................. 14

*Xiu Feng Li v. Hock,*
    371 Fed. App'x 171 (2d Cir. 2010) ..................................................... 7, 21

*Zangiacomi v. Saunders,*
    714 F. Supp. 658 (S.D.N.Y.1989) ....................................................... 22

## Statues and Rules

## Securities Act of 1933

Section 17(a)

    [15 U.S.C. § 77q(a)]............................................................................... 5

## Securities Exchange Act of 1934

Sections 10 (b)

    [15 U.S.C. § 78j(b)] .............................................................................. 5

Section 14(a)

    [15 U.S.C. § 78n(a)].............................................................................5

Section 27

[15 U.S.C. § 78aa] ...................................................................................10

**Securities Exchange Act Rules**

Rule 10b-5

    [17 C.F.R. § 240.10b-5] ..................................................................... 5, 6, 7

Rule 14a-9

    [17 C.F.R. § 240.14a-9] ......................................................................5, 6, 7

**Other**

28 U.S.C. § 1404 ...........................................................................1, 2, 7, 9, 19

*supra* section II(A) .......................................................................... 14

**Declarations and Exhibits**

Declaration of Ty S. Martinez
    Exhibit 1 (Search Results for Certain Travel Distances)
    Exhibit 2 (Search Results for Certain Commercial Flights)
    Exhibit 3 (Petition Filed by John Brda in New York County State Court)
    Exhibit 4 (Excerpts from Torchlight 2020 Form 10-K)
    Exhibit 5 (Excerpts from the Testimony of Roger Wurtele ("Wurtele Tr."))
    Exhibit 6 (Excerpts from the Testimony of Georgios Palikaras, Vol. I ("Palikaras Tr."))
    Exhibit 7 (Excerpts from Consolidated Complaint in *In re Meta Materials Inc. Securities Lit.*)
    Exhibit 8 (SEC's Opposition to Motion to Transfer in *SEC v. KPMG*)

Plaintiff Securities and Exchange Commission (the "**SEC**") respectfully files this memorandum of law in opposition to the motions to transfer venue (the "**Motions**") filed by Defendants John Brda ("**Brda**") and Georgios Palikaras ("**Palikaras**") (together, "**Defendants**").[1] For the following reasons, Defendants' Motions should be denied.

## I.    PRELIMINARY STATEMENT

This case does not have a central location where most relevant events occurred or most witnesses are located. Instead, Defendants engaged in a nationwide fraud, through which they schemed to: (i) manipulate the price of Torchlight Energy Resources, Inc.'s ("**Torchlight**") stock—which was publicly traded on the Nasdaq—and (ii) sell Torchlight stock to investors at inflated prices. The two Defendants (Brda and Palikaras) committed the securities fraud from their respective residences in two different locations (St. Louis, Missouri and Nova Scotia, Canada) in connection with a merger between two companies (Torchlight and Metamaterial, Inc. ("**Meta I**")), whose relevant officers, directors, and consultants reside in several places, including New York, Texas, Massachusetts, Maine, Iowa, Florida, California, Wyoming, and Canada.

Given the decentralized nature of this case, the SEC could have filed its Complaint in multiple different "suitable" venues.[2] The SEC ultimately selected this District. Several factors make this District a suitable venue for this case, including: (i) the market manipulation in this case manifested on the Nasdaq, which is headquartered in this District and where Torchlight's stock traded; (ii) Meta I's primary motivation for entering into the merger in this case was to gain access

---

[1] The SEC responds herein to Brda's memorandum of law in support of his motion to transfer [ECF No. 18] ("**Brda Mot.**"), the Declaration of John Brda [ECF No. 19] ("**Brda Decl.**"), and Palikaras' memorandum of law in support of his motion to transfer [ECF No. 21] ("**Palikaras' Mot.**").

In addition, this memorandum of law is supported by the Declaration of Ty S. Martinez submitted herewith ("**Martinez Decl.**") and Exhibit 1-8 attached thereto.

[2] *See Bryant v. Potbelly Sandwich Works, LLC*, No. 17-CV-7638 (CM), 2018 WL 898230, at *4 (S.D.N.Y. Feb. 5, 2018) ("The Court is not tasked with determining the best venue [under section 1404(a)], only a suitable one.").

to U.S. capital markets through Torchlight's Nasdaq listing; (iii) Defendants' operative conduct and misstatements were disseminated to investors in this District; (iv) material witnesses and harmed investors reside in and near this District; (v) the SEC and Defendants' counsel have offices conveniently located in this District; (vi) this District is conveniently located between Defendants' respective residences in St. Louis and Nova Scotia; and (vii) this District has both familiarity with the operative law and a strong interest in deciding a case arising from the manipulation of the market for a publicly traded stock listed on a national stock exchange headquartered in this District.

Defendants do not dispute that this District is a proper venue. Instead, they ask the Court to transfer the case to the U.S. District Court for the Eastern District of Texas ("**E.D. Texas**") pursuant to 28 U.S.C. § 1404(a). Defendants rely primarily on the fact that, over three years ago, Torchlight (which no longer exists and is not a defendant) had an office in the E.D. Texas before it merged with Meta I in June 2021 to form Meta Materials, Inc. ("**Meta II**"). However, neither Defendant lives in Texas; Meta I and Meta II were headquartered in Nova Scotia and did not have offices in Texas; and Defendants fail to show that they engaged in the fraudulent scheme in the E.D. Texas, rather than from their respective residences outside of Texas. Further, Defendants have identified, at most, one material witness who resides in the E.D. Texas. However, at least one material witness also resides in this District. All of the other material witnesses would need to travel to a trial in either forum, and, of the two, it would be more convenient for those witnesses to come to this District. Also, the E.D. Texas has no local interest in this case against two individuals who have never resided in Texas and who engaged in a nationwide scheme to defraud investors across the country in violation of federal law.

In short, Defendants fail to present "clear and convincing evidence" that this case should be transferred to the E.D. Texas for convenience and in the interests of justice. *New York Marine*

2

*& Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010). Accordingly, the SEC's choice of venue is entitled to deference, and Defendants' Motions should be denied.

## II.    RELEVANT BACKGROUND

### A.    Relevant Allegations Against Defendants and Locations of Operative Facts.

The Complaint [ECF No. 1] alleges that Defendants engaged in a fraudulent scheme to manipulate the price of Torchlight stock and sell Torchlight stock to investors at inflated prices. (Compl. ¶ 1.) Defendants' scheme artificially inflated the price of Torchlight's publicly traded stock—which traded on the Nasdaq, headquartered in New York—causing the price to increase by over 200% leading up to Torchlight's merger with Meta I in June 2021. (*Id.* ¶¶ 1, 17.) Defendants then caused Torchlight to conduct an at-the-market offering at the peak of their price manipulation, selling 16.2 million Torchlight shares to investors at inflated prices. (*Id.* ¶ 1.)

Before the merger, Torchlight was an oil and gas company with only a few oil and gas assets. (*Id.* ¶¶ 14, 17, 20-23.) Meta I was an applied materials technology company in Dartmouth, Nova Scotia, Canada that had no interest in Torchlight's oil and gas assets. (*Id.* ¶¶ 18, 27.) Instead, Meta I's primary motivation for entering into the merger was to obtain Torchlight's Nasdaq listing to gain access to U.S. capital markets. (*Id.* ¶¶ 14, 27.) Torchlight and Meta I merged on June 28, 2021 to form Meta II, which assumed Torchlight's Nasdaq listing. (*Id.* ¶ 19.)

Brda, the former CEO of Torchlight, conceived and developed the fraudulent scheme in response to Torchlight's deteriorating financial condition in early 2020. (*Id.* ¶¶ 2, 15, 25.) Palikaras, the CEO of Meta I who became the CEO of Meta II after the merger, was informed of Brda's scheme from the outset of merger discussions and knowingly participated in the scheme in coordination with Brda. (*Id.* ¶¶ 4, 16, 27-28, 35-37.) Brda lived and worked in St. Louis, Missouri,

3

and Palikaras lived and worked in Nova Scotia, Canada.[3] (*Id.* ¶¶ 15, 16.) From these respective locations, Defendants engaged in several deceptive acts and made false and misleading statements and omissions in furtherance of their fraudulent scheme between June 2020 and the merger closing in June 2021. (*Id.* ¶¶ 3-8, 29-107, 113, 119.) These include, among others:

- Brda designed and implemented certain deceptive transactions—including a "Preferred Dividend"—intended to artificially increase the price of Torchlight stock by causing a short squeeze and leading investors to believe a squeeze would occur. (*Id.* ¶¶ 3, 30-34.)

- Defendants deceptively marketed and promoted the Preferred Dividend with the intention of spreading their short squeeze narrative (without revealing that they were the source of that narrative). (*Id.* ¶¶ 5, 51-66.) They did so, among other ways, through: (i) consultants in Maine, Florida, Iowa, and Puerto Rico,[4] among other places, who were hired to spread the short squeeze narrative for Defendants; (ii) Defendants' private communications with select groups of investors during "virtual" investor conferences and "virtual meetings"; and (iii) Defendants' messaging on Twitter designed to signal the short squeeze to retail investors without expressly acknowledging the same, as exemplified by Palikaras' shorts-in-flame tweet. (*Id.* ¶¶ 51-66.)

- Defendants also made false and misleading statements in furtherance of the scheme to inflate Torchlight's stock price in: (i) Torchlight's press releases and proxy statements, and (ii) a private meeting held "virtually" in which Palikaras made false statements to a group of Italian shareholders, a partial recording of which later circulated on social media. (*Id.* ¶¶ 61, 67-88.)

---

[3] Palikaras resides in Halifax, Nova Scotia, and he worked at the headquarters of Meta I/Meta II in Dartmouth, Nova Scotia. (Compl. ¶¶ 16, 18-19.)

[4] (Martinez Decl. ¶ 26.)

4

- Brda, in coordination with Palikaras, caused Torchlight, through an investment bank in California,[5] to conduct an at-the-market offering while Torchlight's stock price was artificially inflated, selling 16.2 million shares to investors at inflated prices. (*Id.* ¶¶ 98-107.)

Importantly, the Complaint does not allege that Brda or Palikaras were ever in the E.D. Texas during any of the operative conduct at issue. Nor does the Complaint allege that any specific conduct occurred in the E.D. Texas. Rather, the Complaint alleges that Brda and Palikaras both resided outside of Texas, and that their deceptive conduct and messages, misrepresentations, and omissions were disseminated nationwide, including into this District. (*See id.* ¶¶ 14-16, 29-107.)

On June 25, 2024, the SEC filed its Complaint against Defendants alleging, among other claims, violations of Section 17(a) of the Securities Act of 1933 ("**Securities Act**"), Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 ("**Exchange Act**"), and Rules 10b-5 and 14a-9 thereunder. (*Id.* ¶¶ 9, 112-141.)

**B.    Background Relevant to Certain Convenience Factors.**

This enforcement action involves witnesses located in multiple different places across North America, including material witnesses who reside in New York, Texas, Maine, California, Florida, Iowa, Wyoming, Puerto Rico, and Canada, among other places. (Martinez Decl. ¶¶ 20-34.) One of Torchlight's former board members—who Brda says are "key witnesses" (Brda Mot. at 9)—has lived and worked in this District at all relevant times. (Martinez Decl. ¶ 20.) Torchlight's other former board members reside in Iowa, South Texas (Houston), and West Texas (Midland, Texas), each of which is located at least hundreds of miles away from the proposed transferee courts. (*Id.*)[6] There are also harmed investors residing in and near this District who could be trial

---

[5] (Martinez Decl. ¶ 27.)

[6] (*See also* Ex. 1 at 12-15) (search results for travel distances from Midland and Houston to the transferee courts)).

witnesses. (*Id.* ¶¶ 32-33.) Other material witnesses include, among others, former officers of Meta I and Meta II who reside in Massachusetts and Wyoming, and former Torchlight consultants in Maine, Florida, California, Iowa, and Puerto Rico, among other places. (*Id.* ¶¶ 25-27.)[7]

The SEC's New York Regional Office is about a mile from the courthouse in this District. (*Id.* ¶ 3.) The SEC does not have a regional office in the E.D. Texas. (*Id.* ¶ 5.) Its closest office is the Fort Worth Regional Office, which is within the Northern District of Texas. (*Id.*) Although Defendants do not specify which Division in the E.D. Texas to which they seek a transfer, they presumably mean the Sherman Division, which covers Plano, Texas.[8] Civil cases in the Sherman Division are assigned 50-50 between district judges who preside in two different courthouses: one in Plano and one in Sherman.[9] The SEC's Fort Worth Regional Office is about 45 miles from the Plano courthouse and about 90 miles from the Sherman courthouse. (*Id.* ¶ 7.)[10]

During the SEC's investigation preceding this lawsuit, Defendants were represented by attorneys based in California who also represented Meta II, including for purposes of Defendants' responses to SEC investigative subpoenas and Defendants' sworn testimony pursuant to those subpoenas. (*Id.* ¶ 14.) The SEC received notice that Defendants' counsel of record were representing Defendants after the initial Wells notices provided to Defendants. (*Id.* ¶¶ 14-15.) Each

---

[7] There is also a potential person with relevant knowledge in San Antonio, Texas, but the SEC does not expect that person will be a trial witness. (Martinez Decl. ¶ 28.) In any event, similar to Midland and Houston, San Antonio is located hundreds of miles away from the proposed transferee courts in the E.D. Texas.

[8] The courts in the other Divisions of the E.D. Texas are each located over 100 miles away from Plano, Texas, the Dallas offices of Defendants' counsel, and the SEC's Fort Worth Regional Office, and none are located near cities with major airports. (Martinez Decl. ¶ 7; Ex. 1 at 3-7.) A transfer to these Divisions would be even more inconvenient than the Sherman Division. Thus, the SEC presumes that Defendants seek a transfer to the Sherman Division.

[9] *See* General Order No. 23-01 (E.D. Tex. Jan. 6, 2023) (assigning Sherman civil cases 50% to Judge Mazzant who presides in Sherman and 50% to Judge Jordan who presides in Plano).

[10] In full transparency, the SEC's lead trial counsel in this case resides about 30 miles from the Plano courthouse and about 70 miles from the Sherman courthouse, and its other counsel of record resides about 25 miles from the Plano courthouse and about 60 miles from the Sherman courthouse. However, their residences do not have printing, resources, and other capabilities available at the SEC's Fort Worth Regional Office and New York Regional Office.

Defendant's counsel of record has an office in this District and practices in this District or has been admitted pro hac vice in this case. (*Id.* ¶ 16.) Although Defendants' counsels of record have offices in Dallas, Texas, they do not have offices in the E.D. Texas. (*Id.*)

## III.    <u>ARGUMENT & AUTHORITIES</u>

Under Section 1404(a), a district court may transfer an action to another judicial district where the case could have been brought[11] "for the convenience of the parties and witnesses, in the interests of justice. . . ." 28 U.S.C. § 1404(a). Defendants bear the burden of showing "by clear and convincing evidence that 'the balance of convenience strongly favors the alternate forum.'" *CFTC v. EOX Holdings LLC*, No. 18 CIV. 8890 (GBD), 2019 WL 5203661, at *3 (S.D.N.Y. July 31, 2019) (quoting *Xiu Feng Li v. Hock*, 371 Fed. App'x 171, 175 (2d Cir. 2010)); *see also N.Y. Marine & Gen Ins.*, 599 F.3d at 114 (finding "appropriate that the district courts in [the Second] Circuit have consistently applied the clear and convincing evidence standard" to motions to transfer venue under Section 1404(a)).

Courts in the Second Circuit generally consider the following factors in deciding whether a transfer of venue under Section 1404(a) is warranted:

> [i] the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses; [ii] the convenience of the parties; [iii] the location of relevant documents and the relative ease of access to sources of proof; [iv] the locus of operative facts; [v] the relative means of the parties; [vi] the comparative familiarity of each district with the governing law; [vii] the weight accorded to the plaintiff's choice of forum; and [viii] judicial economy and the interests of justice.

*Sadiant, Inc. v. Penstock Consulting, LLC*, No. 23 CIV. 7872 (KPF), 2024 WL 2847195, at *13 (S.D.N.Y. May 30, 2024) (Failla, J.) (citation omitted).

---

[11] The SEC does not dispute that this action could have been brought in the E.D. Texas, among various other venues.

As shown below, Defendants have failed to present "clear and convincing evidence" that the balance of these factors tilt in favor of transfer. *N.Y. Marine & Gen Ins.*, 599 F.3d at 114.

## A.    The Convenience of the Parties Weighs Against Transfer.

This District is more convenient than the E.D. Texas for the parties. Neither Defendant lives in Texas. Brda admits he resides in St. Louis, Missouri. (Brda Decl. ¶ 2.) There are several direct commercial flights from St. Louis to the major airports near this District and the E.D. Texas, and the duration of each trip is not significantly different.[12]

On the other hand, Palikaras lives in Nova Scotia, Canada (Palikaras' Mot. at 1), which *is* significantly closer to this District than the E.D. Texas. The closest international airport to Palikaras (in Halifax, Nova Scotia) has several direct commercial flights to New York that take an estimated two hours and 15 minutes. (Martinez Decl. ¶ 10; Ex. 2.) By comparison, there are no direct commercial flights from Halifax to airports in or near the E.D. Texas, and the estimated time to fly to Dallas-Fort Worth is at least six hours and 30 minutes—over four hours longer than flying to New York. (Martinez Decl. ¶ 10; Ex. 2.) Clearly, this District is more convenient for Palikaras.

Citing *SEC v. Kearns*,[13] Defendants argue that the E.D. Texas is more convenient for the SEC than this District. (Brda Mot. at 10-11.) But in *Kearns*, the SEC had an office "in Philadelphia, which [was] 2.5 miles from the proposed transferee court ...." 2009 WL 2030235, at *4. In contrast, here, the SEC's Fort Worth Regional Office is either 90 miles or 45 miles away from the proposed transferee court in the E.D. Texas. (Martinez Decl. ¶¶ 4-7; Ex. 1 at 1-2.) Moreover, for

---

[12] (Martinez Decl. ¶ 9.) There are no major airports in the E.D. Texas. However, a direct flight from St. Louis to Dallas Love Field or Dallas-Fort Worth Airport is at least one hour and 45 minutes, which would be followed by an approximate one-hour drive to Sherman or a 20-30 minute drive to Plano. (*Id.*; Ex. 2 (search results for commercial flights); Ex. 1 at 8-11 (search results for driving distances from airports)). A direct flight from St. Louis to LaGuardia is about two hours and 30 minutes, which would be followed by the trip into Manhattan. (Martinez Decl. ¶ 9; Ex. 2.)

[13] No. 09 CIV. 2296 (DLC), 2009 WL 2030235, at *4 (S.D.N.Y. July 14, 2009).

a trial in this District, the SEC's New York Regional Office is within walking distance of the courthouse, giving SEC trial attorneys convenient access to all required trial-support infrastructure, resources, and technology. (Martinez Decl. ¶ 3.) On balance, the E.D. Texas is not more convenient than this District for the SEC's trial attorneys in this case.

Defendants' argument that transfer is more convenient for their attorneys should also be given no weight. In *SEC v. Milton*, for example, the court found "unavailing" that the defendant's "longstanding counsel" resided in the proposed transferee districts (Arizona or Utah), because defendant "retained counsel…who have offices in…New York," and defendant's counsel could simply "apply for admission to practice pro hac vice in this District." No. 21 CIV. 6445 (AKH), 2022 WL 3156180, at *8 (S.D.N.Y. Aug. 8, 2022).

As in *Milton*, each Defendant retained counsel with an office in this District, there are New York counsel of record representing each Defendant, and Defendants' Texas attorneys have been admitted pro hac vice. (Martinez Decl. ¶ 16.) But unlike in *Milton*, Defendants' Texas attorneys do not have offices in the proposed transferee district (E.D. Texas) and are not Defendants' "longstanding counsel." (*Id.* ¶¶ 14-16.) Defendants were represented by counsel in California during the SEC's investigation that preceded the filing of the Complaint. (*Id.*) Thus, defense counsel's alleged inconvenience is even weaker here than in *Milton* and should be rejected.[14]

Brda also asserts that Defendants "would suffer significant personal and financial hardships if they were required to litigate this case in New York," (Brda Mot. at 10-11), but his assertion is conclusory and unsupported. He provides no evidence or explanation of what "hardships" Defendants would supposedly face in New York that they would not also face in the E.D. Texas.

---

[14] *See also Scheinbart v. Certain-Teed Prod. Corp.*, 367 F. Supp. 707, 710 (S.D.N.Y. 1973) ("[T]he transfer statute (§ 1404(a)) is concerned not with the inconvenience of counsel but with the convenience of parties and their witnesses.").

9

Further, Brda recently chose to file and litigate his own legal action in New York, when he filed an action in New York County state court in 2023. (Martinez Decl. ¶ 11; Ex. 3 (Brda's petition filed in New York County state court)). Although that action was unrelated to this case, Brda's conduct in hiring New York lawyers to file a legal action in the same geographical area as this District further undermines his conclusory assertion that he "would suffer significant personal and financial hardships if…required to litigate this case in New York." (Brda Mot. at 10-11.)

In sum, this District is demonstrably more convenient for Palikaras, and neither venue is more convenient for Brda, the SEC, and Defendants' counsel. Therefore, on balance, the convenience of the parties factor weighs against transfer.

**B.    The Means of the Parties Factor is Neutral.**

Brda claims that "the relative means of the parties" favors transfer, (Brda Mot. at 10-11), but he offers no evidence in support. Nor could he. Defendants are former CEO's of publicly traded companies, they are represented by two of the biggest law firms in the United States, and they apparently have insurance coverage. (*See id.* at 10 (mentioning "certain costs…are not always covered by insurance")). More importantly, because Defendants fail to show that their "financial situation would meaningfully impede [their] ability to litigate this case in either forum," this factor is neutral. *DataCatalyst, LLC v. Infoverity, LLC*, No. 20 CIV. 310 (AKH), 2020 WL 1272199, at *4 (S.D.N.Y. Mar. 17, 2020) (quoting *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 398 (S.D.N.Y. 2006)).

**C.    The Availability of Process to Compel Unwilling Witnesses Factor is Neutral.**

Defendants concede that the availability to compel the attendance of witnesses "is neutral," because witnesses may be subpoenaed anywhere within the United States to testify at trial pursuant to 15 U.S.C. § 78aa. (Brda Mot. at 15-16.) The SEC agrees. This factor does not favor transfer.

10

**D.**     **The E.D. Texas is Not More Convenient for the Relevant Non-Party[15] Witnesses.**

"To determine whether transfer is appropriate, the Court looks to the 'center of gravity of the litigation,' as judged primarily by the convenience of witnesses." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005).

In this case, there is no "center of gravity" where the witnesses are predominantly located. This action arises from a nationwide scheme to defraud investors of a publicly traded company and involves witnesses from across the United States and Canada. The parties will likely call witnesses at trial from multiple locations, including New York and Texas, but also Massachusetts, Maine, Iowa, Florida, California, Wyoming, and Canada, by way of example. (Martinez Decl. ¶¶ 20-34.) No particular forum will be more convenient for all or most witnesses who are likely to be called to trial in this case. *See SEC v. Yaroshinksy*, No. 06 Civ. 2401, 2006 WL 8459557, at *8 (S.D.N.Y. Oct. 6, 2006) ("Where potential witnesses are located across the country, the Court may find the convenience of witnesses factor to be neutral.") (citations omitted).

Defendants' claim that there are "[n]o known witness…in New York" is incorrect. (Brda Mot. at 9.) Indeed, one of "Torchlight's former board members," who Defendants concede are "key witnesses," (*id.*), is in New York. (Martinez Decl. ¶ 20.) In addition to him, the SEC has identified harmed investors in and near New York who could be called as witnesses at trial. (*Id.* ¶¶ 32-33.)[16] There are also several non-party witnesses who are likely to be called at trial who reside near New York, including Meta I's former CFO who is in Massachusetts, a former Torchlight "stock consultant" in Maine who helped facilitate Defendants' fraudulent scheme, and

---

[15] See discussion under section III(A) above regarding convenience of the party witnesses in this case.

[16] The SEC anticipates it may identify other harmed investors in or near this District during discovery who could be called as witnesses at trial. (Martinez Decl. ¶ 32.)

11

former executives and board members of Meta I in Canada. (*Id.* ¶¶ 25-26, 29-30.)[17] These witnesses are material, as demonstrated by the Complaint's reference to their respective knowledge, conduct, and/or statements. (*See, e.g.*, Compl. ¶¶ 36, 45, 53, 55, 87, 101.)

To be sure, there is also one material witness who is likely still in the E.D. Texas and who may be called at trial: Torchlight's former CFO, in Plano, Texas. (Martinez Decl. ¶ 24.) He has knowledge that may be relevant to certain Torchlight financial statements and disclosures in this case. (*See* Ex. 5 (Wurtele Tr. at 23:13-25:8)). But Torchlight's former board member in New York has similarly relevant and material knowledge. Indeed, that former board member was also the Chairman of Torchlight's Audit Committee, which "overs[aw] [Torchlight's] accounting and financial reporting processes and audits of [Torchlight's] financial statements on behalf of the Board of Directors." (Ex. 4 (Torchlight 2020 Form 10-K), at 73.)

Contrary to Brda's conclusory assertions, Torchlight's two other former employees are unlikely to be deposed or called as trial witnesses in this case. Both former employees reported to the CFO and performed bookkeeping and other administrative functions. (Ex. 5 (Wurtele Tr. at 18:5-19:4, 26:13-18, 27:12-28:25)). Brda vaguely alleges that these former employees are "key witnesses," (Brda Mot. at 9), but he never identifies either by name and provides no evidence of what material knowledge they allegedly have, whether they are still in Plano, or whether they would be inconvenienced by travel to New York for trial. Thus, these two former employees should not factor into the convenience analysis. *See Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) ("A party moving to transfer on the ground that witnesses will be inconvenienced is obliged to name the witnesses who will be appearing and

---

[17] There are other witnesses who the SEC expects may be called at trial, for which this District is likely more convenient. (*See* Martinez ¶ 34.) As just one example, the Complaint refers to "Italian shareholders" who participated in a relevant meeting with Palikaras, (Compl. ¶ 61), and this District is closer and likely more convenient for them.

describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum.") (citation and quotation marks omitted).[18]

Similarly, Brda vaguely asserts that other former board members of Torchlight are in "Texas," (Brda Mot. at 9), but he fails to identify them or mention how far they reside from the E.D. Texas. Torchlight's board members during the relevant period in this case included Brda, the New York-based former board member, and three others: one in Iowa, and two in Texas. (Martinez Decl. ¶ 20.) But the two Texas-based former board members reside in West Texas (Midland) and South Texas (Houston), both of which are hundreds of miles away from the proposed transferee courts in the E.D. Texas. (*Id.*; Ex. 1 at 12-15.) In fact, the material witnesses located near New York (e.g., Massachusetts, Maine) are either closer to or not significantly further from this District in comparison to the distances between the Texas-based former board members and the E.D. Texas. (Martinez Decl. ¶¶ 20-25; Ex. 1 at 12-16.)

In sum, there are at least as many material witnesses in and near this District as the E.D. Texas. The remaining witnesses are not particularly close to either forum and, on balance, it would likely be more convenient for them to travel to this District than to the E.D. Texas. Thus, the convenience of the non-party witnesses does not favor transfer. *See, e.g.*, *Milton*, 2022 WL 3156180, at *8 (finding the convenience of witnesses "neutral," where the "witnesses likely to testify are located in both the present and proposed districts, as well as outside of those districts").

E.    **The Locus of Operative Facts Does Not Favor Transfer.**

In this case, there is no central location where all or most operative facts occurred. Instead, the operative facts took place across several forums, including this District and multiple other

---

[18] *See also Beres v. Thomson McKinnon Sec., Inc.*, No. 85 CIV. 6674 (SWK), 1987 WL 16977, at *6 (S.D.N.Y. Sept. 10, 1987) (denying transfer where "defendants have given the Court no reason to believe that these witnesses will be unwilling to come to New York to testify, particularly if the defendants pay their expenses.") (citations omitted).

venues.[19] Under these circumstances, "[w]here the locus of operative facts is split amongst several forums," courts have typically "viewed this factor neutrally." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 381 (W.D.N.Y. 2018) (collecting cases).

Contrary to Defendants' contentions, operative facts and material contacts occurred in this District, including: (i) Defendants manipulated the price of Torchlight's stock that traded on the Nasdaq, headquartered in this District; (ii) Torchlight's listing on the New York-based Nasdaq was Meta I's primary motivation for entering into the merger; (iii) Defendants' deceptive marketing efforts, and their false and misleading statements and omissions, were disseminated to investors in this District; (iv) investors in this District were harmed by Defendants' fraud; and (v) Torchlight's former Chairman of the Audit Committee, who lived and worked in New York, reviewed and oversaw Torchlight's relevant public filings.[20] Courts have found material connections to this District based on similar facts. *See, e.g.*, *CFTC v. Wilson*, 27 F. Supp. 3d 517, 538 (S.D.N.Y. 2014) (finding defendants failed to show that the locus of operative facts was not in New York, where "the CFTC has alleged," among other things, "that the price manipulations in question occurred in this district"); *Milton*, 2022 WL 3156180, at *9 (finding the locus of operative facts did not favor transfer, because, among other things, "critical events took place in this District, including…trading of Nikola stock on NASDAQ, also based in New York").[21]

Defendants' contention that all alleged misconduct and events in this case took place in Texas is simply not true. At the outset, the location of Torchlight's former office or oil-and-gas

---

[19] *See supra* section II(A) for background discussion on relevant facts and locations of operative facts.

[20] (Compl. ¶¶ 14, 26-28; Martinez Decl. ¶¶ 21, 32-33; Ex. 4 (Torchlight 2020 Form 10-K), at 73.)

[21] *Cf. SEC v. Contrarian Press, LLC*, No. 16-cv-6964, 2017 WL 4351525 (S.D.N.Y. Sept. 29, 2017) (finding venue proper where, among other acts, defendant transmitted misleading newsletters and articles to subscribers in the forum).

14

assets is not where the securities fraud—i.e., the misstatements, omissions, and market manipulation—in this case occurred.[22]

Further, it is undisputed that Palikaras lived and worked in Nova Scotia, Canada, and Defendants present no evidence that he ever was in Texas. Likewise, Brda lived and worked in St. Louis, Missouri during his relevant conduct in this case between June 2020 and June 2021.[23] Indeed, Torchlight's former CFO testified that the CFO (not Brda) "overs[aw] everything in the [Torchlight] office, located in Texas," and that at all relevant times, "John Brda lived and -- and still lives and works from an office in St. Louis, Missouri." (Ex. 5 (Wuertele Tr. at 23:21-24:12)). The minutes from the meetings of Torchlight's Board of Directors also show that Brda and other directors (none of whom lived in or near the E.D. Texas) appeared "by phone," rather than in-person at the Plano office, for all relevant meetings reflected in those minutes.[24]

Brda presents no evidence that he was in Texas at the time of any conduct, statements, or events identified in the Complaint. At best, he vaguely avers that "Torchlight's public filings resulted from virtual and in-person meetings held at Torchlight's headquarters in Plano, Texas." (Brda Decl. ¶ 6.) But Brda fails to specify whether he was part of any of these meetings, which meetings were "in-person" versus "virtual," whether he was present in Texas for any of these meetings, or how those meetings relate to the specific acts, misstatements, or omissions he is alleged to have made. These alleged "meetings" could simply refer to work performed by

---

[22] Although the location of Torchlight's former oil-and-gas assets is irrelevant for this factor, none of those assets were in the E.D. Texas. (Martinez Decl. ¶ 13) The largest asset, the Orogrande Project, was in West Texas, and another asset was in Oklahoma. (*Id.*; Ex. 4 (Torchlight 2020 Form 10-K), at 8.)

[23] (Compl. ¶¶ 15, 113, 119.) Notably, the events in this case took place during Covid, which is presumably part of why the investor conferences and meetings Defendants participated in were "virtual." (*Id.* ¶¶ 60, 61.)

[24] (Martinez Decl. ¶ 22). The meeting minutes indicate that eleven meetings were held "by phone" in 2020, including two meetings where the merger at issue was discussed. (*Id.*) Only one meeting was held in person, according to the available minutes, but nothing relevant to this case was discussed in that meeting. (*Id.* ¶ 23.)

15

Torchlight's CFO (who worked in the Plano office), who helped prepare Torchlight's public filings but who had no involvement in and limited knowledge regarding Brda's fraudulent scheme. (*See* Ex. 5 (Wurtele Tr. at 23:13-26:18, 33:8-34:5, 40:7-41:17, 67:1-11, 82:2-83:19)). Such Texas contacts are no more significant than the New York contacts of Torchlight's former Chairman of the Audit Committee (based in New York), who "overs[aw] [Torchlight's] accounting and financial reporting processes and audits of [Torchlight's] financial statements" at all relevant times. (Ex. 4 (Torchlight 2020 Form 10-K), at 73.)

In reality, Defendants' misrepresentations, omissions, and deceptive marketing in furtherance of their fraudulent scheme were disseminated nationwide into both this District and the E.D. Texas. And Defendants acted in furtherance of their fraudulent scheme through, among other means: (i) consultants in Maine, Florida, Iowa, and Puerto Rico, among other places, hired to deceptively promote the scheme; (ii) private communications with select groups of investors during "virtual" investor conferences; and (iii) an investment bank in California hired to conduct an at-the-market offering at the height of Defendants' price manipulation scheme. (Compl. ¶¶ 51-66, 98-107; Martinez Decl. ¶¶ 26-27.) The widespread nature of Defendants' fraud and dissemination do not favor transfer. *See Milton*, 2022 WL 3156180, at *9 (finding "[t]he locus of operative events does not weigh in favor of transfer," reasoning "[t]he place of alleged wrongdoing, principally Defendant's misrepresentations, is not limited to the district where he made those statements due to the nationwide public dissemination of information which forms the basis of this suit").[25]

---

[25] *See also In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 691 (E.D. Tex. 1999) ("[I]n this securities fraud case, the Court finds that the place of the alleged wrong is not limited to the Northern District of Texas due to the nationwide public dissemination of information which forms the basis of this suit.").

Because the operative facts are not centered in the E.D. Texas, the cases that Defendants rely on are distinguishable. For example, in *SEC v. Hill Int'l, Inc.*, the SEC's "core" allegations "were centered within company headquarters" in the transferee district, "where the two alleged malefactors…worked." No. 20 CIV. 447 (PAE), 2020 WL 2029591, at *4 (S.D.N.Y. Apr. 28, 2020). The court found that "the 'center of gravity' of this accounting fraud case unavoidably is the location at which the accounting fraud took place" in the transferee district. *Id.* at *5. Likewise, in *Kearns*, the court found that the connections to New York—like that "the stock was traded on the NASDAQ"—were merely "peripheral" to the fraudulent billing scheme, and that the operative facts "took place principally in" the transferee district, where the defendants' company was "headquartered, where the fraudulent billing practice was developed and implemented, and where the two defendants worked and allegedly participated in the scheme…." 2009 WL 2030235, at *3.

Unlike *Hill* and *Kearns,* neither Defendant worked at Torchlight's office in Texas, neither Defendant engaged in the fraudulent scheme in Texas (much less "principally" there), and the "core" allegations are not "centered within" Torchlight's office. Moreover, the connections to New York are not merely "peripheral," because the SEC alleges a fraudulent scheme to manipulate the price of stock traded on the Nasdaq and that the Nasdaq listing was central to the merger at issue. In contrast to *Hill* and *Kearns*, these and other New York contacts discussed above are at least as significant as the contacts in the proposed transferee district shown by Defendants.

Simply put, Defendants have failed to present "clear and convincing evidence" that the locus of operative facts in this case is the E.D. Texas or that this factor favors transfer.

## F.    The Location of Relevant Documents Factor is Neutral.

The next factor—the location of relevant documents—is typically neutral, because as this Court and others have explained: "'[M]odern technologies such as photocopying and faxing permit

any documents…to be transported to [or from] New York with presumably minimal difficulty.'"
*Amorphous v. Flipboard, Inc.*, No. 15 CIV. 5802 (KPF), 2016 WL 1651868, at *4 (S.D.N.Y. Apr.
26, 2016) (Failla, J.) (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 289
(S.D.N.Y. 2004) (brackets in original)).[26]

Likewise, in this case, the location of relevant documents and evidence is neutral.
Defendants argue that "all relevant documents are likely to be found in the E.D. Texas because
Torchlight was based in Plano, Texas." (Brda Mot. at 12.) This is not accurate. As discussed,
neither Defendant is in Texas, and Torchlight no longer exists. Indeed, Meta II—which is the
successor-in-interest to Torchlight and which does *not* have offices in Texas[27]—produced
documents during the SEC's investigation via Meta II's counsel in California. (Martinez Decl.
¶ 17.) And Defendants fail to identify any relevant documents in the E.D. Texas, much less
documents that could not be easily transported electronically to this District. At best, Brda vaguely
avers that he previously "*produced* documents to the SEC that *were collected* in…Texas," (Brda
Decl. ¶ 8) (emphasis added), but he fails to identify any additional relevant documents in Texas
that have not already been electronically collected and/or produced.[28]

Defendants' contention that "the SEC's investigative file is located in Texas" is also
unavailing. (*Id.* at 13.) The discoverable documents that the SEC staff gathered as part of the SEC's
investigation are not located in the E.D. Texas and are stored electronically. The documents will

---

[26] *See also Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.,* 575 F. Supp. 3d 445, 466 (S.D.N.Y. 2021)
(Failla, J.) ("[T]he conveniences of modern communication and transportation ease what would have been a serious
burden only a few decades ago.") (citation omitted); *Datacatalyst*, 2020 WL 1272199, at *4 ("[L]ocation of relevant
documents is not a major consideration in an era of electronic records and eDiscovery.") (citing cases).

[27] (*See* Ex. 6 (Palikaras Tr. at 26:11-27:6) (testifying that Meta II moved Torchlight's former office in Texas to
Massachusetts after the merger)).

[28] During the SEC's investigation, California-based counsel for Meta II, Brda, and Palikaras produced documents to
the SEC without specifying or distinguishing who produced which documents or the location from which the
documents were originally collected. (Martinez Decl. ¶ 17.)

be electronically produced to Defendants' counsel and can also be easily transmitted to or accessed in this District. (Martinez Decl. ¶ 19.)

Lastly, contrary to Defendants' assertions, there are relevant documents that the SEC staff received during the investigation from New York. (*Id.* ¶ 18.) And there may be additional relevant documents that the SEC did not receive or gather during its investigation, including from the potential witnesses in and near New York discussed in section III(D) above. Accordingly, this factor is neutral. *See Amorphous*, 2016 WL 1651868, at *4 (finding "[t]he location of the documents and other relevant evidence in this case is neutral").

**G.    The Public Interest Factors Do Not Favor Transfer.**

Certain factors in the Section 1404(a) transfer analysis are referred to as the "public interest factors," including, among others: (i) "the comparative familiarity of each district with the governing law," (ii) "judicial economy" and "the administrative difficulties flowing from court congestion," and (iii) "the local interest in having localized controversies decided at home." *Sadiant*, 2024 WL 2847195, at *13, *14 (Failla, J.) (citations omitted). Here, none of these public interest factors weighs in favor of transfer.

First, Defendants concede that the comparative familiarity with governing law factor does not favor transfer. (Brda Mot. at 16.) Although the SEC appreciates the familiarity that courts in this District have with deciding federal securities law cases involving market manipulation, the SEC agrees that this factor is neutral in cases involving federal law. *See, e.g.*, *Sadiant*, 2024 WL 2847195, at *14 (finding "this case involves primarily federal law, of which the Eastern District of Texas and this Court are equally capable of applying").

Second, the judicial economy factor is neutral. Defendants' contention that trying this case in New York would create "logistical and scheduling challenges" should be rejected for the same

19

reasons discussed above in sections III(D) and III(E). (Brda Mot. at 14.) Those alleged "challenges" are equally likely to arise in the E.D. Texas, where only one material witness is located and all other witnesses would need to travel significant distances to attend trial.

Brda's argument that a transfer would "ensure a quicker resolution of this case" is also unavailing. (*Id.*) In a recent opinion (May 30, 2024), this Court found that "while the Court recognizes that there is a significant amount of litigation in this District, the Court has no reason to believe that it cannot dispose of this matter as quickly as the Eastern District of Texas could." *Id.* at \*14 (Failla, J.). The Court should reach the same conclusion here. Brda cites data purporting to show that civil cases that proceed to trial are disposed of more quickly in E.D. Texas, but that data is likely skewed by patent cases that are filed at a high rate in the Marshall Division of E.D. Texas (which is over 150 miles away from Plano, Texas) and often proceed to trial quickly pursuant to special rules and procedures specific to patent cases.[29] Moreover, the same data cited by Brda shows that the median times by which courts in this District dispose of civil cases "before pretrial" and "during or after pretrial" are six months and 8.5 months, respectively, compared to 14.7 months and 21 months in the E.D. Texas.[30]

Third, the E.D. Texas has no "local interest" in deciding this case, because this is not a "localized controvers[y]." *Sadiant*, 2024 WL 2847195, at \*13, \*14 (citation omitted). Instead, as

---

[29] *See, e.g.*, Lex Machina, *Patent Litigation Report 2023* (Feb. 2023) at 9-10, *available at* https://www.mckoolsmith.com/assets/htmldocuments/LexMachina_2023_Patent_Litigation_Report.pdf (last visited Aug. 26, 2024) (between 2020-2022, district judge in the Marshall Division, E.D. Texas was the second most active judge among all U.S. district court judges in terms of new patent cases filed); LegalMetric, *Time to Trial Report Eastern District of Texas Patent Cases, Sept. 2009 to Sept. 2020*, *available at* https://s3-us-west-1.amazonaws.com/ptab-filings%2FIPR2021-00446%2F1034 (last visited Aug. 26, 2024) (noting that the district judge of the Marshall Division, E.D. Texas presided over 67 patent cases that proceeded to trial between the time that judge assumed office (2018) and 2020, with a median time of 20.9 months from case filing to trial).

[30] Admin. Office U.S. Courts, *Judicial Business of the United States Courts: Table C-5—U.S. District Courts–Civil Federal Judicial Caseload Statistics* (Mar. 31, 2024), *available at* https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2024/03/31 (last visited Aug. 26, 2024).

20

discussed in sections III(D) and III(E) above, this case involves a nationwide fraud spread across multiple venues, with connections to this District that are at least as strong as the connections to the E.D. Texas. That Torchlight previously had an office in the E.D. Texas and some of its oil and gas assets were located in, among other places, West Texas (not the E.D. Texas) is irrelevant. Torchlight is not a defendant in this case and no longer even exists as a company or entity. The E.D. Texas has no "local interest" in a federal securities fraud case against two individuals who never resided in Texas, and who defrauded investors across the country.

If anything, this District has a stronger local interest in this case, given that Defendants manipulated the price of stock that traded on the Nasdaq, headquartered in this District. This District is the headquarters for multiple public exchanges, and it has a strong local interest in deciding cases like this that impact trading on those public exchanges. Regardless, this factor and the other public interest factors do not weigh in favor of transfer. At best, they are neutral.

**H.    The SEC's Choice of Venue Decisively Weighs Against Transfer.**

To this point, the balance of the factors discussed above either tilts in favor of this District or is neutral and does not favor either forum. At minimum, Defendants have unquestionably failed to show "by *clear and convincing* evidence that 'the balance of convenience *strongly* favors the alternate forum'" with respect to the factors discussed above. *EOX Holdings*, 2019 WL 5203661, at *3 (quoting *Xiu Feng Li*, 371 Fed. App'x at 175) (emphasis added). Consequently, the SEC's choice of forum should decisively tip the balance in favor of this District.

Courts give plaintiff's choice of forum "substantial deference." *SEC v. KPMG*, No. 03-cv-671, 2003 WL 1842871, at *3 (S.D.N.Y. April 9, 2003). Consistent with that deference, some courts "have recognized [that] the [Exchange Act] was intended to provide the SEC with wide discretion in choosing the forum .…" *Milton*, 2022 WL 3156180, at *9 (citing *SEC v. Thrasher*,

No. 92 CIV. 6987 (JFK), 1993 WL 37044, at *3 (S.D.N.Y. Feb. 8, 1993) (citing cases)).[31] The deference owed to plaintiff's choice of forum "should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendants' forum." *Samrat Ashoka Exp. Ltd. v. Mannix World Imp., Inc.*, No. 00-CV-3586, 2005 WL 77099, at *2 (S.D.N.Y. Jan. 12, 2005). As discussed in sections III(A)-(G) above, Defendants have failed to make such a showing to justify a transfer to their preferred venue in this case. *See Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 395 (S.D.N.Y. 2006) (quoting *Zangiacomi v. Saunders*, 714 F. Supp. 658, 660 (S.D.N.Y.1989) ("'Where the inconvenience to the parties and witnesses are evenly balanced, the plaintiff is entitled to his choice of forum.'").

Defendants argue that the SEC's choice of forum should not be afforded weight, because, according to Defendants, "the operative facts, the key witnesses, the SEC's investigative file, the SEC attorneys, and Torchlight are all located in Texas." (Brda Mot. at 11-12.) But as shown above, these assertions are not true. The operative facts took place across multiple forums, and their connections to this District and the E.D. Texas are equally strong. The key witnesses are spread across multiple locations, and, on balance, this District is more convenient for those witnesses. The SEC's investigative records are stored electronically and readily transportable to this District. The E.D. Texas is not more convenient than this District for the SEC's trial attorneys, who have an office conveniently located in this District. Torchlight is not "located in Texas" because it no longer exists, and in any event, it is not a defendant in this case. Thus, Defendants' unsubstantiated assertions do not support their request that the Court disregard the SEC's choice of forum.

---

[31] To be clear, most courts hold that the SEC's choice of forum is entitled to that level of deference to which a plaintiff's choice of forum is ordinarily entitled. *See, e.g.*, *KPMG*, 2003 WL 1842871, at *2.

Ultimately, this case is simply not centered in the E.D. Texas, or in any other single venue. And as discussed in section III(E) above, there are material connections between this case and this District, which are at least as strong as the alleged connections to the E.D. Texas. Thus, the SEC's choice of forum is entitled to deference. *See, e.g.*, *Milton*, 2022 WL 3156180, at *9 ("[B]ecause there are material connections to this forum, … the SEC's choice of forum should be accorded the deference due to any other plaintiff's choice of forum."); *KPMG,* 2003 WL 1842871, at *4 (finding that the SEC, which was primarily represented by attorneys out of its Washington, D.C. office,[32] had "shown that its choice of forum was dictated by convenience, principally the presence of an SEC office in New York, and its choice is therefore entitled to substantial deference").

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the SEC respectfully requests that the Court deny the Motions in their entirety.

Dated:  September 4, 2024                Respectfully submitted,

<u>/s/ *Patrick Disbennett*</u>
Patrick Disbennett (*pro hac vice*)
Christopher Rogers (*pro hac vice*)
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Tel: 817-978-3821
disbennettpa@sec.gov
rogerschri@sec.gov

---

[32] (*See* Martinez Decl. ¶ 35; Ex. 8 (SEC's response to the motion to transfer filed in the *KPMG* case)).