UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JOHN BRDA,<br>GEORGIOS PALIKARAS,<br><br>Defendants. | Civ. Action No. 1:24-cv-004806<br><br>**JURY TRIAL DEMANDED** |

### DECLARATION OF TY S. MARTINEZ

I, Ty Martinez, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am currently employed as a Senior Accountant with the United States Securities and Exchange Commission (the "**SEC**"), Division of Enforcement in the Fort Worth Regional Office in Fort Worth, Texas. I have been employed by the Commission since March 2008. Prior to joining the Commission, I was employed with the U.S. Postal Inspection Service and the U.S. Postal Service Office of Inspector General as a criminal investigator from 1995 to 2008. I am a Certified Public Accountant, licensed by the Texas State Board of Public Accountancy. Additionally, I am a Certified Internal Auditor and Certified Fraud Examiner.

2. I make this Declaration in support of the SEC's Memorandum of Law in Opposition to Defendants' Motions to Transfer Venue filed by Defendants John Brda ("**Brda**") and Georgios Palikaras ("**Palikaras**") (together, "**Defendants**"). As part of my official duties, I was involved in the Commission's investigation involving the Defendants (the "**Investigation**"). I am familiar with the facts and proceedings in this action and the matters alleged in the SEC's Complaint. I

make this Declaration based on personal knowledge, including knowledge of publicly available documents and information and knowledge gained during my work on the Investigation.

### SEC's Regional Offices

3. The SEC's New York Regional Office is located within the region covered by the U.S. District Court for the Southern District of New York ("**Southern District of New York**"), and within walking distance of this Courthouse. It is the SEC's second largest office and contains resources and technology that SEC trial attorneys and staff from the SEC's Fort Worth Regional Office can use when needed for trials and other proceedings in New York, including conference rooms and offices, printers and other technology, and support staff, among other things.

4. The following is based on information from the website for the U.S. District Court for the Eastern District of Texas ("**Eastern District of Texas**") website and other public information.[1] The Eastern District of Texas has six Divisions. The Sherman Division has a courthouse in Plano, Texas (the "**Plano Courthouse**") and a courthouse in Sherman, Texas (the "**Sherman Courthouse**"). There is one courthouse per Division in each of the other five Divisions, which are located in Texarkana, Marshall, Tyler, Lufkin, and Beaumont. None of these five towns has an international airport. At best, they have small regional airports.

5. The SEC does not have a Regional Office located within the Eastern District of Texas. The nearest office is the Fort Worth Regional Office, which is within the region covered by the U.S. District Court for the Northern District of Texas.

6. Attached hereto as **Exhibit 1** is a true and correct copy of screenshots of Google Map searches performed on or around September 2, 2024 for the travel distance between the SEC's Fort Worth Regional Office and courthouses in the Eastern District of Texas, as well as other

---

[1] *See* https://txed.uscourts.gov/court-locator (last visited Aug. 27, 2024).

Google Map searches performed on or around September 2, 2024 as further reflected therein and described herein.

7. As reflected in **Exhibit 1**, the Fort Worth Regional Office is approximately 45 miles away from the Plano Courthouse and approximately 90 miles away from the Sherman Courthouse. **Exhibit 1** also reflects screenshots of Google Map searches for the driving distances between the SEC's Fort Worth Regional Office and the other courthouses in the Eastern District of Texas. As reflected in **Exhibit 1**, the SEC's Fort Worth Regional Office is over 130 miles away from the Tyler courthouse, over 180 miles away from the Marshall courthouse, over 200 miles away from the Lufkin and Texarkana courthouses, and over 300 miles away from the Beaumont courthouse.

## Defendants and Defendants' Counsel

8. Attached hereto as **Exhibit 2** is true and correct copy of screenshots from the online searches for commercial flights described in paragraphs 9 and 10 below, which were performed on or around August 30, 2024.

9. Brda admits that he resides in St. Louis, Missouri.[2] As reflected in **Exhibit 2**, an online search for commercial flights shows that there are several daily direct flights from St. Louis to New York, with an estimated flight duration of about two hours and 20 minutes, and several daily direct flights from St. Louis to Dallas Love Field Airport ("**Love Field**") and Dallas Fort Worth International Airport ("**DFW Airport**"), with an estimated flight duration of about one hour and 45 minutes. As reflected in **Exhibit 1**, it would take about one hour to drive from Love Field or DFW Airport to the Sherman Courthouse, and about 20-30 minutes to drive from either airport to the Plano Courthouse, assuming normal traffic conditions.

---

[2] (ECF No. 18, Decl. of John Brda, ¶ 2.)

10.     Palikaras does not dispute the allegations in the Complaint that he resides in Nova Scotia, Canada.[3] Halifax Stanfield International Airport ("**Halifax Airport**") appears to be the only international airport in Nova Scotia. According to that airport's website,[4] there are daily direct commercial flights year-round from Halifax to New York, but there are no direct commercial flights from Halifax to Love Field or DFW Airport—or anywhere else in Texas. As reflected in **Exhibit 2**, an online search for commercial flights shows that a direct flight from Halifax to New York is about two hours and 15 minutes, and the quickest commercial flight from Halifax Airport to DFW Airport is about six hours and 30 minutes.

11.     On or around May 30, 2023, Brda filed, through New York counsel, a legal action in the Supreme Court of the State of New York in New York County, New York. Attached hereto as **Exhibit 3** is a true and correct copy of the petition that Brda filed to initiate the legal action, which was retrieved and downloaded from the state court's electronic filing system. On or around June 26, 2023, an order was entered denying Brda's petition and disposing of the legal action for lack of personal jurisdiction over the respondent, X Corp. f/k/a Twitter, Inc.

12.     According to public filings and information, Torchlight Energy Resources, Inc. ("**Torchlight**") completed a reverse merger with Metamaterial, Inc. ("**Meta I**") in June 2021 to form Meta Materials, Inc. ("**Meta II**"). Thereafter, Meta II became the successor-in-interest of Torchlight and Meta I.

13.     In Torchlight's Form 10-K filed with the SEC for the fiscal year ending December 31, 2020, Torchlight stated: "Presently, our primary interests include the Orogrande Project in Hudspeth County, Texas and the Hazel Project in the Midland Basin" and a property "in Central Oklahoma." Both Hudspeth County, Texas, and the Midland Basin are within the region covered

---

[3] (ECF No. 21, Palikaras Mem. Law Supp. Mot. Transfer at 1.)
[4] https://halifaxstanfield.ca/flights/non-stop/.

by the U.S. District Court for the Western District of Texas. Neither is in the Eastern District of Texas. Attached hereto as **Exhibit 4** is a true and correct copy of excerpts from Torchlight's Form 10-K filed with the SEC for the fiscal year ending December 31, 2020.

14. During the Investigation, Meta II was represented by counsel based in California ("**California Counsel**"). Meta II's California Counsel also represented Brda and Palikaras for most of the Investigation, including: (1) responding to SEC investigative subpoenas issued to Brda, Palikaras, and Meta II; (2) during Brda's and Palikaras' appearances and testimony to the SEC staff pursuant to SEC investigative subpoenas; and (3) through the initial Wells notices that the SEC staff provided to Defendants.

15. In March 2024, the SEC staff received notice that Palikaras' counsel of record in this case would be representing him going forward. In August 2023, the SEC staff received notice that Brda's counsel of record in this lawsuit would be representing him going forward.

16. Counsel of record for Defendants Brda and Palikaras include attorneys who practice in New York. (*See* ECF Nos. 16, 20.) Defendants' respective counsels of record also include Texas-based attorneys who have been admitted pro hac vice. (*See* ECF Nos. 28, 29, 31.) Brda's counsel of record has an office in the Southern District of New York, according to his counsel's website.[5] Palikaras' counsel of record also has an office in the Southern District of New York, according to his counsel's website.[6] According to their websites listing the locations of their offices,[7] Defendants' respective counsel of record do not appear to have offices in the Eastern District of Texas, and their respective closest offices to the Eastern District of Texas appear to be in Dallas and Houston.

---

[5] https://www.dlapiper.com/en-us/locations/new-york k
[6] https://www.hklaw.com/en/offices/new-york
[7] *See* https://www.dlapiper.com/en-us/locations; https://www.hklaw.com/en/offices.

### Location of Relevant Documents

17. During the Investigation, California Counsel electronically produced documents, from Palo Alto, California (where California Counsel is based), to the SEC in response to SEC investigative subpoenas issued to Meta II, Brda, and Palikaras, without distinguishing between who was producing which specific documents. These included documents over which Meta II had possession, custody, or control as successor-in-interest to Torchlight.

18. A number of entities produced documents to the SEC during the Investigation with cover letters listing New York, New York, addresses.

19. All relevant, non-privileged documents and tangible items that the SEC staff collected, gathered, and received during the Investigation are electronically stored and maintained on electronic systems that allow the SEC's trial attorneys and staff in this case to access, review, and print such documents and items as needed from both the Fort Worth Regional Office and New York Regional Office. Any such documents and items produced during this litigation will be produced electronically by the SEC to Defendants' counsel.

### Witnesses and Other Matters

20. The following is based on Torchlight's public filings and other public records and information. From January 1, 2020 through the merger closing in June 2021 (the "**Relevant Period**"), Torchlight's Board of Directors consisted of Brda and four other individuals. From 2019 through the present, one of these former Torchlight board members has resided and worked in Westchester County, New York (which is in the Southern District of New York) (the "**New York Board Member**"); the other three former board members have respectively resided in Iowa; Midland, Texas; and Houston, Texas. According to the Google Map searches reflected in **Exhibit 1**, Midland, Texas, is over 300 miles away from both the Plano Courthouse and Sherman

Courthouse, and Houston, Texas, is over 300 miles away from the Sherman Courthouse and over 250 miles away from the Plano Courthouse.

21. The New York Board Member was also the Chairman of Torchlight's Audit Committee during the Relevant Period, according to Torchlight's public filings. See **Exhibit 4** attached hereto of a discussion from Torchlight's 2020 Form 10-K concerning the purpose and responsibilities of Torchlight's Audit Committee.

22. I have reviewed the minutes from meetings in 2020 of Torchlight's Board of Directors produced by California Counsel during the Investigation (the "**2020 Meeting Minutes**"). The 2020 Meeting Minutes indicate that Brda and the other directors on Torchlight's Board of Directors (none of whom lived in or near Plano) appeared "by phone," rather than in-person at the Plano office, for relevant meetings in 2020, including meetings held on March 2, 2020; March 23, 2020; May 11, 2020; June 2, 2020; June 9, 2020; June 11, 2020; July 2, 2020; July 17, 2020; September 14, 2020; October 26, 2020; and October 30, 2020. In the meeting minutes dated September 14, 2020 and October 30, 2020, both of which purport that Brda and all other members of Torchlight's Board of Directors appeared "by phone," indicate that the Board of Directors discussed Torchlight's "letter of intent with" Meta I and other matters relating to the "Meta transaction."

23. Of the 2020 Meeting Minutes I reviewed, only the minutes from a September 9, 2020 meeting of Torchlight's Board of Directors indicates that the directors appeared in person (the "**September 9, 2020 Minutes**"). The September 9, 2020 Minutes indicate that the directors discussed three items of business: (i) "the setting of the Annual Meeting of Shareholders of the Company," including the date of the annual meeting, what would be voted on at the meeting, the "virtual" platform on which the meeting would be held, and the record date for the meeting; (ii)

"recommendations of the Nominating Committee regarding candidates to be nominated for election to the Board at the Annual Meeting of Stockholders"; and (iii) "the proposal that stockholders ratify [Torchlight's third-party auditor] as auditor for fiscal year ending December 31, 2020 .…" There was no discussion reflected in the September 9, 2020 Minutes about any of the transactions, misstatements, omissions, conduct, or events alleged in the Complaint.

24.     During the Investigation, the SEC took testimony from only one witness who worked or resided in the Eastern District of Texas: Roger Wurtele, the former CFO of Torchlight. Aside from Mr. Wurtele and John Brda, the SEC staff did not seek or take testimony from any other former employee of Torchlight during the Investigation. Attached hereto as **Exhibit 5** is a true and correct copy of excerpts from the transcript of the sworn testimony that Mr. Wurtele provided to the SEC during the Investigation, including excerpts generally relating to Brda living and working in St. Louis, Mr. Wurtele's oversight of the Plano office, Mr. Wurtele's roles and responsibilities at Torchlight, and the other employees at the Plano office.

25.     During the Investigation, the SEC also took testimony from the former CFO of Meta I and Meta II, who at all relevant times has resided and worked in Massachusetts, according to the documents, testimony, and information provided to the SEC during the Investigation. Based on the Google Map searches reflected in **Exhibit 1**, the driving distance between Meta II's office in Massachusetts to the Court in the Southern District of New York is approximately 229 miles.

26.     Paragraph 55 of the Complaint refers to certain "consultants" who the Complaint alleges Brda caused Torchlight to hire and pay pursuant to the fraudulent scheme. (Compl. ¶ 55.) During the Investigation, the SEC staff took testimony from four individuals, who were among the "consultants" identified in paragraph 55 of the Complaint. According to the documents, testimony,

and information these individuals provided to the SEC during the Investigation, these four individuals respectively reside in Maine, Iowa, Florida, and Puerto Rico.

27. During the Investigation, the SEC also took testimony from a representative of the "investment bank" referenced in paragraphs 85 and 103 of the Complaint. According to the documents, testimony, and information provided to the SEC during the Investigation, the investment bank is in California and its representative who testified lives and works in California.

28. During the Investigation, the SEC took testimony from an individual who had a consulting relationship with Torchlight and who was believed to have knowledge relevant to the allegations in paragraphs 78, 79, and 80 of the Complaint. This individual is believed to reside in San Antonio, Texas (which is located within the region covered by the U.S. District Court for the Western District of Texas), based on the documents, testimony, and information this individual provided to the SEC during the Investigation. However, the SEC does not expect to depose or call this witness at trial.

29. Paragraph 87 of the Complaint refers to an email from "Meta II's VP of Business Development." (Compl. ¶ 87.) According to public records and information, this individual resided and worked in Massachusetts while working for Meta II but appears to currently reside in Wyoming.

30. Paragraphs 36, 45, and 53 of the Complaint refers to an email from a former "member of Meta I's board" discussing a call that Palikaras and that former board member had with Brda in September 2020. (Compl. ¶¶ 36, 45, 53.) According to public records and information, the former board member appears to reside and work in Canada.

31. Attached hereto as **Exhibit 6** is a true and correct copy of excerpts from the transcript of the sworn testimony that Palikaras provided to the SEC during the Investigation,

wherein he explains that Meta II moved Torchlight's former office in Texas to Massachusetts after the merger.

32.   The SEC staff is aware of Torchlight investors who claim harm from the events at issue in this case and reside in and near the Southern District of New York, and who the SEC may call as witnesses at trial. The SEC staff anticipates it may identify other harmed investors in or near the Southern District of New York during discovery who may be called as witnesses at trial.

33.   In addition, six individual-plaintiffs filed a class action lawsuit against Meta II, Brda, and Palikaras, among others, alleging federal securities law violations arising out of some of the same events and time periods at issue in this case. That lawsuit is styled *In re Meta Materials Inc. Securities Lit.*, Case No. 1:21-cv-07203-CBA-JRC (E.D.N.Y.). Attached hereto as **Exhibit 7** is a true and correct copy of excerpts from the Consolidated Complaint filed in that class action lawsuit on August 29, 2022, which was retrieved and downloaded through PACER. These excerpts identify three plaintiffs who allegedly purchased Torchlight shares in June 2021, during the period of alleged price manipulation at issue in this case, and were allegedly harmed. According to public records and information, these three plaintiffs respectively reside in or near the Southern District of New York, including in New York, New Jersey, and Massachusetts.

34.   Aside from the witnesses discussed herein, the SEC expects to disclose several additional persons with knowledge in this case that reside outside of the Eastern District of Texas and who may be called at trial.

35.   As reflected in the SEC's Opposition to Defendants' Motion to Transfer, filed in *SEC v. KPMG*, No. 03-cv-0671(DLC) (S.D.N.Y.) (Dkt. No. 8), available at 2003 WL 25146225, the SEC was represented in that litigation by attorneys from its Washington, D.C. office, except

for one attorney from the New York Regional Office who appeared as local counsel. A true and correct copy of this filing, as retrieved from Westlaw, is attached hereto as **Exhibit 8**.

36.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  September 4, 2024

Fort Worth, Texas

_____
Ty S. Martinez