2003 WL 25146225 (S.D.N.Y.) (Trial Motion, Memorandum and Affidavit)
United States District Court, S.D. New York.

SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

KPMG LLP, et al., Defendants.

No. 03 CV 0671 (DLC).
February 28, 2003.



**Plaintiff's Opposition to Defendants' Motion to Transfer**

Robert B. Blackburn (RB-1545), Securities and Exchange Commission, The Woolworth Building, 233 Broadway, New York, NY 10279, (646) 428-1610, blackburnr@sec.gov, Local Counsel.

James A. Kidney (JK-5830), Mark Kreitman, David M. Stuart (DS-6136), Charles F. Wright, Counsel for Plaintiff, Securities and Exchange Commission, 450 Fifth St., N.W., Stop 9-11, Washington, D.C. 20549-0911, (202) 942-4797 (Kidney), (202) 942-9581 (Fax), kidneyj@sec.gov.

TABLE OF CONTENTS

| | |
|---|---|
| I. CONGRESS INTENDED THAT COMMISSION ENFORCEMENT ACTIONS PROCEED INDEPENDENTLY OF PRIVATE SECURITIES LITIGATION | 2 |
| II. TRIAL EFFICIENCY AND THE INTEREST OF JUSTICE FAVOR THIS VENUE | 3 |
| III. ALL OTHER CONSIDERATIONS FAVOR VENUE IN THIS COURT | 5 |
| A. The Convenience of Parties and Witnesses Favors This Venue | 5 |
| B. The Location of Relevant Documents Favors This Venue | 8 |
| C. The Locus of Operative Facts Favors This Venue | 9 |
| D. This Court Can Compel Attendance at Trial of Unwilling Witnesses; The Federal Court in Hartford, Connecticut Cannot | 10 |
| CONCLUSION | 11 |

This Court has repeatedly held that the most important consideration in determining appropriate venue is the convenience of the witnesses. That factor, as well as every other relevant consideration under 28 U.S.C. § 1404(a) and the legislative history of the Securities Exchange Act of 1934 (the "Exchange Act"), compel the conclusion that venue is most appropriate in this Court.[1]

Judicial efficiency will not be served by transferring this action, in which approximately 500 boxes of documents have been produced and sworn investigative testimony of 39 witnesses taken, to Hartford, Connecticut, where, after 30 months, private litigation has not passed the pleading stage and no discovery has been taken in the most relevant cases. By statute, this matter cannot be consolidated or coordinated with the private actions in Hartford without the Commission's consent, which will not be granted. None of the individual Defendants are parties to any of the private cases pending in Hartford, which name more than 20 defendants who are *not* parties to this action. The Hartford lawsuits involve a host of legal issues and factual events neither alleged in nor relevant to this case.

Four of the five Defendants (KPMG, Boyle, Safran, and Conway) live and/or work in New York City or its suburbs. Many of the expected trial witnesses work at KPMG's New York City headquarters. Their depositions will be taken in New York. Although KPMG's audit letters through 2000 are signed "Stamford, Connecticut," KPMG has not audited the Xerox Corporation since 2001 and none of the individual Defendants continue to work in Stamford. Moreover, the audit was of a worldwide company. As the Complaint clearly describes, audit work and management decisions important to this action also occurred in New York City, Rochester, N.Y., Brazil, Europe, Japan and Canada, among other places.

The Commission respectfully urges that Defendants' motion be denied.

## ARGUMENT

### I. CONGRESS INTENDED THAT COMMISSION ENFORCEMENT ACTIONS PROCEED INDEPENDENTLY OF PRIVATE SECURITIES LITIGATION

Clear Congressional intent requires that Commission enforcement proceedings not be tied in any way to private securities litigation. Section 21(g) of the Exchange Act, 15 U.S.C. § 78u(g), prohibits both consolidation and coordination of Commission enforcement actions with private suits absent the Commission's consent.[2] The Commission will not consent here. The Senate Report accompanying the 1975 amendments to the Exchange Act stressed the importance of "allowing the Commission's public action to proceed unfettered by [private suits]":

... when Commission injunctive actions are subject to being transferred for coordinated or consolidated pretrial proceedings, delay in the prosecution of the Commission action may ensue which is potentially damaging to the public interest in securing prompt relief from illegal practices and preventing such practices in the future.

S. Rep. No. 94-75, at 77 (1975), *reprinted in* 1975 U.S.C.C.A.N. 179, 255-56. Where, as here, there is no possibility of consolidation, pendency of private actions in another venue need be given no weight. 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal* Practice and Procedure § 3854 (2002) (citing *Schmidt v. American Flyers Airline Corp.,* 260 F. Supp. 813 (S.D.N.Y. 1966)).

### II. TRIAL EFFICIENCY AND THE INTEREST OF JUSTICE FAVOR THIS VENUE

The Connecticut cases are so different from this case in important respects that trial efficiency and the interests of justice dictate venue in this Court. The private actions were brought under the Private Securities Litigation Reform Act, primarily or exclusively against Xerox, its officers, directors and senior managers. Plaintiffs in the private action are required to allege and prove individual damages and causation, elements not present in the Commission's action. The Commission, unlike the private plaintiffs, seeks an injunction, disgorgement of KPMG's revenues from its Xerox activities and a civil penalty. Investor damages are not part of the, Commission's case. Inflation in Xerox's stock price is relevant here primarily as an explanation of motive to prove scienter. The Commission has settled its claims against Xerox.

A review of the Defendants' exhibits amply illustrates that most of the cases fail to support Defendants' contentions. The Florida State Board of Administration Complaint, Defendants' Exhibit ("Def. Ex.") E, does not name KPMG or any KPMG auditor as a defendant. One derivative action, Def. Ex. I, does not name any defendant in this action. Another, Def. Ex. G, names 17 defendants, only one of which -- KPMG -- is a Defendant in this action. The class action complaint, Def. Ex. K, names no Defendant in this action and rests entirely on a Xerox "restructuring" in the late 1990s which has no bearing on this lawsuit. The remaining Connecticut case, Def. Ex. N, brought under ERISA, alleges completely different and unrelated statutory violations, and names no Defendant in this case.

*Carlson v. Xerox Corp, et al.,* Def. Ex. C, which is the private case most similar to this action, names none of the four individuals who are Defendants here. Rather, it names Xerox and seven individual defendants who are not parties to this litigation. *Carlson,* moreover, involves issues not raised in the Commission's Complaint here, including for example, claims of substantial accounting irregularities by Xerox's unit in Mexico. See, e.g., Def. Ex. C, ¶¶ 87-92. KPMG itself acknowledged in its motion to dismiss the Third Consolidated Amended Complaint in Connecticut that, "[a]lthough the Complaint is rife with detail concerning Xerox's alleged accounting improprieties, the allegations concerning KPMG are sparse and purposefully selective." KPMG LLP's December 5, 2002 Memorandum at 5 (attached hereto as Exhibit A). After 30 months, *Carlson* remains at the

pleading stage - there has been no discovery. Def. Ex. B. Indeed, Defendants acknowledge that, with the sole exception of the entirely unrelated "restructuring" case, none of the Connecticut lawsuits has advanced to the discovery stage. Def. Brief at 3-8. The Commission, on the other hand, has obtained extensive investigative evidence consisting of KPMG's work papers for the four audit years at issue and Xerox documents related to the audits and the underlying accounting issues.

Thus, there is little similarity between this action and those before the Court in Hartford, and the advantages this action has over those in Hartford, including those of document production and investigative testimony, could well be defeated by transfer and some sort of vague attachment to the bog of multidistrict litigation.

### III. ALL OTHER CONSIDERATIONS FAVOR VENUE IN THIS COURT

#### A. *The Convenience of Parties and Witnesses Favors This Venue*

This Court has repeatedly held that convenience of witnesses is the most important factor in determining appropriate venue. *See, e.g., Olympia v. Cooper,* 00 Civ. 7367(MBM), 2001 WL 506219, at *1 (S.D.N.Y. May 14, 2001); *About.Com, Inc. v. Aptimus, Inc.,* 01 Civ. 2106(AGS), 2001 WL 503251, at *2 (S.D.N.Y. May 11, 2001); *TM Claims Service v. KLM Royal Dutch Airlines,* 143 F. Supp. 2d 402, 405 (S.D.N.Y. 2001). Because that factor so overwhelmingly favors venue in this Court, Defendants cannot meet their heavy burden to overcome the substantial deference due the Commission's choice of forum in an enforcement action, where the venue provision of the Exchange Act is intended to afford it the widest possible choice of forum. *SEC v. Thrasher,* 92 Civ. 6987(JFK), 1993 WL 37044, at *3 (S.D.N.Y. Feb. 8, 1993); *SEC v. Electronics Warehouse, Inc.,* 689 F. Supp. 53, 74 (D. Conn. 1988). [3]

KPMG maintains its headquarters in New York City. Three of the four individual Defendants live in New York or its suburbs: Defendant Boyle lives and works in New York; Defendant Conway lives in suburban Westport, Connecticut (50 miles from New York City; 68 miles from Hartford) and works in New York. Defendant Safran's residence is in suburban Darien, Connecticut (43 miles from New York City; 77 miles from Hartford) and he works in Houston, Texas. The fourth individual defendant -- Dolanski - lives in Malvern, Pennsylvania (112 miles from New York City; 240 miles from Hartford) and works in Wayne, Pennsylvania (104 miles from New York City; 232 miles from Hartford). [4] Defendants are represented by seven law offices. Four are in New York City, two in Washington, D.C. and one in Salt Lake City, Utah. None has an office in Connecticut. The Commission has its second largest office in New York. It has no office in Connecticut. Thus, this Court is closer and more accessible to each of the Defendants and all parties' counsel than would be the Court in Hartford. [5]

Most of the persons the Commission anticipates deposing live or work within close proximity to New York City. These include, for example, Stephen Butler (former chairman of KPMG), Thomas Yoho (KPMG's SEC concurring partner on the Xerox audit), Terry Strange (a KPMG partner who participated in the decision to remove Safran from the Xerox account), and Dennis Monson (KPMG's leasing expert in its Department of Professional Practice), and may include other members of KPMG's Department of Professional Practice and New York headquarters staff.

Defendants do not identify a single witness for whom Hartford would be more convenient than New York, and the Commission knows of none. [6] Since KPMG is no longer Xerox's auditor, there are no KPMG employees still working on the Xerox engagement in Connecticut. Defendants' assertion that Stamford, Connecticut is the locus of operative facts, also supports venue in this District, as this Court recognized in *Deutsch v. Dunne,* 197 F. Supp. 907 (S.D.N.Y. 1961) (denying motion to transfer to Connecticut where defendant lived in Stamford and had a law office in New York, noting the convenience of travel between New York and Stamford). Stamford is a New York suburb 40 miles north of New York City, but 80 miles from Hartford. Stamford is connected to New York by commuter railroads that run nearly every 30 minutes, but to Hartford only by highways and an Amtrak line that provides only three direct trips per day. [7]

Thus, the convenience of witnesses, parties, and counsel makes this Court the proper venue. [8]

### B. *The Location of Relevant Documents Favors This Venue*

The location of relevant documents also supports retaining the Commission's choice of this venue. In the course of its investigation, the Commission received more than 500 boxes of documents from Xerox and KPMG at its Washington, D.C. headquarters. The Commission does not, therefore, anticipate the need for extensive document discovery in Connecticut (certainly not anywhere near Hartford). To the contrary, any additional documentary discovery is likely to be produced from KPMG's New York City headquarters. Thus, the relevant documents are located principally in New York (or Washington, D.C. and abroad), not Connecticut. As this Court recognized in *Capt. Crab, Inc.,* 655 F. Supp. 615, 617 n.2 (citing *SEC v. Pattiz,* 81 Civ. 0064(CBM), 1981 WL 1614 (S.D.N.Y. Mar. 26, 1981)), "[t]he convenience to the SEC in litigating near the situs of its investigation and staff personnel should be accorded some weight on a transfer motion." This consideration therefore also warrants maintenance of the instant venue. [9]

### C. *The Locus of Operative Facts Favors This Venue*

The Commission's Complaint alleges numerous significant operative facts that occurred in New York City and conduct by KPMG's senior New York City partners that favor this venue. For example, several important events occurred that involved Conway and Boyle, both of whom worked at KPMG's New York City headquarters. *See, e.g.,* Complaint 112-113, 117-118, 125, 127, 133, 138. Conway remained at KPMG's New York City headquarters when he became the lead engagement partner on the Xerox account and signed off on the 2000 audit. [10] The decision to remove Safran prematurely from the Xerox engagement was made by KPMG's "Assurance Leadership Team," which consisted of five vice chairmen who worked at KPMG's headquarters in New York City. Complaint ¶¶ 130-31. Stephen Butler, then chairman of KPMG, maintained his office at KPMG's New York City headquarters when he personally informed Safran that he would no longer work on the Xerox engagement. The Complaint also alleges significant conduct by KPMG in Rochester, New York (*See,* e.g., Complaint ¶¶ 2, 24, 82, 84, 87-88, 97, 99), Brazil (*See, e.g.,* Complaint ¶¶ 2, 82, 84, 90, 92-94, 109) and Europe (*See, e.g.,* Complaint ¶¶ 2, 82, 84, 91,96, 104, 107-108, 110, 114, 124).

Defendants' reliance on *Mishnayot v. MGM Mirage, et al.,* 01 Civ. 9955(DLC), 2002 WL 257849 (S.D.N.Y. Feb. 22, 2002), *SEC v. Pignatiello,* 97 Civ. 9303 (SWK), 1998 WL 293988 (S.D.N.Y. Jun. 5, 1998) and *SEC v. Thayer,* 84 Civ. 66 (CES), 1984 WL 2404 (S.D.N.Y. Mar. 16, 1984) does not avail them. In each of those cases, convenience of the parties or witnesses -- a factor strongly supporting venue in this Court -- required transfer. *Mishnayot* was transferred to Nevada because all potential witnesses and evidence were located in Nevada, the plaintiff spent substantial time in Nevada, the Nevada federal court was likely to be more familiar with the Nevada gaming statutes at issue, and Nevada was the locus of all operative facts. 2002 WL at *2. *Pignatiello* was transferred to Colorado because only one of seven defendants lived in New York, a *pro se* attorney-defendant lived and was licensed to practice in Colorado, other defendants were former residents of Colorado and two defendants would suffer financial hardship if forced to litigate in New York. 1998 WL at *6-*7. *Thayer* was transferred to Texas primarily because eight of the nine defendants lived there, wanted to testify at trial in person, and would suffer "serious hardship" if the case remained in New York. 1984 WL at * 1. As a secondary matter, the *Thayer* Court found that the operative events in the case had "next to no connection at all with New York." 1984 WL at *2. Those cases are very different from this one, where New York City is the most convenient forum and significant events underlying the Commission's Complaint occurred in this venue and elsewhere outside of Connecticut.

### D. This Court Can Compel Attendance at Trial of Unwilling Witnesses; *The Federal Court in Hartford, Connecticut Cannot*

The availability of process to compel trial testimony is an important consideration in transfer motions. *Billing v. Commerce One, Inc.,* 186 F. Supp. 2d 375 (S.D.N.Y. Feb. 8, 2002); *Arrow Electronics v. Ducommun, Inc.,* 724 F. Supp. 264 (S.D.N.Y. Nov. 15, 1989) (granting motion for transfer where most of the parties who prepared the balance sheet at issue were outside the court's

subpoena power). This Court has the ability to compel witnesses from New York City and Stamford, Connecticut to appear for trial in New York since Stamford is within 100 miles of the courthouse. The District Court in Hartford, however, lacks subpoena power to compel witnesses to travel from New York City to Hartford since Hartford is beyond the 100-mile radius from the courthouse. [11] Accordingly, this additional factor weighs heavily in favor of denying Defendants' motion for transfer.

## CONCLUSION

For the foregoing reasons, the Commission respectfully urges the Court to deny Defendants' motion.

## Footnotes

1      This Court has enumerated the applicable factors as: (1) the convenience to the parties and witnesses; (2) the location of relevant documents; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the relative means of the parties; (6) the forum's familiarity with the governing law; (7) the weight accorded the plaintiff's choice of forum; and (8) trial efficiency and the interest of justice, based on the totality of the circumstances. *Ocean Walk Mall LLC v. Kornitzer,* 01 Civ. 213(DLC), 2001 WL 640847, at *1-*2 (S.D.N.Y. Jun. 11, 2001). Factors (5) and (6) are not at issue here.

2      *Cf. SEC v. Credit Bancorp, Ltd.,* 194 F.R.D. 457 (S.D.N.Y. 2000) (under limited circumstances, intervention by private parties in SEC enforcement action permitted).

3      "Plaintiff's choice of forum is entitled to great weight and should not be disturbed except when the balance of public and private interest factors clearly weighs in favor of trial in an alternative forum." *GTFM, Inc. v. Park,* 02 Civ. 7020(DLC), 2002 WL 31890940 at *1 (S.D.N.Y. Dec. 30, 2002) (citing *Piper Aircraft v. Reyno,* 454 U.S. 235, 256-57 (1981); *Schechter v. Tauck Tours, Inc.,* 17 F. Supp 2d 255, 260 (S.D.N.Y. 1988)). The moving party must make a "clear-cut showing" that transfer is in the best interest of the litigation, "a strong showing that the balance of convenience and the interest of justice weigh heavily in favor of a transfer." *Summit v. U.S. Dynamics Corp.,* 97 Civ. 9224(VM), 2000 WL 502862 at *2 (S.D.N.Y. Apr. 27, 2000) (citations omitted).

4      *See* relevant investigative testimony and additional support attached as Exhibits B, C, D and E.

5      KPMG itself frequently litigates in this District. *See, e.g., Pope v. Elan Corp., et al.,* 02 Civ. 865(WK), 2002 WL 1822118 (S.D.N.Y. Jul. 29, 2002); *Sparozic v. KPMG Peat Marwick, LLP,* 00 Civ. 3593(LAP), 2001 WL 1464734 (S.D.N.Y. Nov. 16, 2001); *Demaria v. Anderson, et al.,* 00 Civ. 2337(WHP), 153 F. Supp.2d 300 (S.D.N.Y. Mar. 29, 2001); *The Common Fund for Non-Profit Organizations v. KPMG Peat Marwick, LLP,* 96 Civ. 0255(MGC), 2000 WL 124819 (S.D.N.Y. Feb. 2, 2000); *Howard v. Anderson, et al.,* 96 Civ. 919 (SWK), 36 F. Supp.2d 183 (S.D.N.Y. Feb. 17, 1999); *Sandberg v. KPMG Peat Marwick, LLP,* Nos. 96-9099, 1180, 111 F.3d 331 (S.D.N.Y. Apr. 17, 1997); *Menowitz v. Brown, et al.,* 92-7867 and 92-9149, 991 F.2d 36 (S.D.N.Y. Mar. 29, 1993).

6      The cases they cite in support of transfer rely on analysis of the convenience of witnesses and parties, and thus in fact support this venue. *Executone Information Systems, Inc. v. BDO Seidman,* 92 Civ. 4013(TPG), 1993 WL 37111 (S.D.N.Y. Feb. 9, 1993) -- a private action - was transferred to Texas where the firm had itself brought suit against shareholders of the company whose financial statements were at issue, pursuant to its own prior voluntary agreement, and because Texas venue better suited the convenience of both plaintiff and defendant. *SEC v. Capt. Crab, Inc.,* 655 F. Supp. 615 (S.D.N.Y. 1986), was transferred to Florida because each of the defendants had strong ties to Florida by reason of residency and/or business, and because the defendants would have to be in Florida to defend pending class actions. *Morgan Guaranty Trust v. Tisdale,* 95 Civ. 8023(BSJ), 1996 WL 544240 (S.D.N.Y. Sept. 25, 1996) was transferred to

Alaska because 19 witnesses, seven of whom -- including defendants -- would provide the key trial testimony, lived in Alaska, and would be seriously inconvenienced by trial in New York. The Court gave special deference to Alaska's unique interest in litigation surrounding the demise of one of its corporate residents.

7   Train schedules for both lines are attached as Exhibits F and G.

8   New York is, of course, a more convenient port of call than Hartford for any witness who may voluntarily appear at trial from any foreign country.

9   The Commission has invited KPMG to share the cost of scanning documents onto CD-ROMs for the benefit of all parties. Digitization of document production, by which hundreds of copy paper boxes can be reduced to a few shoeboxes of disks, lessens the importance of document location as a practical matter in determining transfer issues.

10  *See* investigative testimony attached as Exhibit D.

11  *Blass v. Capital Int'l Security Grp.,* 99-CV-5738(FB), 2001 WL 301137 (E.D.N.Y. Mar. 23, 2001), on which Defendants rely, was transferred on this basis, in part.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.