

**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
**T** 212.335.4500
**F** 212.335.4501
**W** www.dlapiper.com

STEVEN M. ROSATO
steven.rosato@us.dlapiper.com
**T** 212.335.4586

October 10, 2024

*By ECF*

The Honorable Katherine P. Failla, U.S.D.J.
United States District Court for the
 Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 618
New York, NY 10007

      Re:    *Securities and Exchange Commission v. Brda, et al.*, No. 24 Civ. 4806 (KPF) – Request for Pre-Motion Conference on Anticipated Motion to Dismiss

Dear Judge Failla:

      We represent defendant John Brda in above-referenced matter. In accordance with paragraph 4.A. of Your Honor's Individual Rules of Practice in Civil Cases, Mr. Brda seeks to file a motion to dismiss the SEC's complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Undersigned counsel conferred with counsel for the SEC, and the SEC is not opposed to the leave to file requested herein. Mr. Brda respectfully requests a tentative briefing schedule that would enable the Court to decide Defendants' fully briefed, pending motion to transfer to the Eastern District of Texas[1] before reaching the motion to dismiss. *See* ECF Nos. 17–19, 22–23, 32–36.

## I.    Background

      On June 25, 2024, the SEC filed a complaint against Mr. Brda and Georgios Palikaras (collectively, the "Defendants") alleging that Defendants intended to effectuate an unsuccessful short squeeze through a planned and fully disclosed merger of Torchlight Energy Resources, Inc. ("Torchlight") with Metamaterial, Inc. ("Meta I") and the company that resulted from the Torchlight-Meta I Merger, Meta Materials, Inc. ("Meta II"). The SEC alleges that Defendants capitalized on this purported scheme by causing Torchlight to conduct an at-the-market offering ("ATM Offering") at the peak of its price chart. ECF No. 1, Compl. ¶ 1. But these were all

---

[1] In the event that the Court grants the motion to transfer, Fifth Circuit law would apply in resolving Defendants' anticipated motion to dismiss; accordingly, we cite case law in both the Second and Fifth Circuits in this letter. In providing a broad overview of grounds for dismissal in this letter, Mr. Brda does not waive and expressly reserves any other arguments that might provide a basis for dismissal, which Mr. Brda intends to set forth in detail in his anticipated motion to dismiss. Mr. Brda incorporates by reference, to the extent applicable, the grounds set forth in Mr. Palikaras' pre-motion letter for anticipated motion to dismiss. *See* ECF No. 37.



publicly disclosed corporate actions that served legitimate (and disclosed) purposes for the benefit of *shareholders*—not short sellers.

On December 14, 2020, Torchlight announced that it and Meta I signed the Definitive Agreement for the business combination, which agreement was publicly disclosed as an exhibit to Torchlight's SEC filing that day. Compl. ¶ 33. Investors were informed that pursuant to the Definitive Agreement, Torchlight shareholders would own 25 percent of the resulting combined company, and Meta I shareholders would own 75 percent. Further, a reverse split was contemplated in order to regain and maintain compliance with Nasdaq listing standards.[2] Torchlight also disclosed that the special dividend would take the form of a preferred share dividend (*i.e.*, not a cash dividend), that would be payable "immediately prior" to the closing of the transaction, signaling that the dividend record date would be a date in close proximity to the merger close.

The Definitive Agreement provided that Torchlight would use "commercially reasonable efforts" to sell its oil and gas assets. It specified that the asset sale must occur prior to the earlier of December 31, 2021, or six months from the closing of the merger; otherwise, the combined company would effect a spin-off of those assets, with the preferred shareholders receiving their pro rata equity interest in the spin-off entity. Torchlight's preliminary and definitive proxy statements reiterated that a sale of the oil and gas assets may not occur and in the absence of a sale, any unsold assets may be spun off from Meta II.[3] Thus, the Definitive Agreement and the preliminary and final proxy statements repeatedly warned investors that a spin-out was a potential outcome in the event Torchlight and/or Meta II was unable to sell the assets.

The SEC alleges a scheme liability theory with primary violations of Sections 17(a), 10(b), and 14(a) of the Securities Exchange Act against both Defendants (Counts I, II, and III), as well as aiding and abetting claims under Section 13 against Mr. Brda (Counts IV and V). *See* Compl. ¶¶ 111–43.

## II.   The Complaint Should Be Dismissed for Failure to State a Claim

The complaint is defective and should be dismissed on several grounds.

*First*, the gravamen of this case is the SEC's novel contention that the former CEOs of Torchlight and Meta I engaged in a scheme to manipulate the market by intending to create a short squeeze of Torchlight stock via the announcement of a special dividend and to "take advantage" the short squeeze during a pre-merger ATM offering of Torchlight stock. Compl. ¶ 42. But the special dividend was lawful, was issued as announced, was fully and accurately disclosed, and the market understood the potential impacts the special dividend could have on short sellers. *See Regents of Univ. of California v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 383 (5th Cir. 2007) (in an efficient market "the market price reflect[s] all publicly available information"); *accord In re Overstock Sec. Litig.*, 2021 WL 4267920, at *10–11 (D. Utah Sept. 20, 2021) (dismissing putative securities claims by class of short sellers because publicly disclosed plan to

---

[2] Torchlight Form 8-K filed December 14, 2020, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1431959/000119983520000329/form-8k.htm.

[3] *See* Torchlight Preliminary Proxy Statement filed February 4, 2021 at 31, *available at* https://www.sec.gov/Archives/edgar/data/1431959/000119312521027524/d117540dprem14a.htm.



issue dividend is not deceptive conduct). The SEC does not assert that the short squeeze, upon which its entire theory is based, even occurred. As a result, the SEC cannot allege facts establishing that the market, or any specific investor in it, was deceived by Meta II's special dividend—a fundamental element of a manipulation claim. *See Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999) ("The gravamen of manipulation is deception of investors into believing that [the] prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007).

*Second*, the SEC cannot maintain a claim under the Exchange Act based on disclosures that Torchlight would use "commercially reasonable efforts" to sell its oil and gas assets. Compl. ¶¶ 68–81. As an initial matter, the SEC's theory of scienter rests on the illogical and implausible allegation that Torchlight never intended to sell the assets, and instead intended to spin them out into another entity. *See SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009); *Teamsters Local 445 Freight Div. Pen. Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). This scienter theory makes no sense: The sale of the assets was Torchlight's longstanding business plan pre-merger and the spin-out entity's plan post-merger. *See* Compl. ¶¶ 20–21; *supra* n. 2. Moreover, Torchlight expressly warned through public disclosures that, if a sale of the assets was not consummated, the assets may be spun-out. *See supra* n. 3. Thus, the challenged statements are forward-looking predictions protected by the statutory safe harbor for such statements and the related bespeaks caution doctrine and are non-actionable expressions of corporate optimism. *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 389, 400 (S.D.N.Y. 2001) (statements that defendant would "use all commercially reasonable efforts to take" actions to consummate merger "were not actionable because they were mere predictions"); *see* 15 U.S.C. § 78u-5. Further, the statements were neither false nor misleading when made. A securities violation cannot be pled with hindsight as a matter of law. *Stevelman v. Alias Rsch. Inc.*, 174 F.3d 79, 85 (2d Cir. 1999).

*Third*, a misrepresentation claim based on a statement in a May 2021 call with purported "Italian investors" regarding the potential value of the special dividend suffers from numerous fatal flaws. Compl. ¶¶ 82–88. Mr. Brda did not "make" the challenged statement, as required by *Janus Capital Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011). Further, the statement was surrounded by express disclaimers and cautionary language, constituting unactionable puffery and opinion statements that are immunized by the bespeaks caution doctrine.

*Finally*, because the primary claims fail, the SEC's claims of aiding and abetting violations of the Exchange Act (*see* Compl. ¶¶ 130–43) necessarily fail as a matter of law. *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 778 (5th Cir. 2017); *see also, e.g.*, *SEC v. Rio Tinto plc*, 2019 WL 1244933, at *17, *20 (S.D.N.Y. Mar. 18, 2019) (dismissing aiding and abetting claims for failure to plead primary violation).

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Steven M. Rosato*

Steven M. Rosato