**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                  Plaintiff,<br><br>     - v -<br><br>JOHN BRDA,<br>GEORGIOS PALIKARAS,<br><br>                Defendants. | Civil No. 4:24-CV-1048-SDJ |

**DEFENDANT JOHN BRDA'S**
**MOTION TO EXCLUDE IMPROPERLY OBTAINED EVIDENCE**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................... 1

ARGUMENTS AND AUTHORITIES ......................................................................... 8

    I.   The SEC Violated Federal Rules of Civil Procedure 26, 30, and 45. ................................. 8

    II.  The SEC is "Unquestionably Bound" by the Federal Rules of Civil Procedure. ............. 11

RELIEF SOUGHT ....................................................................................................... 14

CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*All. for Fair Bd. Recruitment v. SEC*,
    125 F.4th 159 (5th Cir. 2024) ...............................................................................................12

*Berger v. United States*,
    295 U.S. 78 (1935)...................................................................................................................9

*Calvary SPV1, LLC v. Morrisey*,
    752 S.E.2d 356 (W. Va. 2013)..............................................................................................12

*First Jersey Secs., Inc. v. Bruton*,
    1980 WL 273547 (Del. Ch. May 8, 1980)............................................................................12

*Freeport-McMoRan Oil & Gas Co. v. FERC*,
    962 F.2d 45 (D.C. Cir. 1992) ..................................................................................................9

*FTC v. Turner*,
    609 F.2d 743 (5th Cir. 1980) ................................................................................................12

*Hannah v. Larche*,
    363 U.S. 420 (1960).............................................................................................................12

*In re Air Crash at Charlotte, N.C.*,
    982 F. Supp. 1092 (D.S.C. 1997).........................................................................................11

*Loper Bright Enterps. v. Raimondo*,
    144 S. Ct. 2244 (2024).........................................................................................................12

*Mick Haig Prods., e.K. v. Does 1–670*,
    2011 WL 5104095 (N.D. Tex. Sept. 9, 2011), *aff'd sub nom.*, 687 F.3d 649
    (5th Cir. 2012).............................................................................................................9, 10, 11

*Nat'l Ass'n of Priv. Fund Managers v. SEC*,
    103 F.4th 1097 (5th Cir. 2024) .............................................................................................12

*SEC v. Blinder, Robinson & Co.*,
    126 F.R.D. 61 (D. Colo. 1989) .............................................................................................13

*SEC v. Blinder, Robinson & Co.*,
    1989 WL 80447 (D. Colo. Apr. 10, 1989).............................................................................12

*SEC v. Digital Licensing Inc.*,
    2024 WL 1157832 (D. Utah Mar. 18, 2024) ........................................................................12

*SEC v. Hollier*,
   2011 WL 117274 (W.D. La. Jan. 11, 2011) .............................................................12

*SEC v. Jarkesy*,
   144 S. Ct. 2117 (2024) ...........................................................................................12

*SEC v. Life Partners Holdings, Inc.*,
   2012 WL 12850253 (W.D. Tex. Aug. 17, 2012) ..............................................13, 14

*SEC v. Life Partners Holdings, Inc.*,
   2012 WL 12918375 (W.D. Tex. Sept. 27, 2012) ...................................................13

*United States v. Powell*,
   379 U.S. 48 (1964).............................................................................................11, 12

*Woodson v. Surgitek, Inc.*,
   57 F.3d 1406 (5th Cir. 1995) ...................................................................................14

**Statutes and Other Authorities**

28 U.S.C. § 1404(a) ................................................................................................4

17 CFR § 200.66 ...................................................................................................9

Federal Rules of Civil Procedure ........................................................................ *passim*

Defendant John Brda files this Motion to Exclude Improperly Obtained Evidence against Plaintiff Securities and Exchange Commission ("**SEC**"), pursuant to Rules 26, 30, and 45 of the Federal Rules of Civil Procedure, and respectfully shows the Court as follows:

## <u>INTRODUCTION</u>

Without prior notice to the Court, Mr. Brda, or Mr. Brda's counsel, the SEC issued subpoenas related to this case (the summary described below) and sought to obtain discovery, including testimony and evidentiary documents, from non-party witnesses after this case was filed, prior to the parties' Rule 26(f) conference, and without seeking or obtaining leave of Court. Because the SEC's conduct knowingly violated this Court's Order, the Federal Rules of Civil Procedure, and Mr. Brda's Constitutional Due Process rights, Mr. Brda seeks an order against the SEC to (1) prohibit the use of any improperly obtained discovery, (2) determine if additional premature and improper discovery has taken place or is taking place, and (3) prevent any additional violative conduct.

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

In this case, the SEC alleges that Mr. Brda intended to effectuate an unsuccessful short squeeze, to the detriment of short sellers, through a planned and disclosed merger of Torchlight Energy Resources, Inc. ("**Torchlight**") with Metamaterial, Inc. ("**Meta I**") resulting in Meta Materials, Inc. ("**Meta II**"). In order to effectuate the short squeeze, the SEC alleges Torchlight offered a preferred share dividend to shareholders of Torchlight's oil and gas assets. Dividend holders would be entitled to the proceeds of the assets, if after "commercially reasonable efforts" Meta II found a buyer of the assets. If not, then the assets would spin-off, with dividend holders receiving a pro rata equity interest in the new entity ("**Next Bridge**"). Before the spin-off, the preferred shares sold over-the-counter under the ticker "MMTLP." The SEC alleges this was

designed by Mr. Brda "in furtherance of his scheme" to effectuate a short squeeze of Torchlight. [Compl. ¶ 81.]

This case was preceded by a lengthy investigation.  Specifically, in August of 2021, the SEC issued a Formal Order of Investigation, styled *In the Matter of Torchlight Energy Resources, Inc.* (FW-04461) ("**Torchlight Matter**").[1]  Mr. Brda received a document subpoena dated April 14, 2022, as well as a testimony subpoena dated July 19, 2022 (collectively, "**Torchlight Subpoenas**").[2]  The Torchlight Subpoenas were signed by an SEC Staff attorney, Christopher Rogers of the Fort Worth Regional Office.[3]  In compliance with the Torchlight Subpoenas, Mr. Brda produced responsive documents and sat for testimony on August 18, 2022.[4]  The deposition was conducted by Staff attorney Rogers.  Samantha Martin, an Assistant Regional Director in the Fort Worth Regional Office, was also present.  On July 20, 2023, the SEC sent Mr. Brda a Wells Notice stating its intention to file this lawsuit.[5]  On January 17, 2024, Rogers notified Mr. Brda's counsel that the SEC requested and received an extension of its statutory deadline to file a case against Mr. Brda until April 16, 2024.[6]

On May 20, 2024, Mr. Brda received another subpoena ("**MMTLP Subpoena**") from the same SEC Staff attorney, Rogers, who had conducted the Torchlight Matter investigation, but this

---

[1] Copies of the exhibits referenced herein are attached to Exhibit A, Declaration of Ryan D. Lantry ("**Ex. A**"), filed with the Motion. Ex. A ¶ 3.  That order is not attached to this Motion because the SEC consistently takes the position that its formal orders should not be made public.  A copy of the Formal Order in the Torchlight Matter is available for the Court to review *in camera*.

[2] The Torchlight Subpoenas are attached as **Exhibit A-1**.

[3] *Id.*

[4] *Id. ¶* 6.

[5] *Id.* ¶ 7.

[6] *Id.* ¶ 8.  The SEC's Manual, *supra* at 11, explains that the Wells notice "informs the person the staff has made a preliminary determination to recommend that the [SEC] file an action or institute a proceeding against them."  § 2.4. Further, the Manual provides that "[t]o determine whether or when to provide a Wells notice, staff should consider all of the relevant facts and circumstances, including but not limited to:  Whether the investigation is substantially complete as to the recipient of the Wells notice." *Id.*  Section 929U of the Dodd-Frank Act provides that within 180 days of issuing a Wells notice, the SEC "shall either file an action against such person or provide notice to the Director of the Division of Enforcement of its intent not to file an action."

time for an investigation styled *In the Matter of MMTLP* (FW-04625) ("**MMTLP Matter**").[7]  On June 7, 2024, Rogers and Martin provided a copy of the SEC's Formal Order in the MMTLP Matter.[8]  Just like the Torchlight Matter, both Rogers and Martin were authorized by that order to conduct the investigation of the subsequent MMTLP Matter.  Indeed, Rogers and Martin were leading the investigation of both the MMTLP Matter *and* the Torchlight Matter when the SEC had previously indicated its intent to initiate litigation against Mr. Brda.[9]

On June 18, 2024, undersigned counsel for Mr. Brda served Rogers an objection to the MMTLP Subpoena as improper "[b]ecause the MMTLP Subpoena constitute[d] an impermissible end-run around judicial supervision in the prior matter [*i.e.* the Torchlight Matter] with litigation forthcoming."[10]  Further, it noted that "the testimony Mr. Brda previously provided in response to the Torchlight Subpoenas extensively covers the scope of the investigation set forth in the MMTLP Formal Order.  For example, Mr. Brda testified at length about Next Bridge, the spin-off, and MMTLP shares (i.e., the subject of the MMTLP Matter)."[11]  Mr. Brda's counsel never received any response from Rogers, Martin, or anybody else at the SEC after lodging their objection.[12]

Less than a week after Mr. Brda served his objection to the MMTLP Subpoena, and **<u>after nearly three years of investigation</u>**, on June 25, 2024, the SEC filed the Complaint [Dkt. #1] in this lawsuit against Mr. Brda in the Southern District of New York.[13]  The sequence of events

---

[7] *Id.* ¶ 9.

[8] *Id.* ¶ 10.  A copy of the Formal Order in the MMTLP Matter is available for the Court to review *in camera*.

[9] *See id.*

[10] Mr. Brda's objection letter and transmittal email is attached hereto as **Exhibit A-2.**

[11] *Id.*

[12] Ex. A. ¶ 12.

[13] On June 28, 2021, Meta I and Torchlight engaged in a reverse merger in which Torchlight acquired Meta I, with the combined company re-named to Meta II. [Compl. ¶ 19.]  The SEC announced the same day that it filed the Complaint that it and Meta II had reached a settlement agreement as to the claims against Meta II.  *See* "SEC Charges Meta Materials and Former CEOs with Market Manipulation, Fraud and Other Violations," Release 2024-77, *available at* https://www.sec.gov/news/press-release/2024-77.  The press release noted that "[t]he SEC's investigation was

appears to be more than coincidental, with the SEC having sought additional documents and evidence from Mr. Brda pursuant to the MMTLP Subpoena with a deadline one week prior to filing this lawsuit.  Rogers was listed as an attorney of record on the SEC's Complaint [Dkt. #1 at 46] and later filed a motion to appear *pro hac vice*.  [Dkt. #8.]

Mr. Brda promptly filed a motion to transfer venue under 28 U.S.C. § 1404(a) to this Court because, among other reasons, "none of the defendants are located in New York and none of the operative facts alleged in the complaint [] took place in New York."  [Dkt. #19 at 7.]  On November 18, 2024, the Southern District of New York agreed and granted Mr. Brda's motion to transfer, holding that:

> the relevant factors, when viewed together, weigh in favor of the transfer of this case to the Eastern District of Texas.  The locus of operative facts, convenience of the witnesses, convenience to the parties, and trial efficiency and interests of justice factors all favor transfer, and outweigh the only countervailing factor, the SEC's choice of forum, which the Court views with limited deference.

[Dkt. #39 at 27.]  On December 18, 2024, pursuant to a joint motion agreed to by the SEC, the Court set a briefing schedule for Defendants' motion to dismiss [Dkt. #42], which Mr. Brda filed on January 17, 2025.  [Dkt. #45.]  To date, no scheduling order has been entered.  On January 24, 2025, the Court entered an Order Governing Proceedings, which among other things, set February 14, 2025 as the deadline to complete a Rule 26(f) conference.  [Dkt. #47.]  The Order states that "[a]ll other discovery shall not commence until the Rule 26(f) conference."  [*Id.* at 4 (citing Fed. R. Civ. P. 26(d), 34).]  Finally, the Order concludes that "[f]ailure to comply with . . . this Order may result in the exclusion of evidence at trial, the imposition of sanctions by the Court, or both." [*Id.* at 7.]

---

conducted by Christopher Rogers and Ty Martinez of the SEC's Fort Worth Regional Office under the supervision of Samantha Martin, B. David Fraser, and Mr. Werner."

Yet, unbeknownst to Mr. Brda (and the Court), the SEC issued subpoenas dated December 12, 2024 to two third-parties (the "**Subpoenas**").[14]   SEC Staff attorney Rogers signed both Subpoenas.  In addition, Mr. Brda and undersigned counsel are aware of at least two other subpoenas sent to third parties and have reason to believe that additional subpoenas have been served.[15]  Mr. Brda was not served with copies of the Subpoenas and was not provided with notice of their issuance.  The Subpoenas purport to be issued in the MMTLP Matter, but plainly seek documents, information, and testimony directly relevant to this lawsuit, the Torchlight Matter.

A brief summary of the SEC's allegations before this Court conclusively establishes that the Subpoenas seek information properly discoverable only in this case.  Specifically, the SEC's Complaint alleges that with the intent of creating a short squeeze the Torchlight merger included a Preferred Dividend, "in the form of preferred stock issued to shareholders of record at closing" and "[s]hareholders who received the Preferred Dividend would purportedly be entitled to receive the net proceeds of the sale of Torchlight's oil and gas assets."  [Dkt. #1 ¶ 3.]  The Complaint alleges that Mr. "Brda misrepresented in Torchlight's public filings that Torchlight would make 'commercially reasonable efforts' to sell its oil and gas assets and distribute the net proceeds to holders of the Preferred Dividend within six months of the merger closing," but that, "[i]n reality, there were no prospects for selling Torchlight's oil and gas assets within six months of the merger closing, and Brda had started planning to spin off the assets as soon the merger agreement was signed."  [*See id.* ¶ 68; *see also* Dkt. #45 at 16–17.]  Thereafter, from mid-October 2021 through December 13, 2022, the Class A Preferred Shares of Meta II [*i.e.*, the Preferred Dividend as defined

---

[14] Copies of the Subpoenas are attached as **Exhibits A-3** and **Exhibit A-4**.  The names of the recipients are redacted to protect their privacy.  Mr. Brda will provide unredacted copies to the Court *in camera* should the Court desire.

[15] Ex. A. ¶ 15.

**DEFENDANT BRDA'S MOTION TO EXCLUDE IMPROPERLY OBTAINED EVIDENCE – PAGE 5**

in the Complaint] traded OTC under the ticker symbol "MMTLP."[16]  On December 14, 2022, each share of MMTLP was exchanged for one share of the common stock of Next Bridge [*i.e.*, the Spin-Off Entity as defined in the Complaint].[17]

In other words, the MMTLP Matter is just a continuation of the Torchlight Matter and is directly related to the SEC's central allegations in this lawsuit.  More specifically, this includes (i) whether Mr. Brda intended to effectuate a short squeeze [Dkt. #1 ¶¶ 3–6]; (ii) the purpose of the Preferred Dividend [*see id.* ¶¶ 29–50]; (iii) whether "commercially reasonable efforts" were made [*see id.* ¶¶ 68–81]; (iv) whether "commercially reasonable efforts" were intended to be made [*id.*]; and (v) Mr. Brda's plans for the Spin-Off Entity before the merger closing [*see id.* ¶¶ 68, 78–81].

The Subpoenas to the third parties were signed by Rogers—counsel of record in this lawsuit—and they commanded the production of ten categories of documents by January 13, 2025, which includes the following four categories of documents most directly relevant to this lawsuit:

1. "*All Communications with or Concerning current or former employees, board members, or consultants for Torchlight Energy Resources, Inc., Meta Materials, or Next Bridge, including but not limited to Brda or McCabe.*"  In the Subpoenas, "John Brda" is a defined term, which purports to mean "(i) John Brda; (ii) any present or former representative of Brda; (iii) any of his immediate family members; or (iv) any entity or financial account which he has controlled, directly or indirectly."  This request for documents encompasses all communications with Mr. Brda, a named Defendant in this lawsuit.  In addition, it seeks communications with Torchlight's former board members, which the SEC does not dispute are "key witnesses" in this lawsuit.  [*See* Dkt. #32 at 16.]  This request also seeks all

---

[16] *See* https://www.investing.com/equities/meta-materials-prf-historical-data; *see also* Next Bridge Hydrocarbons, Inc.    Form    8-K    filed    Dec.    20,    2022    *available    at* https://www.sec.gov/Archives/edgar/data/1936756/000119983522000845/form_8-k.htm .

[17] *See id.*

communications with consultants, which would likely encompass those alleged to be a part of the purported scheme to effectuate a short squeeze alleged throughout the instant Complaint.  [*See* Dkt. #1 ¶¶ 5, 55–58, 138–140.]

2. "*All Communications with or Concerning current or former investors in Torchlight (TRCH), Meta Materials (MMAT), MMTLP, or Next Bridge.*"  In the Subpoenas, "TRCH" is a defined term, which purports to mean "the ticker symbol of Torchlight's common stock."  This request goes to the heart of what the Complaint is alleging, as reflected by the first line of the Complaint.  [*See* Dkt. #1 ¶ 1.]

3. "*All Documents and Communications Concerning any short squeeze related to MMTLP, Meta Materials, or Next Bridge.*"  The SEC's scheme liability theory relies on alleging Defendants intended to effectuate an unsuccessful short squeeze, to the detriment of short sellers, through a planned and disclosed merger of Torchlight.  [*See* Dkt. #1 ¶¶ 3–4.]  More notably, the Complaint herein expressly concedes it does not have enough evidence on this precise allegation.  [*See id.* ¶ 96 ("However, the evidence available at this time is inconclusive as to whether, or to what extent, the trading volume was attributable to short sellers covering their position . . ..").]

4. "*All Documents and Communications Concerning the spin off or Spin-Off Transaction of MMTLP into Next Bridge in December 2022.*"  This request expressly concerns the allegations related to Torchlight's "commercially reasonable efforts" to sell Torchlight's oil and gas assets and plans to distribute "net proceeds" to holders of the Preferred Dividend.  [*See* Dkt. #1 ¶¶ 68–81.]

Each of these categories is clearly targeted to obtain documents relevant to allegations made in the Complaint.

In addition, the Subpoenas command the individual recipients to appear at the SEC's Fort Worth Regional Office on January 30, 2025 at 9:30 a.m. and February 6, 2025 at 9:30 a.m., respectively.  Further, the Subpoenas command the individual recipients to complete a 6-page, 35 question "Background Questionnaire."  Mr. Brda and the Court are in the dark on whether documents have been produced, the questionnaire completed, and testimony obtained from the individual recipients, or others (as well as if the SEC improperly issued more subpoenas).

In short, the SEC is using its investigative power to conduct discovery into matters squarely relevant to this case, but that discovery is being conducted in violation of the Court's order and the Federal Rules of Civil Procedure, and without any oversight whatsoever.

## ARGUMENTS AND AUTHORITIES

### I.    THE SEC VIOLATED FEDERAL RULES OF CIVIL PROCEDURE 26, 30, AND 45.

The Federal Rules of Civil Procedure are clear:  "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . except when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(l).  In addition, Rule 30(a)(2)(A)(iii) requires that leave of court must be sought before a deposition can be taken before the time specified in Rule 26(d).  Further, Rule 30(b)(1) requires that "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party."  The SEC violated each of the foregoing rules by obtaining discovery, without court permission, prior to the parties' Rule 26(f) conference and without notice to Mr. Brda.

In addition, the SEC violated Rule 45 because the Subpoenas, on their face, were invalid in that they did not:  (1) state the court from which it was issued; (2) state the proper title of the court action with the proper civil-action number; and (3) set out the text of Rule 45(c) and (d).  *See* Fed. R. Civ. P. 45(a)(1)(A).  Indeed, "[a] government lawyer 'is the representative not of an ordinary party to a controversy,' the Supreme Court said long ago in a statement chiseled on the

walls of the Justice Department, 'but of a sovereignty whose obligation . . . is not that it shall win a case, but that justice shall be done.'" *Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 47 (D.C. Cir. 1992) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).  Government lawyers, civil and criminal, are held "to higher standards" and should "set[] an example for private litigation." *Id.*  Moreover, the SEC's ethic rules specifically state that "[t]he power to investigate carries with it the power to defame and destroy . . . ."  17 CFR § 200.66.

In addition to being improper, the SEC's conduct is highly prejudicial to Mr. Brda. "Because attorneys use subpoenas to further discovery, sanctions in the subpoena context often implicate the sanction provisions in both Rules 26 and 45." *Mick Haig Prods., e.K. v. Does 1– 670*, 2011 WL 5104095, at *3 (N.D. Tex. Sept. 9, 2011), *aff'd sub nom.*, 687 F.3d 649 (5th Cir. 2012).  Rule 26(g) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> [E]very discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented . . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after reasonable inquiry:
>
> . . . .
>
> (B) **with respect to a discovery request**, response or objection, **it is**:
>
> > (i) **consistent with these rules** and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> >
> > (ii) **not interposed for any improper purpose**, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> >
> > (iii) **neither unreasonable** nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

(Emphasis added).  Further, Rule 26(g)(3) provides:

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

The SEC unquestionably violated Rule 26(g) because the issuance of the Subpoenas:  (1) violated, and thus was not consistent with, the Rules, (2) was for an improper purpose, *i.e.*, to obtain *ex parte* discovery, and (3) was unreasonable in light of the numerous violations of the Federal Rules of Civil Procedure.  Finally, the SEC was wholly unjustified in issuing the Subpoenas and obtaining the discovery.  Therefore, Rule 26(g)(3) mandates the imposition of an order against the SEC and in favor of Mr. Brda.

Similarly, Rule 45(c)(l) provides, in relevant part, as follows:

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorneys' fees—on a party or attorney who fails to comply.

In addition to Rule 26(g), the Subpoenas unquestionably violated Rule 45 and, as such, were invalid.  By issuing and serving invalid Subpoenas, the SEC imposed an undue burden and expense on a non-party, thereby also requiring the imposition of an order against it under Rule 45(c)(1).

On these issues, the *Mick Haig Productions* case is instructive.  In that copyright infringement case, plaintiffs' counsel filed a motion for leave to take discovery prior to the parties' Rule 26(f) conference.  2011 WL 5104095, at *1.  Before ruling on plaintiffs' motion, the court issued a document preservation order "pending resolution of the Discovery Motion."  *Id.*  Soon thereafter, plaintiff dismissed its case with prejudice.  *Id.* at *2.  Subsequently, Ad Litem counsel for defendants learned that plaintiff had, in fact, issued subpoenas during the pendency of its motion and prior to its dismissal of the lawsuit.  *Id.*  As a result, defendants sought sanctions.  *Id.*

In granting the order, the court found that plaintiff had violated both Rules 26 and 45.  As to Rule 26, the court "explicitly disagreed" with plaintiffs' contention that the need to obtain a court order to seek discovery prior to a Rule 26(f) conference was a "mere procedural formality." *Id.* at *4. Thus, the court held that the issuance of the subpoenas was not "objectively reasonable"

and was "inconsistent with Rule 26(d)'s prediscovery conference requirement." *Id.* Further, the court found that plaintiff violated Rule 45 because, "[b]y serving invalid subpoenas, [plaintiff] necessarily 'impos[ed] an undue burden or expense' on each [subpoenaed party] and the putative Does." *Id.* at *5 (quoting Fed. R. Civ. P. 45(c)(l)). Indeed, the court held that "'[t]o knowingly abuse [the subpoena] power is an affront to the fair and impartial administration of justice and is subject to sanctions under the inherent power of the court,' and the Federal Rules." *Id.* (quoting *In re Air Crash at Charlotte, N.C.*, 982 F. Supp. 1092, 1101 (D.S.C. 1997)).

> In addition to the foregoing, the SEC is subject to an order under Rule 30(d)(2):
>
> The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent.

Because the SEC failed to seek leave of Court to take individual recipients' testimony and because the SEC failed to provide notice to Mr. Brda of same such that they could attend and cross examine the witnesses, the SEC unquestionably "frustrate[d] the fair examination of the deponent." Thus, for this additional reason, an order against the SEC is appropriate.

## II.    THE SEC IS "UNQUESTIONABLY BOUND" BY THE FEDERAL RULES OF CIVIL PROCEDURE.

An investigative subpoena "issued for an improper purpose, such as to harass the [respondent] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation" is an abuse of the SEC's investigative authority. *United States v. Powell*, 379 U.S. 48, 58 (1964). According to its own enforcement manual, the SEC "should not use investigative subpoenas solely to conduct discovery with respect to claims alleged in the pending complaint." SEC Enforcement Manual (the "**Manual**") § 3.1.3 (2017). Otherwise, "[a] court might conclude that the use of investigative subpoenas to conduct

discovery is a ***misuse of the SEC's investigative powers and circumvents the court's authority*** and limits on discovery in the Federal Rules of Civil Procedure." *Id.* (emphasis added).[18]

The SEC is "unquestionably bound" by the Federal Rules of Civil Procedure.  *FTC v. Turner*, 609 F.2d 743, 745 n.3 (5th Cir. 1980); *see also First Jersey Secs., Inc. v. Bruton*, 1980 WL 273547, at *1 (Del. Ch. May 8, 1980) ("[W]hen an administrative proceeding reaches an adjudicatory stage, the full panoply of judicial procedures must be observed by an administrative agency.") (citing *Hannah v. Larche*, 363 U.S. 420, 442 (1960)).[19]

As one court aptly stated, when addressing the SEC's proclivities to avoid compliance with a court's order:  "basic principles underlying the judiciary do not allow the executive branch to overrule the courts in matters properly within the courts' jurisdiction." *SEC v. Blinder, Robinson & Co.*, 1989 WL 80447, at *6 (D. Colo. Apr. 10, 1989); *accord SEC v. Digital Licensing Inc.*, 2024 WL 1157832, at *35 (D. Utah Mar. 18, 2024) ("The court imposes sanctions under its inherent authority for the [SEC]'s ***abuse of judicial process***.") (emphasis added); *SEC v. Hollier*, 2011 WL 117274 (W.D. La. Jan. 11, 2011) (order against SEC for Rule 37 discovery violations); *SEC v. Blinder, Robinson & Co.*, 126 F.R.D. 61, 63 (D. Colo. 1989) ("The preclusion sanction is both necessary and justified by the SEC's egregious conduct in this case.").

---

[18] The crucial check federal courts provide on overreaching agencies has become more essential in light of the Supreme Court's recent rulings in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024) and *Loper Bright Enterps. v. Raimondo*, 144 S. Ct. 2244 (2024). *Cf. Nat'l Ass'n of Priv. Fund Managers v. SEC*, 103 F.4th 1097 (5th Cir. 2024) (vacating SEC's Private Fund Adviser Rules); *All. for Fair Bd. Recruitment v. SEC*, 125 F.4th 159 (5th Cir. 2024) (striking down SEC's Nasdaq board diversity rules).

[19] "Nevertheless, to ensure that an investigative subpoena is not inadvertently used to obtain information from a defendant, against whom a civil complaint alleging statutory violations has been filed, when such inquiries should, instead, be made in accordance with the rules of discovery applicable to civil actions generally, we find it prudent to adopt the following holdings."  *Calvary SPV1, LLC v. Morrisey*, 752 S.E.2d 356, 369 (W. Va. 2013) (holding that "when the Attorney General files a cause of action against a person or entity that is subject to an investigative subpoena, the Attorney General's subpoena authority ends as to those matters that form the basis of the complaint's allegations, and the rules of discovery applicable to civil proceedings generally provide the method by which the Attorney General may continue to investigate the alleged wrongdoing").

Mr. Brda anticipates that the SEC may attempt to excuse its wrongful conduct by asserting that the Subpoenas were issued in connection with a separate investigation of Mr. Brda, and not in connection with this lawsuit.  However, even a cursory review of the Subpoenas (all issued by the same SEC Staff attorney, Rogers) and the categories of documents sought by them, establishes that their purpose was to "lock in" the individual recipients' testimony and collect additional evidence for use in this litigation.

In similar circumstances, the SEC's improper attempts to obtain "investigative" testimony for use in a judicial proceeding were sanctioned.  In *SEC v. Life Partners Holdings, Inc.*, the Western District of Texas held that the SEC "cannot administer an extra-judicial deposition regarding an investigation, elicit testimony during the deposition regarding allegations made in the Complaint for use against Defendants, and then claim immunity from the [Federal Rules of Civil Procedure] by labeling the deposition as 'investigative.'"  2012 WL 12850253, at *3–4 (W.D. Tex. Aug. 17, 2012) (sanctioning SEC for taking deposition of company-defendant's former auditor before parties' 26(f) discovery conference; *see also Life Partners*, 2012 WL 12918375 (W.D. Tex. Sept. 27, 2012) (denying motion for reconsideration; citing § 3.1.3 of the Manual).

Likewise, in *In Matter of Morgan Asset Management., Inc.*, Admin. Proceeding File No. 3-13847, at 1 (July 12, 2010), the SEC issued an administrative Order Instituting Proceedings ("**OIP**") on April 7, 2010 against the respondents, following nearly two years of investigation.[20] Eight days after issuing the OIP, the SEC commenced a second investigation and issued six subpoenas for documents and testimony.  *Id.*  The respondents sought relief under Rule 230(g) of the Rules of Practice of the Securities and Exchange Commission and asserted that the second investigation was "functionally identical" to the pending administrative proceedings, and that the

[20] A true and correct copy of the Order issued in the Administrative Proceeding is attached as **Exhibit A-5**.

second investigation was authorized "for the impermissible purpose of gathering additional evidence for use at the hearing in the present proceeding." *Id.* The Administrative Law Judge ("**ALJ**") found that there was substantial overlap between the OIP and the second investigation. As such, the ALJ found, "[i]t is evident that the Division would benefit from taking investigative testimony from the six directors at this juncture. By doing so, it could lock the witnesses into their respective stories, and a tentative or potentially hostile witness who changed his/her testimony at the hearing would then risk impeachment." *Id.* at 2. Thus, the ALJ—who works for and is paid by the SEC itself—concluded, "[f]or reasons not explained on the record, the Division elected to follow a high-risk strategy: it asked the Commission to issue the OIP before it had completed the relevant parts of its investigation. The Division is free to take this sort of risk, of course, but it cannot now ask for a ruling that, in effect, guarantees that it will suffer no adverse consequences." *Id.* at 2–3. As a result, the ALJ issued various prohibitions on the use of documents and information derived from the second investigation. *Id.* at 4.

Like the circumstances in *Life Partners* and *Morgan Asset*, it is clear that the SEC fully intended to use the individual recipients' testimony and production in this matter at the time it issued the Subpoenas. The SEC should be stopped from employing this "high-risk strategy."

## **RELIEF SOUGHT**

In addition to their authority derived from statutes and rules, federal courts also possess "inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995); *see also Life Partners*, 2012 WL 12850253, at *3–4 (similar relief granted). Accordingly, Mr. Brda seeks the following relief:

(1) An Order prohibiting the SEC from using any of the documents or testimony obtained by the individual recipients for any purpose, including for impeachment and for use with other witnesses, in this litigation or related proceedings initiated against Mr. Brda;

(2) An Order requiring the SEC to disclose to the Court and to Mr. Brda any other subpoenas, testimony, or other discovery that the SEC has undertaken;

(3) To the extent the SEC claims it has not conducted any further extra-judicial discovery, a written representation of same made under oath by the SEC and filed with the Court and served upon Mr. Brda;

(4) An Order prohibiting the SEC from issuing any additional subpoenas and obtaining any additional testimony related to this lawsuit without complying with the Federal Rules of Civil Procedure and this Court's Orders;

(5) An Order awarding Mr. Brda his reasonable and necessary attorneys' fees for having to prepare and file this Motion; and

(6) Any such other and further relief to which Mr. Brda may be entitled, including, but not limited to an order requiring the SEC to appear and show cause why it should not be sanctioned or held in contempt for violating the Court's proscription on discovery, should the Court deem such an order appropriate.

## <u>CONCLUSION</u>

Defendant John Brda respectfully requests the Court grant the Motion in its entirety and that he be awarded the relief sought herein.

Dated:  February 26, 2025.

Respectfully submitted,

/s/ *Jason S. Lewis*

Jason S. Lewis
  Texas Bar No. 24007551
  jason.lewis@us.dlapiper.com
Jason M. Hopkins
  Texas Bar No. 24059969
  jason.hopkins@us.dlapiper.com
Ryan D. Lantry
  Texas Bar No. 24125130
  ryan.lantry@us.dlapiper.com
**DLA PIPER LLP**
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone:  214.743.4546
Facsimile:  214.743.4545

***ATTORNEYS FOR DEFENDANT JOHN BRDA***

### <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rules CV-7(h) and (i), I certify that I conferred in good faith with all counsel of record as to the relief sought herein.  Jessica Magee, counsel for Defendant Georgios Palikaras indicated he is unopposed to the relief sought herein.  Patrick Disbennett, counsel for the SEC indicated it is opposed to the relief sought herein.  The parties' email exchange following the conference is attached as **Exhibit B**.

/s/ *Jason S. Lewis*
Jason S. Lewis

### <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing brief on all counsel of record via the Court's CM/ECF system on February 26, 2025.

/s/ *Jason S. Lewis*
Jason S. Lewis