UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>    v.<br><br>JOHN BRDA,<br>GEORGIOS PALIKARAS,<br><br>                Defendants. | Civ. Action No. 4:24-cv-1048-SDJ |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JOHN BRDA'S MOTION TO EXCLUDE IMPROPERLY OBTAINED EVIDENCE**

Plaintiff Securities and Exchange Commission ("**SEC**") files this redacted response in opposition to the Motion to Exclude Improperly Obtained Evidence (ECF No. 54, the "**Motion**") filed by Defendant John Brda ("**Brda**"). For the reasons stated below, the SEC respectfully asks the Court to deny the Motion in its entirety.

Dated: March 19, 2025                    Respectfully submitted,

                                                 */s/ Patrick Disbennett*
                                                 Patrick Disbennett
                                                 Texas Bar No. 24094629
                                                 Christopher Rogers
                                                 Texas Bar No. 24051264
                                                 Securities and Exchange Commission
                                                 801 Cherry Street, Suite 1900
                                                 Fort Worth, Texas 76102
                                                 Tel: 817-978-3821
                                                 disbennettpa@sec.gov
                                                 rogerschri@sec.gov

                                                 *ATTORNEYS FOR PLAINTIFF*

**TABLE OF CONTENTS**

I. SUMMARY ..................................................................................................................1

II. BACKGROUND ..........................................................................................................3

III. ARGUMENT & AUTHORITIES ................................................................................7

    A. The SEC Is Not Bound By The Federal Rules Of Civil Procedure When Investigating Potential Securities Law Violations During Litigation........................................7

    B. The SEC Is Not Conducting The MMTLP Investigation To Obtain Evidence Of Any Securities Law Violations Alleged In The Complaint........................................9

    C. Brda's Requests for Relief Should Be Denied................................................11

IV. CONCLUSION...........................................................................................................15

# TABLE OF AUTHORITIES

**Federal Cases**

*Application of Compton*,
  101 F. Supp. 547 (N.D. Tex. 1951) ............................................................................... 8

*Bowles v. Bay of N.Y. Coal & Supply Corp.*,
  152 F.2d 330 (2d Cir. 1945) ........................................................................................ 8

*Davis v. United States Marshals Serv.*,
  849 Fed. App'x 80–87 (5th Cir. 2021) ....................................................................... 13

*Hernandez v. Helm, No. 18 C 7647*,
  2019 WL 5922233 (N.D. Ill. Nov. 12, 2019) ............................................................. 11

*SEC v. Baston*,
  2023 WL 6850320 (S.D.N.Y. Oct. 17, 2023) ............................................................... 9

*SEC v. F.N. Wolf & Co., Inc., No. 93 Civ. 0379*
  (LLS), 1993 WL 568717 (S.D.N.Y. Dec. 14, 1993) .................................................... 8

*SEC v. Jerry T. O'Brien, Inc.*,
  467 U.S. 735 (1984) ......................................................................................... 7-8, 13, 14

*SEC v. Life Partners Holdings, Inc., No. 1:12-CV-00033-JRN*,
  2012 WL 12850253 (W.D. Tex. Aug. 17, 2012) .................................................... 9, 13

*SEC v. Life Partners Holdings, Inc., No. 1:12-CV-00033-JRN*,
  2012 WL 12918375 (W.D. Tex. Sept. 27, 2012) ......................................................... 9

*SEC v. Pac. Bell*,
  704 F. Supp. 11 (D.D.C. 1989) .................................................................................. 14

**Federal Statutes**

Securities Act of 1933

Section 19(b)
  [15 U.S.C. §§ 77s(b)] ................................................................................................. 8


Securities Act of 1934

Section 21(s)
  [15 U.S.C. § 78u(s)] .................................................................................................... 8

Section 21(a)
  [15 U.S.C. § 78u(a)] .................................................................................................... 8

Section 21(b)
 [15 U.S.C. § 78u(b)] ...........................................................................................................8

**<u>Federal Rules of Civil Procedure</u>**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 13
Fed. R. Civ. P. 37(a)(5)(A) ....................................................................................................... 15

I.     SUMMARY

The SEC is charged with investigating potential securities law violations. Pursuant to its statutory authority, the SEC is investigating potential violations relating to trading in "MMTLP" between October 2022 and December 2022 (the "**MMTLP Investigation**"). MMTLP is the over-the-counter ticker symbol that was assigned to the Class A preferred shares of Meta Materials, Inc. after the Torchlight Energy Resources ("**Torchlight**") and Metamaterial ("**Meta I**") merger.

The MMTLP Investigation relates to events subsequent to and separate from the events and violations alleged in the Complaint. Whereas the Complaint alleges securities law violations arising *before* the June 28, 2021 merger between Torchlight and Meta I, the MMTLP Investigation concerns potential securities law violations arising *after* the merger. The following charts illustrate the two distinct time periods:[1]



---

[1] These charts come from the following sources: https://www.barchart.com/stocks/quotes/TRCH/interactive-chart; https://www.barchart.com/stocks/quotes/MMTLP/interactive-chart.

As these charts illustrate, the MMTLP Investigation is investing potential securities law violations relating to trading in MMTLP that occurred between October 2022 and December 2022—more than a year after the June 2021 merger at issue in the Complaint—when MMTLP shares experienced a sharp price increase and were then subjected to a FINRA-ordered trading halt. The events in late 2022, particularly the trading halt, have generated significant public attention and complaints from MMTLP investors. When the SEC filed the Complaint in this case on June 25, 2024, the SEC issued a press release announcing this action relating to events and violations prior to the June 2021 merger. That press release also notified investors that "[a] separate Commission investigation regarding *subsequent* events related to Meta Materials (MMTLP) remains ongoing."[2] The details of that investigation remain non-public.

Seven months later, Brda's counsel notified the SEC that he intended to file the pending Motion. In an effort to avoid unnecessary motion practice, the SEC agreed that it would ***not use*** evidence from the MMTLP Investigation in this litigation, and that it would also produce materials from the MMTLP Investigation to the extent they are relevant and discoverable in this lawsuit. Simply put, the SEC has no intention of using materials obtained from the MMTLP Investigation, because they are not relevant to the claims alleged in the Complaint. Without offering any alternatives, Brda filed this Motion seeking substantially the same relief that the SEC already agreed to before the Motion was filed, plus unprecedented and extraordinary relief effectively giving Brda the ability to upend and interfere with the SEC's ongoing, non-public investigation.

Brda's Motion is contrary to federal law, which grants the SEC broad authority to investigate potential securities law violations while litigation is pending. The Motion also rests on

---

[2] Press Release, "SEC Charges Meta Materials and Former CEOs With Market Manipulation, Fraud and Other Violations" (June 25, 2024) (emphasis added), *available at* https://www.sec.gov/newsroom/press-releases/2024-77.

Brda's faulty and insincere premise that the SEC is conducting the MMTLP Investigation to obtain discovery to support its claims against Brda in this litigation, when in fact, the SEC is investigating potential securities law violations not alleged in the Complaint and has agreed not to use any evidence from the MMTLP Investigation in this lawsuit. For these reasons and those further discussed below, Brda's Motion should be denied.

## II. BACKGROUND

The Complaint alleges that Defendants violated the federal securities laws by engaging in a fraudulent scheme and making material misstatements and omissions leading up to the June 28, 2021 merger between Torchlight and Meta I. (Compl. ¶¶ 1-9). The Complaint's claims against Brda arise from his misconduct and violations **before** the June 28, 2021 merger. (*See id.* ¶¶ 113, 119 (alleging violations based on Defendants' fraudulent scheme carried out between "June 2020 and June 25, 2021")); (*id.* ¶¶ 38-50, 67-88, 114, 120, 125–26, 132–33 (alleging violations based on Defendants' misstatements and omissions between September 2020 and June 16, 2021)); (*id.* ¶¶ 55-58, 78-80, 138–40 (alleging Brda aided and abetted Torchlight's books and records/internal controls violations based on misconduct and events occurring before the June 28, 2021 merger)).[3]

By contrast, the MMTLP Investigation concerns events **after** the June 28, 2021 merger. (Martinez Decl. ¶ 4). "MMTLP" refers to the over-the-counter ticker symbol that was assigned to the Class A preferred shares of the post-merger Meta Materials, Inc. in October 2021, several

---

[3] The sole exception is that Brda received his $1.5 million bonus "in two $750,000 increments—half before closing on June 25, 2021, and the other *half after the merger closed*." (Compl. ¶ 110) (emphasis added). Thus, part of the disgorgement sought against Brda arises out of his receipt of half of his bonus after the merger. But the securities law violations that support disgorgement against Brda arise solely out of his pre-merger conduct. Certain other facts and events that occurred shortly after the June 28, 2021 merger may be relevant to the claims in this case, but those are only relevant in terms of establishing Defendants' violations that occurred before the June 28, 2021 merger. For example, the Complaint cites the fact that Brda sent fully formed plans to spin out Torchlight's assets in August 2021—"just six weeks after the merger closed"—but that fact is cited to support the conclusion in the next paragraph of the Complaint: "[t]hus, Brda knew, or was severely reckless in not knowing," that his misstatements and omissions *before the merger* were false and misleading. (*Id.* ¶¶ 80–81).

months after the relevant time period for this case. (*Id.* ¶ 5). And the MMTLP Investigation is focused on MMTLP trading between October 2022 and December 2022—more than a year after the June 28, 2021 merger. (*Id.* ¶ 6). During that period, MMTLP shares experienced a sharp price increase and then a trading halt, as illustrated by the chart cited above. *See supra* section I.

MMTLP's sharp price increase preceded a transaction on December 13, 2022, whereby MMTLP shares were spun off (the "**Spin-Off**") into an entity called Next Bridge Hydrocarbons, Inc. ("**Next Bridge**"). (Martinez Decl. ¶ 5). Shortly before the Spin-Off, FINRA imposed the trading halt of MMTLP shares. (*Id.*) These events have generated significant attention and complaints from MMTLP investors.[4]

Before filing this lawsuit, the SEC opened the MMTLP Investigation pursuant to a Non-Public Order Directing Private Investigation and Designating Officers to Take Testimony ("**Formal Order**") and began investigating events relating to the MMTLP trading. (*Id.* ¶ 6). The Formal Order authorizes SEC staff to conduct a non-public investigation into potential federal securities law violations relating to MMTLP and identifies that the MMTLP Investigation relates to time periods after the June 2021 merger. *See* (Ex. 1, Formal Order (Filed Under Seal)).[5]

When the SEC filed the Complaint on June 25, 2024, it issued a press release announcing this action. The press release also notified investors that "[a] separate Commission investigation

---

[4] *See, e.g.*, (Ex. 4, *How the Stock Ticker MMTLP Became an Anti-Wall Street Rallying Cry*, WALL STREET J. (June 7, 2023)); (Ex. 5, *MMTLP Stock Left Thousands Of Shareholders With Nothing*, FORBES (April 27, 2023).

[5] The Formal Order is non-public, but can be requested by a person who is compelled or requested to furnish documentary evidence or testimony at a formal investigative proceeding. *See* SEC Enforcement Manual § 2.3.4.2. Notably, **Brda's counsel obtained a copy of the MMTLP Formal Order** identifying the later relevant time period of the MMTLP investigation well before filing this Motion. (ECF Doc. No. 54-1, Lantry Decl. ¶ 10) (acknowledging June 7, 2024 receipt). Brda's counsel also warranted in writing that "the Formal Order and information contained therein will remain confidential and will not be disseminated to any person or party except my client for use in connection with my representation in this matter." *See* (Ex. 3, June 6, 2024, Formal Order Request from Jason Lewis). Defendant Palikaras's counsel has also obtained a copy of the MMTLP Formal Order pursuant to the procedures set forth in SEC Enforcement Manual § 2.3.4.2.

regarding *subsequent* events related to Meta Materials (MMTLP) remains ongoing."[6] The details of the investigation remain non-public. (Martinez Decl. ¶ 12).

Accordingly, the SEC staff has investigated and continues to investigate various issues, individuals, and entities relating to trading in MMTLP. (*Id.* ¶ 7). Much of the MMTLP Investigation is completely unrelated to the parties or potential witnesses in this lawsuit. This includes, but is not limited to, ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████

The SEC staff has sent, and intends to continue to send, administrative subpoenas in the MMTLP Investigation to individuals and entities—such as the third-party subpoenas attached to Brda's Motion—who are not listed in the SEC's initial disclosures in this case as persons with relevant knowledge, but who are believed to have information relevant to the MMTLP Investigation. (Martinez Decl. ¶ 9). The subpoenas are expressly limited to the time period after October 2021, which is when MMTLP began trading over-the-counter using the ticker symbol "MMTLP." (*Id.*) This trading activity, and the subsequent Spin-Off in late 2022, have no bearing

---

[6] Press Release, "SEC Charges Meta Materials and Former CEOs With Market Manipulation, Fraud and Other Violations" (June 25, 2024) (emphasis added), *available at* https://www.sec.gov/newsroom/press-releases/2024-77.

on the question of whether Defendants, in June 2021 or earlier, misled Torchlight investors or manipulated the price of Torchlight common stock leading up to the Torchlight-Meta I merger.

Brda and certain potential witnesses in this case may also have knowledge, documents, and/or information relevant to the MMTLP Investigation. For example, MMTLP investors have publicly alleged that Brda and the former Torchlight Chairman and current Next Bridge Chairman and CEO Greg McCabe (who is a potential witness in this case) may have sold millions of shares of MMTLP at their peak valuation in 2022, shortly before the FINRA halt and before "investors [who] had poured tens of thousands of dollars into MMTLP expecting big profits…. were stuck with shares they can't sell."[7] To the extent the SEC is seeking information in the MMTLP Investigation from potential witnesses in this case, it is limiting the requests to MMTLP-related conduct and time period only and is not seeking information relating to its claims in the Complaint. (Martinez Decl. ¶ 11).

For example, the SEC staff issued an administrative subpoena in the MMTLP Investigation to Brda in May 2024 seeking documents. (Ex. 2). The investigative subpoena does not seek documents relating to this lawsuit, and the SEC specifically limited the time period to January 1, 2022 to the present. (*Id.*) Nonetheless, Brda's counsel objected and refused to comply with the subpoena in its entirety.[8] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[7] (Ex. 4); *see also* (Ex. 6, Amended Compl., *Targgart v. Next Bridge Hydrocarbons, Inc., et al*, Cause No. 1:24-cv-1927 (S.D.N.Y.), at ¶ 37 (alleging that "Brda also liquidated shares of [MMTLP] just prior to the Spin-Off… for proceeds ranging anywhere between $300,000 and $3,000,000 based on historical trading prices.")); (*Id.* ¶ 36 (alleging that "Upon information and belief, McCabe liquidated approximately 6.7 million shares of [MMTLP] on the eve of the Spin-Off.")); (Ex. 7, Verified Pet., *Bartok v. McCabe, et al.*, (Dist. Ct. Tarrant County, Tex.) at ¶ 23 (alleging "[h]owever, immediately before the Spin-Off, Defendant McCabe unloaded approximately 6.7 million shares of [MMTLP] for personal profits between $19.6 million and $78.9 million.")). The SEC cites these allegations solely to illustrate some of the public complaints and allegations made by certain MMTLP investors.

[8] The SEC does not agree with Brda's claim that he is not required to respond to a subpoena in the MMTLP investigation, because he produced documents and gave testimony during the earlier Torchlight investigation that preceded the filing of the Complaint. The SEC hopes that a compromise can be reached with Brda on this issue, but reserves the right to institute a subpoena enforcement action to obtain that information, which will not be sought as part of discovery in this case, because it is not relevant to the claims alleged in the Complaint.

███████████████████████████

███████████████████████████

███████████████████████

Eight months after Brda received the MMTLP subpoena and seven months after the SEC filed this action and disclosed the existence of the ongoing MMTLP Investigation, Brda's counsel notified the SEC that he intended to file the pending Motion to Exclude. (ECF No. 54-7, Ex. B to Brda's Mot.). To address Brda's purported concern that the SEC is using the MMTLP Investigation to gather evidence for this litigation, the SEC agreed that it would not "affirmatively use evidence gathered in the MMTLP investigation in this lawsuit." (*Id.*) The SEC further agreed "to produce evidence gathered in the MMTLP investigation that is discoverable in this case and responsive to any reasonable and proportional requests you serve." (*Id.*) The SEC does not believe the MMTLP materials are relevant to the claims in this case and at most may incidentally include some limited amount of discoverable information. However, given Brda's stated intent to seek discovery from the MMTLP Investigation, the SEC proposed that "if any Defendant uses evidence obtained in discovery from the MMTLP investigation, we reserve the right to (i) object on relevance or other grounds and/or (ii) introduce related evidence from the MMTLP investigation that has been produced in discovery for optional completeness or to rebut or respond to evidence from the MMTLP investigation offered by any Defendant." (*Id.*) Without offering an alternative solution, Brda filed his Motion to Exclude.

### III. ARGUMENT & AUTHORITIES

**A. The SEC Is Not Bound By The Federal Rules Of Civil Procedure When Investigating Potential Securities Law Violations During Litigation.**

The SEC has "broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations." *SEC*

*v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984) (citing 15 U.S.C. §§ 77s(b), 78u(a), 78u(b)). Such "[administrative] investigations are not controlled by Federal Rules of Civil Procedure[.]" *Application of Compton*, 101 F. Supp. 547, 549 (N.D. Tex. 1951); *see also Bowles v. Bay of N.Y. Coal & Supply Corp.*, 152 F.2d 330, 331 (2d Cir. 1945) (noting the "settled" principle that "the rules of civil procedure do not apply to restrict or control administrative subpoenas").

Extending these principles, federal courts have recognized that the SEC may continue to conduct an administrative investigation without complying with the Federal Rules of Civil Procedure after litigation is filed. *See, e.g.*, *SEC v. F.N. Wolf & Co., Inc.*, No. 93 Civ. 0379 (LLS), 1993 WL 568717, at *2 (S.D.N.Y. Dec. 14, 1993). In *Wolf*, the defendant argued—similar to Brda—"that the SEC, after filing suit as a civil litigant, is limited to discovery conducted pursuant to the Federal Rules of Civil Procedure and may not issue subpoenas or other information requests beyond the scope of those rules." *Id.* at *1. The district court rejected this argument and, based on the SEC's broad statutory authority to investigate potential securities law violations, held that the SEC's "institution of civil litigation d[oes] not shrink the scope of the investigative resources available to the SEC, nor limit its use of information obtained from those resources to purposes other than litigation." *Id.* at *2; *see also SEC v. Loyd*, Case No. 8:02-cv-1613-T-26EAJ (M.D. Fla. Dec. 3, 2002) (copy attached as Ex. 8) (rejecting defendants' contention that the SEC circumvented the Federal Rules of Civil Procedure by issuing subpoenas without notice to the defendants "under the guise of an administrative investigation," and adopting the SEC's "basic contention" that "it had the absolute right, unfettered by the Rules [of Civil Procedure] to issue investigative subpoenas seeking information and documentation about additional potential violations involving the

8

Defendants and other parties").[9] Based on the reasoning of these cases, the Court should deny Brda's Motion.

B. **The SEC Is Not Conducting The MMTLP Investigation To Obtain Evidence Of Any Securities Law Violations Alleged In The Complaint.**

Brda cites only one case where a federal court found the SEC improperly used an administrative subpoena during litigation: *SEC v. LifePartners Holdings, Inc.*, No. 1:12-CV-00033-JRN, 2012 WL 12918375 (W.D. Tex. Sept. 27, 2012).[10] In *Life Partners*, the district court—consistent with the above-cited cases—agreed that "the filing of a civil suit does not inhibit the SEC's broad authority to investigate securities-law violations and [] the SEC is not bound by the FRCP when investigating potential securities-law violations pursuant to its investigatory power …." *Id.* at *1. However, the court also found that the SEC is "bound by the Rules when it is deposing a third party *in order to elicit testimony regarding allegations made in the Complaint for use against Defendants*." *Id.* (emphasis added). Based on the testimony transcript of the subpoenaed witness, the court concluded "that the primary, if not the sole, purpose of eliciting the testimony was to conduct discovery with respect to the claims alleged in the Complaint against Defendants." *Id.* Therefore, the district court prohibited the SEC from using the transcript in the litigation. *SEC v. Life Partners Holdings, Inc.*, No. 1:12-CV-00033-JRN, 2012 WL 12850253, at *4 (W.D. Tex. Aug. 17, 2012).

---

[9] *See also SEC v. Baston*, 2023 WL 6850320, at *3 (S.D.N.Y. Oct. 17, 2023) (granting DOJ's motion to stay SEC's parallel case, but citing *Wolf* for the proposition that the stay did not prevent the SEC from investigating individuals not named in the SEC's case or the criminal case).

[10] (Brda Mot. at 13-14). Brda also cites *In Matter of Morgan Asset Management., Inc.*, but that was an administrative proceeding applying administrative rules—not the Federal Rules of Civil Procedure—and the SEC made no effort in that case to explain how its investigation differed from the pending proceeding. (ECF Doc. No. 54-6 at 1-2). And unlike here—where the SEC has agreed not to use any evidence from the MMTLP Investigation—the SEC in the *Morgan Asset Management* case undisputedly sought to use the subpoenas "to assist itself in preparing for the upcoming hearing." *Id.* at 2.

Here, the SEC is unequivocally not using the MMTLP investigation at all (much less primarily or solely) to obtain discovery for this action. The Complaint solely alleges securities law violations that occurred **before** the June 28, 2021 Torchlight-Meta I merger. *See supra* section II. By contrast, the MMTLP Investigation solely concerns potential securities law violations arising from different conduct that occurred **after** the June 28, 2021 merger. *See supra* section II. And the SEC has agreed ***not to use*** any of the evidence obtained during the MMTLP Investigation in this lawsuit, and the SEC's initial disclosures in this case do not disclose any such evidence as relevant to the Complaint's claims. (ECF No. 54-7, Ex. B to Brda's Mot.; Martinez Decl. ¶ 3).

Further, unlike the transcript that the court in *Life Partners* relied upon, Brda attaches an investigative subpoena to a third party that, by its own terms, defines the "Relevant Period" as "the time period beginning October 1, 2021,[11] and continuing to the present." (ECF No. 54-4 at 4 (Definition No. 22); *see also id.* at 5 (Instruction No. 7)). Even Brda acknowledges that the subpoena seeks documents and communications concerning "the Spin-Off Transaction of MMTLP into Next Bridge **in December 2022**." (Brda Mot. at 7 (quoting ECF No. 54-4 at 6) (emphasis added)). Likewise, the MMTLP investigative subpoena served on Brda in May 2024—which Brda elected not to attach to his Motion—seeks documents dated "**January 1, 2022**" or later, which is more than six months after the June 2021 merger. (Ex. 2) (emphasis added).

Brda also complains that the MMTLP administrative subpoenas served on third parties request that those third parties produce communications with Brda and former Torchlight Chairman Greg McCabe (Brda Mot. at 6), but again the communications requested are limited to

---

[11] As discussed, the MMTLP Investigation is focused on investigating potential securities law violations relating to trading in MMTLP during the time period October 2022 to December 2022. (Martinez Decl. ¶ 6). Because the MMTLP over-the-counter ticker symbol was assigned in October 2021, the relevant time period for the documents sought (e.g., complete MMTLP trading records) in some of the administrative subpoenas served in MMTLP has been limited to October 2021 or later, which in any event, is several months after the June 2021 merger. (*Id.*)

October 1, 2021 or later and are relevant to the investigation into trading in MMTLP. *See supra* section II & n.7. Brda also complains that the subpoenas request documents and communications concerning "any short squeeze related to MMTLP, Meta Materials, or Next Bridge," (Brda Mot. at 7 (quoting ECF No. 54-4 at 6)), but this request is likewise not related to any claims in this case and is plainly relevant to the MMTLP Investigation, given the discourse among MMTLP investors about an alleged short squeeze of MMTLP shares in or around October 2022 to December 2022.[12]

Ultimately, it is possible that the administrative subpoenas issued in the MMTLP Investigation could *incidentally* produce evidence relevant to certain issues in this litigation. But that does not suggest—much less prove—that the MMTLP Investigation is being conducted to obtain evidence for this case. *See Hernandez v. Helm*, No. 18 C 7647, 2019 WL 5922233, at *7 (N.D. Ill. Nov. 12, 2019) (finding the City of Chicago's Office of Inspector General ("OIG") had authority to issue an investigative subpoena to the defendant—who was in active litigation with the City—without needing "to comply with Rule 45's notice requirement" and, in distinguishing *Life Partners*, reasoning that "[t]he mere fact that the documents address an issue that may be relevant to both the OIG's investigation and this case…does not, without more, suggest" that the investigative subpoena improperly sought documents to use in the litigation).

C. **Brda's Requests For Relief Should Be Denied.**

Beyond failing to show that the SEC is conducting the MMTLP Investigation at all (much less primarily or solely) to obtain discovery for this action, Brda asks the Court to order five different remedies, which as shown below, are unnecessary and unwarranted.

---

[12] Notably, FINRA issued two separate Frequently Asked Questions explainers attempting to address theories spread on social media concerning "naked shorts," undisclosed short positions, and a "short squeeze" of MMTLP. *See FAQ: MMTLP Corporate Action and Trading Halt*, FINRA (March 16, 2023), *available at* https://www.finra.org/investors/insights/FAQ-MMTLP-corporate-action-and-trading-halt; *Supplemental FAQ: MMTLP Corporate Action and Trading Halt*, FINRA (November 6, 2023), *available at* https://www.finra.org/investors/insights/supplemental-faq-mmtlp-corporate-action-and-trading-halt.

*First*, Brda requests an order "prohibiting the SEC from using any of the documents or testimony obtained by the individual recipients" of the MMTLP investigative subpoenas. (Brda Mot. at 15). This is unnecessary because the SEC already agreed "not to affirmatively use evidence gathered in the MMTLP investigation in this lawsuit." (ECF No. 54-7). It is also unwarranted to the extent Brda seeks to prohibit the SEC from using MMTLP evidence "for any purpose" in this case, while also demanding that the SEC produce such evidence to Brda for his unfettered use in this litigation. (Brda Mot. at 15). At a minimum, the SEC should be permitted to "introduce related evidence from the MMTLP investigation that has been produced in discovery for optional completeness or to rebut or respond to evidence from the MMTLP investigation offered by any Defendant," as the SEC proposed before Brda filed his Motion.[13] (ECF No. 54-7).

*Second*, Brda's request that the SEC produce "to Mr. Brda any other subpoenas, testimony, or other discovery that the SEC has undertaken"[14] is also unwarranted, because the SEC has already offered "to produce evidence gathered in the MMTLP investigation that is discoverable in this case and responsive to any reasonable and proportional requests [Defendants] serve." (ECF No. 54-7). Beyond that, Brda has cited no legal authority to compel the SEC to produce any and all materials from the MMTLP Investigation, regardless of relevance or discoverability in this case. There are various issues and persons related to the MMTLP Investigation that are completely unrelated to Defendants or any potential witnesses in this case. *See supra* section II. To require the

---

[13] As a hypothetical example, if Brda moved for summary judgment and attached portions of a transcript from testimony given by a third party in the MMTLP Investigation, the SEC should be able to (i) object to that testimony, and/or (ii) submit other portions of that same transcript with the SEC's response brief to show, for example, that Brda cited the testimony out of context or that there are fact issues surrounding the testimony cited by Brda. Of course, these issues are purely hypothetical and need not be decided at this early stage in the litigation.

[14] (Brda Mot. at 15). Brda also requests that the SEC disclose "to the Court" all subpoenas, testimony, or other materials from the MMTLP Investigation. (*Id.*) The SEC would not object to disclosing any materials from the MMTLP Investigation to the Court, but the SEC would request to provide such materials *in camera* to the Court given the non-public nature of the investigation and the SEC's concerns that Brda may, as discussed below, use the information to disrupt the investigation.

SEC to produce documents gathered during a non-public investigation that are irrelevant to this case is clearly not permissible. *See generally Davis v. United States Marshals Serv.*, 849 Fed. App'x 80, 86–87 (5th Cir. 2021) ("In civil cases, parties are entitled to discover all information relevant to any party's claim or defense that is not privileged.") (citing FED. R. CIV. P. 26(b)(1)); *see also Life Partners*, 2012 WL 12850253, at *4 (denying defendant's request for an order requiring the SEC "to disclose any other subpoenas, testimony, or other discovery [it] has undertaken" in its investigation). And the SEC intends to resist any attempt by Brda to convert discovery in this case into a fishing expedition into the MMTLP Investigation.

Further, allowing Brda access to materials from the MMTLP Investigation risks damaging the SEC's ongoing, non-public investigation. Brda is clearly in communication with third parties to whom the SEC issued investigative subpoenas, which are attached to his Motion. If given access to the SEC's MMTLP investigative file, he could use that information to encourage other subpoenaed witnesses or persons with knowledge relevant to the non-public investigation to not comply. *See Jerry T. O'Brien*, 467 U.S. at 750 (explaining that a person who is being investigated by the SEC who is "given notice of every subpoena issued to third parties would be able to discourage the recipients from complying, and then further delay disclosure of damaging information by seeking intervention in all enforcement actions brought by the Commission").

*Third*, Brda's third and fourth requests for relief—including that the SEC submit a sworn declaration and cease conducting the MMTLP Investigation without notifying and involving Brda's counsel—are unprecedented and untenable. In fact, even the court in *Life Partners*—which is distinguishable from this case for reasons discussed above—refused this very relief that Brda now seeks. *See Life Partners*, 2012 WL 12850253, at *4 (denying defendant's requests for "a written representation from Plaintiff, under oath, that Plaintiff has not conducted any further extra-

judicial discovery" and for "an order prohibiting Plaintiff from using any additional subpoenas or obtaining evidence against Defendants without complying with the FRCP").

Brda's request for unprecedented relief should not be granted. If the Court ordered the SEC to notify Brda any time it issues an administrative subpoena in the MMTLP Investigation that might be considered "related to this lawsuit," (Brda's Mot. at 15), that would impede and interfere with the SEC's ongoing investigation. *See Jerry T. O'Brien*, 467 U.S. at 750-51 ("[T]he imposition of a notice requirement on the SEC would substantially increase the ability of persons who have something to hide to impede legitimate investigations by the Commission.").

Further, Brda's request would unduly burden the SEC and this Court. *See id.* at 749 (explaining that "administration of [a] notice requirement [in an SEC investigation] would be highly burdensome for both the Commission and the courts"). If the Court were to order the sworn declaration and notice requirement that Brda requests, that would allow Brda to petition the Court anytime he deems the SEC's administrative subpoenas in the MMTLP Investigation to constitute "extra-judicial discovery" or "related to this lawsuit" (Brda Mot. at 15), an issue on which the parties obviously disagree. *See also SEC v. Pac. Bell*, 704 F. Supp. 11, 15 (D.D.C. 1989) ("The effectiveness and integrity of an SEC investigation is largely dependent upon the Commission's ability to conduct it in a timely and confidential manner without having to embark on numerous 'mini trials' in order to obtain relevant information.").

In addition, the parties have already identified significant discovery and depositions to be taken in this case. (*See* Joint Report, ECF No. 56 at 7-14). Thus, ordering the SEC to conduct the MMTLP Investigation using discovery in this lawsuit would unfairly prejudice the SEC by requiring it to forego depositions and discovery requests relevant to the Complaint's claims in order to allocate limited depositions and requests towards the MMTLP Investigation.

*Lastly*, Brda's request for sanctions, contempt, and attorney's fees should be denied. At a minimum, the SEC is substantially justified in carrying out its statutory authority to investigate possible securities law violations that it does not, in good faith, believe are alleged in the Complaint, based on the federal authority cited herein. *See supra* section III.A & III.B. Moreover, the SEC made a good-faith effort to avoid the filing of Brda's Motion, agreeing not to use the very materials Brda seeks to exclude. Brda, however, made the tactical decision to draft and file his Motion, seeking unprecedented relief, without making any counter-offer or proposing any solution to avoid court intervention. (*See* ECF No. 54-7). Therefore, he is not entitled to his attorney's fees, much less sanctions or contempt. *See* FED. R. CIV. P. 37(a)(5)(A) (providing that a court "must not order this payment" of attorney's fees incurred in making the motion if "(i) the movant filed the motion before attempting in good faith to obtain the [relief requested] without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust").

## IV.  CONCLUSION

For the reasons set forth above, the SEC respectfully requests that the Court deny Brda's Motion to Exclude in its entirety.

Dated: March 19, 2025                     Respectfully submitted,

/s/ *Patrick Disbennett*
Patrick Disbennett
Texas Bar No. 24094629
Christopher Rogers
Texas Bar No. 24051264
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Tel: 817-978-3821
disbennettpa@sec.gov
rogerschri@sec.gov

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I certify that the foregoing pleading and exhibits submitted herewith were served on all counsel of record via the Court's CM/ECF system on March 19, 2025. In addition, pursuant to Federal Rule of Civil Procedure 5 and Local Rule CV-5(a)(7)(D) and CV-5(c), I certify that an unredacted/sealed copy of the foregoing pleading and exhibits submitted herewith were served on all counsel of record electronically via email as follows:

Jason S. Lewis (jason.lewis@us.dlapiper.com)
Jason M. Hopkins (jason.hopkins@us.dlapiper.com)
Ryan D. Lantry (ryan.lantry@us.dlapiper.com)
*Attorneys for John Brda*

Jessica B. Magee (Jessica.Magee@hklaw.com)
Michael W. Stockham (Michael.Stockham@hklaw.com)
Kayla Joyce (Kayla.Joyce@hklaw.com)
*Attorneys for Georgios Palikaras*

/s/ *Patrick Disbennett*
Patrick Disbennett