# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

          v.

JOHN BRDA,
GEORGIOS PALIKARAS,

                    Defendants.

Case No. 4:24-cv-01048-SDJ

**Defendant Georgios Palikaras's Reply in Support of Motion to Dismiss [Dkt. # 44]**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..........................................................................................................................2

I.    The Court Can, and Should, Consider Sources Outside the Complaint. ....................2

II.    The SEC Fails to Plead Misrepresentation Claims Under Section 10(b) of the Exchange Act, Rule 10b-5 Thereunder, or Section 17(a) of the Securities Act. .........3

    A.    The Complaint Fails to Allege Palikaras Made a Material Misrepresentation or Omission at Investor Conference or in Tweets....................................................3

    B.    The Complaint Also Does Not Allege that Palikaras Made a Material Misrepresentations or Omission During the Private Investor Call. ........................6

III.    The SEC Fails to Plead Scheme Liability Against Palikaras.......................................8

    A.    The SEC Fails to Plead Something Beyond Misstatements and Omissions to Give Rise to Scheme Liability Claim Against Palikaras. .......................................8

    B.    The Complaint Fails to Allege Market Manipulation Where Details of the Alleged Scheme Were Known and Disclosed. .......................................................10

IV.    The Complaint Fails to Plead that Palikaras Obtained Money or Property in Violation of Section 17(a)(2). ...................................................................................12

V.    The Complaint Fails to Plead that Palikaras's Alleged Misrepresentations or Omissions Formed an "Essential Link" Between the Alleged Proxy Statement and the Corporate Action as Required to State a Claim Under Section 14(a) and Rule 14a-9............................................................................................................14

CONCLUSION......................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988).........................................................................................................4

*In re Bed Bath & Beyond Corp. Sec. Litig.*,
  687 F. Supp. 3d 1 (D.D.C. 2023)....................................................................................3

*Gissin v. Endres*,
  739 F. Supp. 2d 488 (S.D.N.Y. 2010).............................................................................8

*Halperin v. eBanker USA.com, Inc.*,
  295 F.3d 352 (2d Cir. 2002)............................................................................................4

*Krim v. BancTexas Grp. Inc.*,
  989 F.2d 1435 (5th Cir. 1993) .........................................................................................7

*Lorenzo v. SEC*,
  587 U.S. 71 (2019)...........................................................................................................8

*In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553 (S.D.N.Y. 2014)
  *aff'd*, 604 F. App'x 62 (2d Cir. 2015)...........................................................................6

*In re Overstock Sec. Litig.*, No. 19-cv-709, 2021 WL 4267920 (D. Utah Sept. 20, 2021),
  *aff'd*, 119 F.4th787 (10th Cir. 2024)...................................................................10, 11

*Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*,
  482 F.3d 372 (5th Cir. 2007) ...........................................................................................9

*Scanlan v. Tex. A&M Univ.*,
  343 F.3d 533 (5th Cir. 2003) ...........................................................................................2

*SEC v. Black*,
  No. 04-cv-7377, 2008 WL 4394891 (N.D. Ill. Sept. 24, 2008)...................................15

*SEC v. Couch*,
  No. 14-cv-1747, 2014 WL 7404127 (N.D. Tex. Dec. 31, 2014)..................................14

*SEC v. Das*,
  No. 10-cv-102, 2010 WL 4615336 (D. Neb. Nov. 4, 2010).........................................14

*SEC v. Joseph Schlitz Brewing Co.*,
  452 F. Supp. 824 (E.D. Wis. 1978)...............................................................................14

*SEC v. Mapp*,
  No. 16-cv-00246, 2017 WL 5177960 (E.D. Tex. Nov. 8, 2017) ............................................13

*SEC v. Mercury Interactive, LLC*,
  No. 07-cv-02822, 2010 WL 3790811 (N.D. Cal. Sept. 27, 2010) .................................14, 15

*SEC v. Mueller*,
  No. 21-cv-00785, 2024 WL 400897 (W.D. Tex. Jan. 11, 2024) .........................................9, 13

*SEC v. Reynolds*,
  No. 08-cv-0384, 2008 WL 3850550 (N.D. Tex. Aug. 19, 2008) .........................................7,  8

*SEC v. Seghers*,
  298 F. App'x 319 (5th Cir. 2008) ......................................................................................6

*SEC v. Stoker*,
  865 F. Supp. 2d 457 (S.D.N.Y. 2012) ..........................................................................3, 13

*SEC v. Syron*,
  934 F. Supp. 2d 609 (S.D.N.Y. 2013) ...............................................................................13

*SEC v. Verges*,
  716 F. Supp. 3d 456 (N.D. Tex. 2024) ...............................................................................8

*SEC v. Wilson*, No. 22-cv-00741, 2022 WL 1827594 (N.D. Tex. Dec. 28, 2022),
  *R. & R. adopted,* 2023 WL 172042 (N.D. Tex. Jan. 12, 2023) .........................................13

*Set Capital LLC v. Credit Suisse Grp. AG*,
  996 F.3d 64 (2d Cir. 2021)........................................................................................10, 11

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
  607 F.3d 1029 (5th Cir. 2010) ...........................................................................................7

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
  365 F.3d 353 (5th Cir. 2004) .............................................................................................3

*Yoshikawa v. Exxon Mobil Corp.*,
  No. 21-cv-00194, 2023 WL 5489054 (N.D. Tex. Aug. 24, 2023) ...........................................8

**Statutes**

Section 17(a) [15 U.S.C. § 77q(a)] .........................................................................................3

Section 17(a)(2) [15 U.S.C. § 77q(a)(2)].........................................................................2, 12, 13

Section 10(b) [15 U.S.C. § 78j(b)]......................................................................................... 3

Section 14(a) [15 U.S.C. § 78n(a)] ..................................................................................2, 14, 15

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................................1

Fed. R. Civ. P.  9(b) ...........................................................................................................1

Rule 14a-9 .................................................................................................................14, 15

Rules 10b-5 ...............................................................................................................3, 4, 9

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Georgios Palikaras, by and through undersigned counsel, files this reply brief in support of his motion to dismiss ("**Motion**") the Security and Exchange Commission's Complaint.[1]

## PRELIMINARY STATEMENT

The SEC's opposition brief ("**Opposition**") imports new allegations absent in the Complaint and exaggerates the facts actually alleged. It attempts to recast Palikaras as planner, coordinator, and actor in an elaborate scheme to promote TRCH's Dividend, cause a short squeeze, cause a price hike frenzy in TRCH stock, drive investors to TRCH's overpriced ATM Offering, solicit TRCH stockholders to vote in favor of merging with Meta I, *and* convince Meta I's board and stockholders to approve the merger—all despite failing to allege a short squeeze actually occurred or Palikaras would benefit from such a complex, and implausible, scheme. The Complaint, with all its flaws, tells a different story, and its fatal deficiencies warrant dismissal.

The Complaint's general allegations improperly group Palikaras and Brda as "Defendants." Others are too vague to meet the Rule 9(b) pleading standard. At base, the SEC's case against Palikaras rests on four allegations about what he allegedly said, or failed to say: (i) at the Investor Conference; (ii) during the Private Investor Call, secretly recorded and disseminated *in part* by others; (iii) in the Shorts Tweet; and (iv) in the T+2 Tweet. But the SEC fails to allege any material misrepresentation or omission, much less one upon which a reasonable investor would rely. And though the SEC admits Palikaras cannot be liable for social media users' posts sharing the Incomplete Secret Recording and Screenshot, it insists on leaning heavily on those posts to prop up its theory that Palikaras intended his (truthful and not misleading) statements to foment the market and create a run on TRCH stock ahead of the Record Date and merger. Opp. 22. This fails, especially because the SEC claims social media posts are, at best, "questionable sources." Opp. 1. Doubly so here, where the SEC ignored the call transcript—and the critical context it provides—in its Opposition (after failing to provide the Court a transcript itself).

---

[1] Capitalized terms not defined herein have the meanings set forth in the Motion.

The SEC also fails to demonstrate why it can repurpose its meager handful of statement-based claims to create a back door for scheme liability against Palikaras where, in contravention of applicable law in this Circuit, it alleges no independent deceptive act by Palikaras to further the supposed scheme beyond what he allegedly said or failed to say. In addition, the Opposition fails to salvage the Section 17(a)(2) claim because the law in this jurisdiction requires allegations—of which none exist—that Palikaras *personally* received money or property. Lastly, the Section 14(a) claim fails without any allegation that Palikaras's purported proxy solicitation formed an essential link (not causation, as the SEC misdirects) in TRCH stockholders' approval of the merger and Dividend.

The Complaint against Palikaras should be dismissed with prejudice.

## ARGUMENT

### I. The Court Can, and Should, Consider Sources Outside the Complaint.

Over the SEC's objection, (Opp. 9), this Court can, and should, consider publicly available articles, social media posts, and videos demonstrating the market's knowledge during the period relevant to the allegations against Palikaras.[2] *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (on motion to dismiss, court may consider documents central to plaintiff's claims).

The SEC seeks to foreclose the Court reviewing this information by claiming it is not "central to" its claims. Opp. 9. But the SEC's case against Palikaras balances precariously on the strained theory that he manipulated the market by failing to disclose an intent for the Dividend to cause a short squeeze to gas up pricing in the ATM Offering. The Complaint refers to "users on Twitter, Stocktwits, YouTube, Reddit, and other social media platforms"—the same platforms the Opposition characterizes as "questionable"—who "discussed the merger, the Preferred Dividend, and the short squeeze in the days leading up to the merger and Record Date." Compl. ¶ 91. But the SEC cannot have it both ways. Indeed, the flimsy core of its case against Palikaras is the market's actual awareness and open discussion of the Dividend causing a short squeeze. At all

---

[2] Notably, the SEC objects only to the sources cited in footnotes 11 and 12, but not to the article cited in footnote 2 in the Motion.

relevant times, the market already knew about and digested the information.  Though the SEC chose to omit such "discussions" from its Complaint—possibly because they counter its own narrative—the Court should consider them to test the sufficiency of the SEC's pleadings that Palikaras misled the market.

## II.    The SEC Fails to Plead Misrepresentation Claims Under Section 10(b) of the Exchange Act, Rule 10b-5 Thereunder, or Section 17(a) of the Securities Act.

### A.    The Complaint Fails to Allege Palikaras Made a Material Misrepresentation or Omission at Investor Conference or in Tweets.

The Motion demonstrates the Complaint fails to allege Palikaras made any misleading statement at the Investor Conference or in the Shorts Tweet or T+2 Tweet.  Mot. 12-16).  The Opposition fails to show otherwise.

To leap over the void of allegations against Palikaras related to the Investor Conference, the SEC doubles down on its group pleading tactic to tie Palikaras into Brda's alleged actions and statements at that event.[3]  But it is well-established, and the SEC offered no contrary authority, that group pleading is improper.  *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004) (allegations against "defendants" as a group are not imputable to a particular individual defendant).

The SEC also attempts to conjure something from nothing with Palikaras's Tweets. It claims "in touting the Preferred Dividend" via the Tweets, Palikaras failed to disclose "he and Brda had discussed and planned" using the Dividend to cause a short squeeze (which the SEC fails to allege took place) "as part of their undisclosed scheme to raise capital [with the ATM Offering] at inflated prices."[4]  Opp. 15.  But the Opposition did not cure the contradiction in, and fatal to, the case against Palikaras.  Indeed, the SEC alleged he hid a secret intent to create a short squeeze

---

[3] The SEC tries to repurpose its allegation of Palikaras's mere attendance at the Investor Conference to also support its scheme liability claims, (Opp. 41), but that also fails for the reasons set forth in Section III.A.

[4] The SEC also appears to contend, by citing *In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F. Supp. 3d 1, 11-12 (D.D.C. 2023) and *SEC v. Stoker*, 865 F. Supp. 2d 457, 468 (S.D.N.Y. 2012), that Palikaras's Tweets were "manipulative, deceptive, and materially misleading" because he had "soured" on TRCH or believed it would do poorly.  Opp. 37.  However, there is no such allegation anywhere throughout the SEC's 46-page Complaint.

while at the same time alleging his Shorts Tweet openly messaged his state of mind that the dividend would squeeze short investors, stating "#getyourshorty" and "shorts-in-flames this summer." Compl. ¶¶ 64-66; *see also* Opp. 37. One cannot keep a secret and openly message it at the same time. And just as the SEC fails to overcome this critical problem, it fails to refute Palikaras's argument that his T+2 Tweet was factual, and accurately observed information already in the market—published the same day as TRCH's Preferred Dividend Record Date announcement. Rather, the SEC now posits Palikaras and Brda *must have* engaged in a choreographed messaging campaign and Palikaras *must also have* carefully timed his Tweets to manipulate the market.[5] But this stretches the SEC's Complaint beyond reasonable inference, and it ignores the plain text and timing of both Tweets, which—unremarkably—followed TRCH shareholders approving the merger and the announcement of the Dividend record date. Mot. 16.

The SEC also fails to refute Palikaras's argument that he had no obligation to disclose information about TRCH's ATM Offering where (i) he had no duty to speak on the matter; and (ii) TRCH itself disclosed information about its ATM Offering, which any reasonable investor knew coincided with the offering of the Dividend and any purported short squeeze.[6] *See Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5."); *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 361 (2d Cir. 2002) (affirming dismissal where "allegedly omitted facts were either disclosed or implied").

Without identifying an independent duty to disclose this information the SEC attempts to salvage its claim by arguing a September 6, 2020 email about an earlier at-the-market offering referred, instead, to the future June 2021 ATM Offering in this case, and this allegation, by itself,

---

[5] The SEC noticeably walks back its claim that Palikaras overtly misstated or materially omitted something from his Tweets, instead arguing in its Opposition that, through those statements, he only "subtly" or "discreetly" furthered a "scheme." Opp. 6.

[6] TRCH's public filings were clear about the ATM Offering. The May 28, 2021 shelf registration statement clearly implied that TRCH may be making an offering of stock at market prices prevailing at the time of sale. Brief at 9-10. On June 16, 2021, as of the date of signing a definitive sales agreement with Roth Capital Partners, LLC, TRCH also filed the first prospectus supplement making it clear that a sale of shares would be at market prices in an "at the market offering." Any reasonable investor would have known that the ATM Offering coincided with the offering of the Preferred Dividend and any purported short squeeze.

is sufficient to imbue Palikaras with knowledge and a duty to disclose his alleged "secret" intent to create a short squeeze and an overpriced ATM Offering to capitalize on TRCH's inflated stock price.  Opp. 42-43.  But the SEC's argument stems from one allegation that Palikaras *and other Meta I directors* received a September 6, 2020 email from an unidentified Meta I director stating "Torchlight 'currently has in place and approved an At-The-Marketing (ATM) Offering,' and that 'Torchlight's plan is to use either their ATM, or do a deal with a brokerage firm that they have a relationship with, to raise the capital.'"  Comp. ¶ 36.[7]  In the SEC's view, merely receiving that email (without any allegation that he read, considered, understood, or agreed with it) tainted Palikaras with knowledge of an alleged scheme to drive up TRCH's stock price and raise capital via the distant ATM Offering many months later in June 2021.  But the September 2020 email to Meta I's directors refers to *an altogether different and earlier offering* that occurred in February 2021 when TRCH worked with Roth to raise approximately $22 million *before* the ATM Offering at issue in this action.[8]  Though absent from the Complaint, TRCH's SEC filings demonstrate this fact.[9]  The SEC skips past this critical fact because it unravels its theory that Defendants' hatched scheme was in place in September 2020 and materialized in June 2021.

Even if the SEC could stretch the Complaint to infer the September 6, 2020 email referred to the ATM Offering, it still fails to allege Palikaras read or considered the email, he understood it referred to a future offering, much less the ATM Offering in June 2021, or he agreed with the author.  Thus, the Complaint fails to fill the gap in time between the September 6, 2020 email and June 2021.  Indeed, the Complaint provides no facts describing private discussions between Palikaras and Brda about the short squeeze narrative, the ATM Offering, or other circumstances

---

[7] Tellingly, the Opposition selectively quotes its own allegations to present this as a secret conversation between Brda and Palikaras individually.  *See* Opp. 32 ("*Defendants* failed to disclose that *they secretly discussed and planned to dump shares* into the market via the ATM Offering in coordination with the Preferred Dividend.").

[8] *See* TRCH, Current Report (Form 8-K) (Feb. 8, 2021), *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001431959/000119983521000044/form-8k.htm.

[9] *Id.* at 1-2.

where Palikaras knew about (much less subscribed to) the alleged scheme and accepted the duty (or ability) to disclose facts about it.

**B.    The Complaint Also Does Not Allege that Palikaras Made a Material Misrepresentations or Omission During the Private Investor Call.**

The SEC ignores the transcript, and thus the requisite context, of the Private Investor Call placed before this Court, (*see* Exhibit A-1 to Brda's Motion to Dismiss) [Dkt. # 45-2],[10] and insists Palikaras made two material misrepresentations on that call to TRCH shareholders: (i) that TRCH was speaking to "top tier" and "the right potential buyers" for its oil and gas assets; and (ii) the value of the Preferred Dividend could be $1-20 per share.  Opp. 12-13, 19-23.  The SEC improperly promotes those excerpts without their context.[11]

It is well-established that "the standard for misrepresentation is whether the information disclosed, <u>understood as a whole</u>, would mislead a reasonable potential investor."  *SEC v. Seghers*, 298 F. App'x 319, 328 (5th Cir. 2008) (emphasis added); *see also In re Lululemon Sec. Litig.,* 14 F. Supp. 3d 553, 578 (S.D.N.Y. 2014) (finding a statement was not false after "consider[ing] [it] <u>in the context of the surrounding statements</u>" on a motion to dismiss), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (emphasis added).  When considered in the full context of the recording, no reasonable investor would have placed significance on speculative, generalized, non-actionable puffery:

- "today, you know, the price of oil from one – 12-month period, went from negative to being, you know, let's say in a good momentum. [] So the more time that goes by over the next six months, I can tell you that Torchlight management is speaking to the right potential buyers, that they're top tier, and frankly, nobody can predict if this is going to be a – a $1 or $20 dividend that it's very difficult because buyers have their own different motivations, and they'll think about the price differently depending on where we are in the market.  You have seen that in the United States the new President Biden has done some additional restrictions in the oil and gas industry. (Transcript, 8:5-20);

- "it's a preferred share for a reason, it's not priced, and in order for the shorts to deliver this, they have to own the stock, they cannot borrow the stock . . . they

---

[10] As stated in the Motion, Palikaras reserves the right to challenge the admissibility of the Incomplete Secret Recording at the appropriate time. Mot. 9 n.14.

[11] The full context is not available given the SEC's reliance on an unidentified social media source's recharacterized and edited recording of the call as its only evidence.

cannot short the stock, they have to own the stock to participate in the dividend, and so does any other normal investor.  As a result [] if you look at the statistics, you know, it could be a dollar to more than $20 according to the analysis.  It's . . . difficult to – to predict where it's going to end up. (*Id.*, 9:13-23);

- (when asked for a specific range) "I cannot give you that prediction.  I'm not part of the management of Torchlight, also I'm not an expert in oil and gas assets." (*Id.*, 10:5-8); and

- "And when I say 20, that could be also a low number, like honestly, today I know that whatever it was valued at last year, it's more, that's the only thing I can tell you, just based on the price of oil, and what the Biden administration has done. Other than that, everything else is speculative, so, I don't know[.]" (*Id.*, 10:10-16).

No reasonable investor listening to these statements in context (stunningly, the Incomplete Secret Recording the SEC failed to share removes the forward-looking statement disclaimers) would have taken a reference to potential buyers[12] or a dividend range as anything more than generic optimism from a self-identified non-expert.   The statements did not reference any timeframe, names, or details regarding an analysis.  *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010) ("sound financial condition" statement immaterial where plaintiff failed to plead defendant "presented any detailed, corroborating information, facts or figures to support the statement that might entice a reasonable person to attach importance to the statement").  This, coupled with TRCH's prior and later public disclosures containing specific, concrete facts on the value of its oil and gas assets and efforts to engage buyers (which the SEC characterized as grim),[13] would not have altered a reasonable investor's assessment of TRCH.  *See Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993) ("[P]rojections of future performance not worded as guarantees are generally not actionable under the federal securities laws."); *SEC v. Reynolds*, No. 08-cv-0384, 2008 WL 3850550, at *5 (N.D.

---

[12] Indeed, the SEC fails to point out that Palikaras made that statement in reference to a future six-month period. The Complaint is devoid of allegations about what efforts were made after the merger to sell the oil and gas assets, which appear to be the result of their efforts not to overlap the relevant time period of this case with another a so-called separate investigation into MMTLP. *See* Defendant John Brda's Motion to Exclude Improperly Obtained Evidence [ECF No. 55].

[13] *See, e.g.*, TRCH, Definitive Proxy Statement (DEFM14A) (May 7, 2021) at 93, *available at* https://www.sec.gov/Archives/edgar/data/1431959/000119312521154788/d117540ddefm14a.htm; TRCH Form 10-Q (May 14, 2021) at 13, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001431959/000119983521000292/form-10q.htm.

Tex. Aug. 19, 2008) ("A reasonable investor relies on common sense and objective facts, not on speculation as to stock price or potential—particularly when that speculation is not accompanied by any substantive information about the business."); *see also Gissin v. Endres*, 739 F. Supp. 2d 488, 510 (S.D.N.Y. 2010) ("The securities laws do not require that investors be treated like children . . . investors know that the stock market is a risky business and that when a company's officer makes predictions . . . they are not issuing guarantees.").

## III.    The SEC Fails to Plead Scheme Liability Against Palikaras.

### A.    The SEC Fails to Plead Something Beyond Misstatements and Omissions to Give Rise to Scheme Liability Claim Against Palikaras.

The SEC strains to conjure a scheme liability claim against Palikaras by: (i) contending *Lorenzo v. SEC*, 587 U.S. 71 (2019) holds that scheme liability need not be based on conduct beyond misrepresentations or omissions; and (ii) arguing, alternatively, that it alleges such conduct anyhow. Opp. 22 n.14, 26-37, 40-42. The SEC is wrong on the law and the facts.

The SEC latches on to *Lorenzo's* holding that disseminating false or misleading statements with intent to defraud can fall within the scope of Rules 10b–5(a) and (c) and hence give rise to scheme liability. Opp. 22 n.14. But—importantly—in *Lorenzo*, the facts giving rise to scheme liability involved a non-maker of a misleading statement taking *independent action* to disseminate the statement, *i.e.*, by "sending emails" with another person's false statements directly to prospective investors that "he understood to contain material untruths." 587 U.S. at 78, 96.[14] Regardless, decisions post-dating *Lorenzo* continue to hold that scheme liability requires more than just misstatements and omissions themselves. *See, e.g.*, *SEC v. Verges*, 716 F. Supp. 3d 456, 466 (N.D. Tex. 2024) (noting Texas district courts follow Second, Eighth, and Ninth Circuits,

---

[14] Post-*Lorenzo* decisions focus on dissemination being a form of conduct for scheme liability purposes. *See, e.g.*, *Yoshikawa v. Exxon Mobil Corp.*, No. 21-cv-00194, 2023 WL 5489054, at *9 (N.D. Tex. Aug. 24, 2023) ("Dissemination is a form of conduct[.]"). Here, the SEC does not base its against Palikaras on an allegation Palikaras, like the defendant in *Lorenzo* took independent steps to disseminate a misstatement in addition to the statements themselves. The "disseminators" referenced in the Complaint are non-parties. KingOneFolle – who disseminated the Screenshot with his own summary of takeaways from the call, including the $1-$20 range for the Dividend – and the anonymous social media user who circulated the Incomplete Secret Recording after having manipulated and spliced the audio to only focus on certain statements made by Palikaras. *See, e.g.*, Compl. ¶ 86; Mot. 21 n.29.

holding a scheme liability claim must encompass conduct distinct from misrepresentation or omission giving rise to Rule 10b-5(b) liability); *SEC v. Mueller*, No. 21-cv-00785, 2024 WL 400897, at *8 (W.D. Tex. Jan. 11, 2024) ("[A]n actionable scheme liability claim also requires something *beyond* misstatements and omissions, such as dissemination.") (quoting *SEC v. Rio Tinto*, 41 F.4th 47, 48 (2nd Cir. 2022)) (emphasis in original).  Here, Palikaras allegedly made misstatements in Tweets, the Private Investor Call, and the Investor Conference (where the SEC does not allege he spoke).  Thus, his purported misstatements and omissions are indivisible from their dissemination.  Fatally, the SEC does not allege any other independent act exposing him to scheme liability.

Perhaps recognizing its weak position, the SEC instead argues that the Complaint alleges Palikaras engaged in two independent deceptive or manipulative acts: (i) seeking Meta I's approval of corporate actions (*i.e.,* merger and drilling expense funding); and (ii) "closely coordinating" with Brda *to attend* the Investor Conference and the Private Investor Call and in Tweets.  But the Complaint lacks any allegations detailing such supposedly separate "conduct" to demonstrate how they could rise to the level of being "deceptive or manipulative acts" required for scheme liability. Indeed, despite Palikaras's repeated reference to *Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, the Opposition "sweeps too broadly" in attempting to characterize Palikaras as having participated in a scheme and in so doing tellingly ignores this Circuit's definition of what constitutes a deceptive or manipulative act.  482 F.3d 372, 390 (5th Cir. 2007).  Simply, the SEC's allegations fall short.  Mot. 25, 33.

As to the Meta I board, the Opposition ignores what Palikaras established in his moving papers.  The Complaint does not allege Palikaras fleeced or misled Meta I, its board of directors, advisors, or shareholders to agree to the merger or the funding of drilling expenses.  The SEC cannot overcome the reality that, at all times, the Meta I board knew the same information as Palikaras and, after consideration of sound financial and legal advice, exercised business judgment to determine whether to approve the merger or the drilling expenses.  Mot. 34; Compl. ¶¶ 35-36,

100-02. Generic allegations that Palikaras sought the Meta I board's approval do not allege inherently "manipulative or deceptive" conduct; certainly not rising to the level of scheme liability.

The SEC contends that Palikaras coordinated with Brda to communicate with investors. Opp. 33, 41-42.[15]  But the Complaint fails to allege facts showing Palikaras and Brda discussed when, where, how, or what to say to investors.  Indeed, the SEC's allegations against Palikaras are limited to him attending the Investor Conference with Brda,[16] participating in the Private Investor Call, and tweeting,[17] but no detailed allegations of planning or coordinating the content, timing, purpose, or actual messaging at issue exist.  Compl.  ¶¶ 60-64, 82-87, 90.

**B.**    **The Complaint Fails to Allege Market Manipulation Where Details of the Alleged Scheme Were Known and Disclosed.**

In his opening brief, Palikaras demonstrates that the SEC's scheme liability claim also fails because details of the Dividend and ATM Offering were disclosed and visible to the market.  Mot. at 27-32.  In response, the SEC erroneously contends this case is more akin to *Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64 (2d Cir. 2021), instead of *In re Overstock Sec. Litig.*, No. 19-cv-709, 2021 WL 4267920 (D. Utah Sept. 20, 2021), *aff'd*, 119 F.4th 787 (10th Cir. 2024), such that disclosure and visibility cannot excuse Palikaras.  Opp. 30-35.

The Complaint does not allege a case like *Set Capital*.  There, plaintiff alleged market manipulation against defendants on the basis that they issued millions of XIV notes while, every time volatility of the market spiked, defendants purchased the XIV notes back (as part of hedging activity) to cause the price of the XIV notes to plummet, trigger a liquidity squeeze in XIV futures contracts, and allow defendants to profit from the acceleration of XIV notes at a substantial loss to

---

[15] Despite claiming "months of Defendants' coordinated efforts," (Opp. 33), the Complaint only points to conversations between the two Defendants in June 2021.

[16] The SEC fails to explain how Palikaras's mere attendance at an investor conference could be actionable conduct in furtherance of some purported scheme. His attendance alone could not have created a false impression about the value of TRCH's Preferred Dividend.

[17] Social media users were discussing the short squeeze months before these tweets in June 2021 and were themselves promoting the short squeeze theory. Mot. 7 n.11 & 12. Accordingly, Palikaras's Tweets could not have manipulated investors by repeating information already being discussed online or factual information.

investors.  *See Set Capital*, 996 F.3d at 76-78.  The Court noted that defendant's open-market transactions, though visible to the market and involving legal activity, constituted more than routine hedging activity.  *Id.* at 77.  But unlike in *Set Capital*, the Complaint here does not involve allegations that Palikaras engaged in any open-market transactions.  Palikaras is not alleged to have played an active role in the market—like participating in any short squeeze or other hedging activity via the purchase or sale of TRCH shares.  Thus, by attempting to draw a parallel with *Set Capital*, the SEC has stretched the Complaint beyond its limits.

*Overstock* fits far more comfortably when compared against the Complaint.  TRCH, like Overstock, had significant short seller interest, publicly disclosed the terms of the Dividend and its attendant risks, made "readily apparent" that the Dividend would impact short sellers because it would not be registered or resold, and publicly disclosed the ATM Offering and its attendant risks in a timely manner.  Mot. at 27-32.

The SEC's attempt to distinguish its own case and *Overstock* on the basis that "the market did not appear to immediately react" to the Dividend announcement is misplaced.  In *Overstock*, the dividend, record date, and distribution date were announced together on the same day and did not require shareholder approval, while in this case—as a result of the reality of a merger transaction and the creation of a new post-merger entity—the details of the Dividend were announced December 14, 2020,[18] TRCH shareholders approved the Dividend on June 11, 2021, and the Record Date could only be announced on June 14, 2021.  Further, within **two months** of the Dividend announcement, in December 2020, a group of social media influencers were publicly discussing the Dividend in "a campaign to raise the [share] price of" TRCH, contributing to and encouraging the market's short squeeze expectation.  *See* Mot. at 6 n.9.  Contrary to the SEC's assertion, market recognition of the Dividend was immediate and widespread.  Meanwhile, the SEC's argument that *Overstock* is distinguishable because it did not involve any actionable

---

[18] Contrary to what the SEC might have this Court to believe, TRCH's September 2020 announcement of a dividend did not set forth any detail about the dividend.  It was not until December 14, 2020 that TRCH announced the Dividend would be restricted – not registered or sold.

misstatement or omission or any deceptive or manipulative conduct is a *non sequitur*.  As the SEC points out, such claims were dismissed for failure to plead.  As Palikaras argues above, the SEC's claims against Palikaras for misrepresentations, omissions, or deceptive or manipulative conduct should also be dismissed for failure to plead.

The SEC's apparent dissatisfaction with the public disclosures in this case is that they were not all provided at once in September 2020 when TRCH and Meta I began discussing a merger. However, as set forth above in II.A, the SEC's contention that disclosure of the ATM Offering should have happened as early as September 2020 based on a discussion of a potential at-the-market offering in the context of a general capital raise (that happened in February 2021) is off-base.  The May 2021 registration statement disclosed that TRCH could raise capital through an at-the-market offering and, after the SEC declared the registration statement effective on June 14, 2021 and an engagement agreement with Roth was executed, the announcement of the ATM Offering was made by TRCH on June 16, 2021.  Mot. at 9-10.  Further, based on the SEC's allegations in the Complaint, as of at least May 2021 (when Palikaras allegedly first interacted with TRCH investors, before the SEC contends Palikaras had any duty to speak) the market knew the Dividend would cause a short squeeze.  *See* Compl. ¶¶ 50, 61, 64-65, 86.

Where, as here, details regarding the Dividend, short squeeze, and ATM Offering—the ingredients to the alleged scheme—were disclosed and well-known to the public, claims for scheme liability must fail.[19]

## IV.    The Complaint Fails to Plead that Palikaras Obtained Money or Property in Violation of Section 17(a)(2).

The SEC relies exclusively on cases from other jurisdictions to argue it pleaded a Section 17(a)(2) claim, asserting Palikaras alleged misstatements resulted in TRCH raising $137.5 million in the ATM Offering which "primarily benefitted" Meta II, the post-merger company where Palikaras served as President, CEO, and board member.  The SEC's argument fails.

---

[19] Similarly, because the Dividend and ATM Offering were fully disclosed, scienter – an inference or motive to commit fraud – cannot be pled. *See* Mot. 16.

To state a Section 17(a)(2) claim in *this* jurisdiction, the SEC must specifically plead facts showing Palikaras *personally* obtained money or property.[20] *See, e.g.*, *Mueller*, 2024 WL 400897, at *19 (SEC established that defendant obtained money or property through testimony that defendant misappropriated money for personal use); *SEC v. Wilson*, No. 22-cv-00741, 2022 WL 18275941, at *5 (N.D. Tex. Dec. 28, 2022), *R. & R. adopted*, 2023 WL 172042 (N.D. Tex. Jan. 12, 2023) (granting default judgment for Section 17(a)(2) violation where defendant allegedly received money into his personal bank account); *SEC v. Mapp*, No. 16-cv-00246, 2017 WL 5177960, at *6-7 (E.D. Tex. Nov. 8, 2017) (SEC created fact issue for 17(a)(2) claim where defendant received significantly increased salary by means of false statement).

Based on this standard, the SEC's Section 17(a)(2) claim against Palikaras fails, resting solely on the allegation that TRCH raised $137.5 million that inured to Meta II's corporate benefit (and for which Meta II paid a mere $1 million civil penalty in its settled action filed alongside this action). The SEC's gratuitous contention that, notwithstanding its deficient pleading, "it is more than plausible the SEC will be able to prove at trial that Meta II paid Palikaras a salary and other compensation" from the $137.5 million is not only improper when considering a motion to dismiss, it runs afoul of *Mapp*.[21] Opp. 25. The Complaint, as it stands before the Court, is devoid of allegations regarding any compensation—in the form of a salary, bonus, or stock options—Palikaras possibly obtained by means of any misstatement, and the SEC's Section 17(a)(2) claim should be dismissed.

---

[20] These cases appear to stem from authority from the Southern District of New York, mostly *Stoker*, 865 F. Supp. 2d at 463 (finding it sufficient under Section 17(a)(2) for SEC to allege that defendant did not himself obtain any money or property but instead "obtained money or property for his employer while acting as its agent") or *SEC v. Syron*, 934 F. Supp. 2d 609, 639-40 (S.D.N.Y. 2013) (requiring SEC to plead that "the defendant personally gains money or property from the fraud"), or their progeny. Though *Stoker* and *Syron* represent a split in authority as to whether the SEC must plead that a defendant *personally* obtained money or property by means of false or misleading statements or omissions to properly state a claim under Section 17(a)(2), the Texas courts that rely on *Stoker* for the same proposition as *Syron*: that *personal* profit is necessary to state a Section 17(a)(2) claim.

[21] Such "plausible" facts are not alleged in the Complaint and on a motion to dismiss, the SEC cannot ask the Court to rule on the viability of claims not set forth in the very pleading against which Palikaras has moved. Rather, the Complaint must succeed or fail based on its specific allegations.

**V.    The Complaint Fails to Plead that Palikaras's Alleged Misrepresentations or Omissions Formed an "Essential Link" Between the Alleged Proxy Statement and the Corporate Action as Required to State a Claim Under Section 14(a) and Rule 14a-9.**

The SEC argues it pleaded a proxy fraud claim against Palikaras because: (i) it is not required to show a "causal relationship" between violation and injury to prove that Palikaras's alleged proxy solicitation was an "essential link" in accomplishing a transaction; and (ii) it sufficiently alleges that his purported statements during the Private Investor Call harmed the few investors on that call and solicited their votes in favor of the merger and the Preferred Dividend. Opp. 46-48.  The SEC's arguments are unavailing.

As a matter of law, the SEC incorrectly claims it is exempt from pleading an "essential link" between Palikaras's alleged misstatements and TRCH shareholders' approval of the merger and Preferred Dividend to hold him liable under Section 14(a) or Rule 14a-9.  Not one of the SEC's cases explicitly state—as the SEC represents—that it need not plead an "essential link."  Opp. 46-47.  Instead, those cases say only that the SEC need not plead *causation* between the proxy statement and investor injury (a position Palikaras does not advance).  *See SEC v. Couch*, No. 14-cv-1747, 2014 WL 7404127, at *7 (N.D. Tex. Dec. 31, 2014) (discussing only reliance, proximate causation, and harm); *SEC v. Joseph Schlitz Brewing Co.*, 452 F. Supp. 824, 832 (E.D. Wis. 1978) (discussing "causal connection" between injury and violation of proxy rules); *SEC v. Das*, No. 10-cv-102, 2010 WL 4615336, at *9 n.7 (D. Neb. Nov. 4, 2010) (discussing causation between injury and proxy statement).  The "essential link" pleading requirement has nothing to do with whether one causes injury to investors but, instead, whether there is some crucial connection between an alleged misstatements in a proxy solicitation and the approved corporate action.

Not only does the SEC rely on off-point authority, it ignores a number of decisions in its own cases clearly establishing its duty to plead an "essential link" to sustain a proxy fraud claim. Indeed, as set forth in *SEC v. Mercury Interactive, LLC*, to state a claim under Section 14(a), the SEC must show, among other things, that "the misrepresentation or omission was an essential link in the accomplishment of a transaction proposed in the proxy solicitation."  No. 07-cv-02822, 2010 WL 3790811, at *3 (N.D. Cal. Sept. 27, 2010) (superseded by regulation on other grounds)

(citations omitted).  *See also* SEC Proposed Jury Instructions at 37-38, *SEC v. Wyly*, No. 10-cv-05760 (S.D.N.Y. Apr. 29, 2014), ECF No. 311 ("[A] proxy solicitation is an essential link in the accomplishment of a corporate action or transaction if the votes of the shareholders solicited were required to effect a corporate action or transaction."); *SEC v. Black*, No. 04-cv-7377, 2008 WL 4394891, at *13 (N.D. Ill. Sept. 24, 2008) (noting that the second element to state a claim under Section 14(a) is that "the proxy was an essential link in accomplishing the proposed corporate action") (citing *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)).  The essential link requirement can "only be established when the proxy statement at issue *directly authorizes* the loss-generating corporate action."  *Mercury Interactive*, 2010 WL 3790811, at *3 (citation omitted) (emphasis in original).

Unable to escape the "essential link" pleading requirement, the SEC fails to state a claim against Palikaras under Section 14(a) and Rule 14a-9.  The Complaint lacks any allegation that the handful of so-called Italian Investors—whom Palikaras allegedly believed held a significant number of common shares of TRCH (Comp. ¶ 82)—actually were shareholders of TRCH, were present or represented at the special proxy meeting on June 11, 2001, or voted in favor of the merger or the Dividend.  Furthermore, the Complaint lacks any allegation that the Private Investor Call *itself*, as opposed to TRCH's numerous proxy statements, was essential to the approval of the merger or the Dividend.  The SEC's proxy fraud claim against Palikaras should be dismissed.

## CONCLUSION

In sum, the SEC, with its limited resources, stretches and strains itself to bring a weak and novel case against an individual after settling with the company at issue for a meager $1 million.  This is neither factually nor legally sound nor in the public interest.  For the foregoing reasons, and the reasons set forth in Palikaras's underlying Motion and in Defendant John Brda's reply brief—which is incorporated herein by reference—Palikaras respectfully requests that this Court grant this Motion to Dismiss with prejudice.

Dated: Dallas, Texas
      March 21, 2025

                        Respectfully submitted,

                        */s/ Jessica B. Magee*          
                        Jessica B. Magee
                        Texas Bar No. 24037757
                        HOLLAND & KNIGHT LLP
                        One Arts Plaza
                        1722 Routh Street, Suite 1500
                        Dallas, Texas 75201
                        Tel: (214) 964-9500
                        Jessica.Magee@hklaw.com

                        - and -

                        Kayla Joyce (*pro hac vice*)
                        New York Bar No. 6093314
                        HOLLAND & KNIGHT LLP
                        787 Seventh Avenue, 31st Floor
                        New York, New York 10019
                        Tel:  212-513-3200
                        Kayla.Joyce@hklaw.com

                        *Counsel for Georgios Palikaras*

## CERTIFICATE OF SERVICE

      I hereby certify that on March 21, 2025, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the Court, which will send notification of such submission to the counsel who have registered with the Court.

                        */s/ Jessica B. Magee*         
                        Jessica B. Magee