**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>     Plaintiff,<br><br>  - v -<br><br>JOHN BRDA,<br>GEORGIOS PALIKARAS,<br><br>     Defendants. | Civil No. 4:24-cv-1048-SDJ |

**<u>DEFENDANT BRDA'S REPLY IN SUPPORT OF MOTION TO DISMISS [DKT. #45]</u>**

## TABLE OF CONTENTS

                                                                                                    **Page**

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENTS & AUTHORITIES .............................................................................. 3

I.      Judicial Notice is Proper. ................................................................................. 3

II.     The SEC Fails to Allege Scheme Liability. ..................................................... 3

        A.      The SEC Cannot Ignore Fifth Circuit Precedent or the Import of *Overstock*......... 4

        B.      The SEC Does Not Allege A Manipulative or Deceptive Act............................... 8

III.    The SEC Fails to Allege an Actionable Misrepresentation. ............................ 10

        A.      "Commercially Reasonable Efforts"...................................................... 10

        B.      Third Party's Notes From March 2021 Conference ............................... 11

        C.      Intended Impact of Preferred Dividend ................................................. 12

IV.     The SEC Fails to Plead Scienter. ..................................................................... 13

V.      The SEC Fails to Allege Negligence. .............................................................. 14

VI.     The SEC Fails to Plead A Proxy Fraud Claim................................................. 14

VII.    The SEC Fails to Plead Aiding and Abetting Claims....................................... 15

VIII.   Request For Disgorgement and Officer/Director Bar Are Improper. ............... 15

IX.     Leave to Amend Is Not Properly Made. .......................................................... 15

CONCLUSION...................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
    292 F.3d 424 (5th Cir. 2002) ......................................................................................13, 14

*Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*,
    93 F.4th 1315 (11th Cir. 2024) ..........................................................................................11

*CHU de Quebec - Universite Laval v. Dreamscape Dev. Grp. Holdings, Inc.*,
    2023 WL 2695092 (E.D. Tex. Mar. 29, 2023)  ..................................................................15

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976).............................................................................................................4

*Faulkner v. Verizon Commc'ns, Inc.*,
    189 F. Supp. 2d 161 (S.D.N.Y. 2002).................................................................................11

*Faulkner v. Verizon Commc'ns, Inc.*,
    156 F. Supp. 2d 384 (S.D.N.Y. 2001)...............................................................................1, 10

*Ferris v. Blucora, Inc. Key Leadership Change of Control Severance Plan*,
    736 F. Supp. 3d 506 (E.D. Tex. 2024)..................................................................................2

*Hundahl v. United Benefit Life Ins. Co.*,
    465 F. Supp. 1349 (N.D. Tex. 1979) ................................................................................9, 10

*In re Amaranth Natural Gas Commodities Litig*,
    587 F. Supp. 2d. 513 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ...........................7

*In re Compaq Sec. Litig.*,
    848 F. Supp. 1307 (S.D. Tex. 1993) ...................................................................................12

*In re First Am. Fin. Corp.*,
    2021 WL 4807648 (C.D. Cal. Sept. 22, 2021) ...................................................................10

*In re Overstock Sec. Litig.*,
    119 F.4th 787 (10th Cir. 2024) ................................................................................. *passim*

*In re Overstock Sec. Litig.*
    2020 WL 5775845 (D. Utah Sept. 28, 2020)..................................................................12, 13

*In re Overstock Sec. Litig.*,
    2021 WL 4267920 (D. Utah Sept. 20, 2021), *aff'd*, 119 F.4th 787 (10th Cir.
    2024) ...................................................................................................................................14

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)................................................................................................13

*Neiman v. Bulmahn*,
   854 F.3d 741 (5th Cir. 2017) .............................................................................................14

*Ramirez v. J.C. Penney Corp. Inc.*,
   2015 WL 5766498 (E.D. Tex. Sept. 29, 2015) ....................................................................3

*Regents of Univ of California v. Credit Suisse First Bos. (USA), Inc.*,
   482 F.3d 372 (5th Cir. 2007) ..................................................................................... *passim*

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) .............................................................................................13

*SEC v. Berry*,
   2008 WL 4065865 (N.D. Cal. Aug. 27, 2008) ...................................................................15

*Set Capital LLC v. Credit Suisse Grp. AG*,
   996 F.3d 64 (2d Cir. 2021)..........................................................................................4, 6, 7

*Technest Holdings, Inc. v. Deer Creek Fund LLC*,
   2008 WL 3449941 (S.D.N.Y. Aug. 12, 2008)....................................................................13

*United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*,
   744 F. Supp. 3d 676 (E.D. Tex. 2024)..................................................................................1

*United States v. Mulheren*,
   938 F.2d 364 (2d Cir. 1991)...............................................................................................13

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997) .............................................................................................12

## Other Authorities

Federal Rules of Civil Procedure 9................................................................................1, 9, 12, 15

Federal Rules of Civil Procedure 12..........................................................................................1, 3

Eastern District of Texas Local Rules .....................................................................................1, 15

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and Local Rule CV-7(f), Defendant John Brda files this reply brief in support of his motion to dismiss ("**Motion**") [Dkt. #45] the Complaint [Dkt. #1] brought by Plaintiff Securities and Exchange Commission.[1]

## **PRELIMINARY STATEMENT**

The SEC's opposition brief (the "**Opposition**") [Dkt. #55] does not address the failures that warrant dismissal of the Complaint.  The Opposition ignores Mr. Brda's arguments; concedes key facts; attempts to revise the Complaint;[2] abandons alleged misrepresentations as to Mr. Brda; fails to mention (let alone distinguish) the Motion's authorities highlighting the Complaint's deficiencies; attempts to rewrite established Fifth Circuit precedent on what constitutes manipulative or deceptive conduct; and pretends the market's awareness (negating the SEC's theory) does not exist.  Notably, in its 50-page Opposition, the SEC fails to even reference either:

(1) *Regents of Univ of California v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 390 (5th Cir. 2007)—Mr. Brda's primary ground for dismissal for failure to allege manipulative or deceptive conduct and which defines what constitutes manipulative or deceptive conduct in the Fifth Circuit [*see* Mot. at 12, 22–24, 27–28; *see also* Dkt. #38 at 2]; or

(2) *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 389, 400 (S.D.N.Y. 2001)— where a court extensively analyzed "commercially reasonable efforts" language in a public filing as a purported misrepresentation [*i.e.*, "use all commercially reasonable efforts" to consummate merger] and held the statements "were not actionable because they were mere predictions or statements of opinion."  [*See* Mot. at 13, 38–41; *see also* Dkt. #38 at 2.]

---

[1] Pursuant to Federal Rule of Civil Procedure 10(c), Mr. Brda joins Defendant Palikaras' concurrently filed reply.  The arguments made in Mr. Palikaras' reply in support of dismissal are adopted in whole and incorporated herein, to the extent applicable.  Capitalized terms having the meanings set forth in the Motion and any references to page numbers are to the ECF stamped filing page numbers.

[2] A "complaint may not be amended by the briefs in opposition to a motion to dismiss."  *United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*, 744 F. Supp. 3d 676, 694 (E.D. Tex. 2024) (citations omitted).

Indeed, the Opposition expressly states that: (i) "[t]he SEC does not rely on ['omission liability'] theory for any of its claims" related to Italian Call; and (ii) "the Complaint does not allege an 'intent only' manipulation theory." [Opp. at 33, 49.] Moreover, the Opposition does not dispute, and the SEC therefore concedes,[3] the following key issues set forth in the Motion:

- "the SEC cannot rely on the Italian Call to attribute a misrepresentation claim to Mr. Brda" "because Mr. Brda did not make the statement" [Mot. at 42–43];

- "the SEC's theory that Mr. Brda intended to create a short squeeze is inconsistent with its allegations that Torchlight intended to defraud retail investors through the ATM Offering" because "[i]f Torchlight wanted to squeeze short sellers as the SEC claims, it would not introduce significant liquidity in the market via the ATM Offering (or an earlier underwritten offering in February 2021) that would allow the shorts to cover their positions and remove the scarcity that causes a short squeeze in the first place" [*id.* at 31]; and

- "[t]here is no dispute that the ATM Offering, and its terms, were publicly and truthfully disclosed and that it offered Torchlight shares *at the prevailing market price* that was *indicative of a free market process*—the antithesis of false pricing signals that are characteristic of manipulative conduct." [*id.* at 12–13 (emphasis in original).]

The SEC's Complaint is defective for several, independent reasons. *First*, the gravamen of this case is the SEC's novel contention that the former CEOs of Torchlight and Meta I engaged in a scheme to manipulate the market by intending (though ultimately failing) to create a short squeeze of Torchlight stock via the announcement of the Preferred Dividend and to "take advantage" of the short squeeze during a premerger ATM Offering of Torchlight stock. But the ATM Offering and the Preferred Dividend were lawful, issued as announced, their nature was fully and accurately disclosed numerous times, and the market understood the potential impacts the Preferred Dividend could have on short sellers. *Second*, the Opposition strips down the misrepresentation allegations as to Mr. Brda to the point of no particularity and implausibility,

---

[3] "But facing a motion to dismiss is the precise time that a party should respond. Failure to do so may constitute abandonment of a claim." *Ferris v. Blucora, Inc. Key Leadership Change of Control Severance Plan*, 736 F. Supp. 3d 506, 519 (E.D. Tex. 2024) (Jordan, J.) (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).

which are ultimately not actionable.  *Third*, the SEC fails to plead scienter and relies on a regurgitation of the alleged deceptive or manipulative acts and a repackaging of the purported misrepresentation.  Much like the Complaint's theory, the scienter allegation is circular and self-defeating.  *Finally*, the SEC does not dispute that its ancillary claims cannot survive absent a primary violation.

Accordingly, the Complaint does not pass 12(b)(6) muster where Mr. Brda engaged in legitimate corporate actions for the benefit of shareholders that were truthfully and fully disclosed.

## ARGUMENTS & AUTHORITIES

### I.    JUDICIAL NOTICE IS PROPER.

On the one hand, the SEC's Complaint relies on "[p]osts and content from other users on social media" to show what investors knew, [Compl. ¶¶ 90–91], but on the other hand, "objects to the articles, social media posts, and YouTube videos that Defendants cite in their Motions that purport to show what the market knew." [Opp. at 19.]  The SEC cannot selectively have it both ways.  Additionally, it is well settled the Court may consider social media commentary "for the limited purpose of the existence of these statements in the public domain." [Mot. at 20 n.23 (citing *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006))]; *see also Ramirez v. J.C. Penney Corp. Inc.*, 2015 WL 5766498, at *2 (E.D. Tex. Sept. 29, 2015) (judicial notice proper "[f]or the limited purpose of the existence of these statements in the public domain").

### II.   THE SEC FAILS TO ALLEGE SCHEME LIABILITY.

The SEC concedes that it must plead particularized facts demonstrating that Mr. Brda committed a manipulative act that artificially (*i.e.*, unlawfully) impacted the market. [Opp. at 36.] However, the SEC failed to plead the required deceptive conduct under Fifth Circuit precedent and, given the facts as alleged in the Complaint, is unable to do so.  As a result, the Complaint fails to allege a cognizable scheme liability theory and should be dismissed.

**A.**        **The SEC Cannot Ignore Fifth Circuit Precedent or the Import of** *Overstock***.**

Tellingly, the SEC outright ignores the Fifth Circuit's definition of "manipulation" that is repeatedly set forth in the Motion and the Fifth Circuit's rejection of the SEC's definition for "deception."  Instead, the SEC asserts "conduct is 'deceptive' if it 'has the purpose and effect of creating a false appearance'" and "[m]anipulative conduct 'refers generally to practices . . . that are intended to mislead investors by artificially affecting market activity." [Opp at 36 (quoting *Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 76 (2d Cir. 2021)).]  But the Supreme Court has described "manipulative" as "virtually a term of art when used in connection with securities markets," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976), and the SEC's ellipses misleadingly omits what has fit the term of art:  "wash sales, matched orders, or rigged prices." *Set Cap.*, 996 F.3d at 76.[4]  None of which are alleged here.

The Fifth Circuit further refined "manipulative acts" to mean "creating the false impression that certain market activity is occurring when in fact such activity is unrelated to actual supply and demand." *Regents*, 482 F.3d at 390 (quoting *Hundahl v. United Benefit Life Ins. Co.*, 465 F. Supp. 1349, 1360 (N.D. Tex. 1979)).  Further, in *Regents*, the Fifth Circuit reversed the district court and found that the "district court's definition of 'deceptive acts,'" which in turn adopted the SEC's *amicus curiae* position, "sweeps too broadly." *Id.*  The Fifth Circuit held that "the SEC's proposed test"—that "primary liability attaches to anyone who engages in a transaction whose principal purpose and effect is to create a false appearance of revenues"—"(by which we are not bound) is too broad to fit within the contours of § 10(b)." *Id.* at 386–87.  The SEC's Opposition re-urges its overly broad definition and ignores precedent set by *Regents*.

---

[4] For example, in wash sales, transactions are generated to create an appearance of demand without any actual change in ownership; and, in matched orders, prearranged transactions between colluding parties create a similar appearance of demand.

The SEC erroneously asserts "[t]he only commonality between this case and *Overstock* is both cases had a dividend that could potentially cause a short squeeze."  [Opp. at 41 (citing *In re Overstock Sec. Litig.*, 119 F.4th 787 (10th Cir. 2024)).]  The SEC trumpets the 'immediacy' of the market's analysis of Overstock's public disclosure.  [*See id.*]  But temporal immediacy was not a factor the court considered; rather, the court in *Overstock* expressly "examine[d] the market's knowledge when [investors] purchased shares."  119 F.4th at 805.  And regardless, "any investors reading *Seeking Alpha*, *MarketWatch*, or *Bloomberg* were free to make their own informed judgments as to how Overstock's dividend issuance might affect the price of Overstock shares."  *Id.*; [*see also* Mot. at 20 n.21 (citing *Seeking Alpha*).]

The SEC further posits that "the dividend in Overstock was not paired with *any* actionable misstatements or omissions or *any* other deceptive or manipulative conduct."  [Opp. at 41 (emphasis in original).]  The same unactionable allegations are made here.  In *Overstock*, the plaintiff argued that the "act of issuing an unregistered dividend alone constitutes manipulative conduct because Defendants acted with the intent to create an artificial price" and failed to disclose (i) "that Defendants were bluffing about issuing an unregistered dividend and that they intended to register the dividend with the SEC all along"; (ii) "that it was illegal for Overstock to issue the digital dividend without registering it with the SEC"; and (iii) "Overstock's true reason behind not registering the dividend:  to create an artificial price at which Byrne could sell his shares."  119 F.4th at 802, 805–07.  Despite allegations that a short squeeze actually did occur and that Overstock's CEO sold shares at the peak to personally yield $90 million, none of these alleged acts or misleading statements were actionable, and "Defendants' disclosures prevented any false signal that would deceive investors from entering the market."  *Id.* at 805.

The same is true here and dismissal is warranted for the same reasons as in *Overstock*. Torchlight repeatedly disclosed the details and nature of the Preferred Dividend:  (i) on September 21, 2020, Torchlight announced the proposed merger with Meta I and in a press release disclosed a plan to issue the Preferred Dividend for legacy shareholders to "retain full value in [Torchlight's] oil and gas assets"; (ii) on December 14, 2020, Torchlight and Meta I announced the signing of the merger agreement and in Torchlight's 8-K, it further disclosed that legacy shareholders "will be entitled to a dividend based on the net proceeds of the sale of" the O&G Assets, including that that the asset sale must occur prior to the earlier of December 31, 2021 or six months from the closing of the merger; otherwise, the combined company would effect a spin-off of those assets, with preferred shareholders receiving their pro rata interest in the spin-off entity; (iii) Torchlight's preliminary (February 4, 2021) and definitive (May 7, 2021) proxy statements reiterated that a sale of the O&G Assets may not occur and in the absence of a sale, any unsold assets may be spun off from Meta II; and (iv) Torchlight's May 28, 2021 shelf registration disclosed the details of the Preferred Dividend (like *Overstock*, it would not be registered for resale).  [*See* Mot. at 15–21.]

Instead, the SEC attempts to equate this case to *Set Capital LLC v. Credit Suisse Group AG*, wherein the Second Circuit reiterated that "[f]or market activity to 'artificially' affect a security's price, we generally ask whether the transaction or series of transactions 'sends a false pricing signal to the market' or otherwise distorts estimates of the 'underlying economic value' of the securities traded." *Id.* at 76.  In *Set Capital*, the Second Circuit found deception because the defendant falsely stated in its offering documents that warnings that a volatility spike "could" or "may" impact prices was insufficient because a decade of volatility confirmed price impact was a "virtual certainty" and a warning of potential conflict of interest was insufficient where notes were structured for bank to "profit at its own investor's expense." *Id.* at 85–86.  The plaintiffs alleged

Credit Suisse intentionally increased the supply of an illiquid investment product, known as "XIV Notes," and issued "millions of additional XIV Notes knowing or recklessly disregarding the **_virtual certainty_** that their own hedging activity would trigger a liquidity squeeze . . . [and] destroy the value of the XIV Notes." *Id.* at 76 (emphasis added).  Credit Suisse did not merely engage in hedging activity; the firm intentionally altered the balance of supply and demand "following three prior volatility spikes" by flooding the market with more supply as part of a scheme to "destroy the value of the XIV Notes during the next volatility spike." *Id.* at 77.  As alleged, the effects of that scheme were dramatic because during the volatility episode, Credit Suisse's trading activity was 167x the normal market volume, and XIV Notes lost 96% of their value, amounting to $1.8 billion in market losses. *Id.* at 73–74.[5]

Here, there is no allegation that Torchlight or Mr. Brda introduced inaccurate information into the market with respect to the Preferred Dividend.  To the contrary, the terms for the Preferred Dividend were accurately and fully disclosed.  And unlike the "virtual certainty" of the squeeze in *Set Capital* after three prior instances of price hikes, the SEC here cannot even allege a short squeeze even occurred despite hindsight and the passing of nearly 4 years.  Rather, the SEC alleges it "is inconclusive."  [Compl. ¶ 96.]  Torchlight announced its intent to issue the dividend and detailed all related risks, including the SEC regulatory and execution risk that the issuance might not happen as scheduled or intended.  In other words, Torchlight's "disclosures prevented any false signal that would deceive investors from entering the market." *Overstock*, 119 F.4th at 805.

---

[5] The court caveated that "short selling or other hedging activity is not, by itself, manipulative—even when it occurs in high volumes and even when it impacts the market price for a security." *Id.* at 77; *see also In re Amaranth Natural Gas Commodities Litig*, 587 F. Supp. 2d. 513, 534–35 (S.D.N.Y. 2008) ("The laws that forbid market manipulation should not encroach on legitimate economic decisions lest they discourage the very activity that underlies the integrity of the markets they seek to protect."), *aff'd*, 730 F.3d 170 (2d Cir. 2013).  And although the Second Circuit found manipulative *intent* on the facts pled in *Set Capital*, it made clear that "[d]eception is the gravamen of a claim for market manipulation, and the market is not misled when a transaction's terms are fully disclosed."  996 F.3d at 77.

**B.** **The SEC Does Not Allege A Manipulative or Deceptive Act.**

In order to "retain the title of manipulation," "conduct that affects the marketplace indirectly can violate § 10(b) only if it constitutes deception" and "[a]n act cannot be deceptive within the meaning of § 10(b) where the actor has no duty to disclose." *Regents*, 482 F.3d at 386, 391 (citing *Hundahl*, 465 F. Supp. at 1359, 1362).  In sum, "manipulation" is comprised of "practices in the marketplace which have the effect of either creating the false impression that certain market activity is occurring when in fact such activity is unrelated to actual supply and demand or tampering with the price itself." *Id.* at 390.  Here, the SEC attempts to clarify in its Opposition that the following five items are the purported deceptive or manipulative acts the Complaint relies on—none of which are cognizable:

(1) Torchlight issued "press releases in September and December 2020 emphasizing the Preferred Dividend over other aspects of the merger agreement";

(2) Mr. Brda hired consultants "in order to ensure investors 'understand the dividend properly'";[6]

(3) "Defendants never disclosed the short squeeze or their plans to capitalize on a jump in Torchlight's stock price through the ATM Offering, or their belief that a temporary short squeeze was in effect as they sold shares directly to investors through the ATM Offering";

(4) Mr. "Brda told at least one investment firm that he expected the Preferred Dividend's impact on short sellers would "driv[e] our stock price. . . [at] closing'"[7] and Mr. Palikaras' statement at the Italian Call; and

(5) "social media messaging to foment excitement for the short squeeze among their retail-investor followers, without expressly acknowledging the squeeze" but only citing "Palikaras' shorts-in-flames tweet."

[Opp. at 37–38.]

---

[6] Citing to paragraph 58 of the Complaint, the Opposition improperly injects an allegation that Torchlight was "a company unable to fund its operations." [Opp. at 37.]  This allegation is not in the Complaint.

[7] Paragraph 44 of the Complaint actually alleges "a note-taker at an investor conference on March 17, 2021—the day before Torchlight filed its 2020 Form 10-K—recorded Brda telling an investment firm: '15 things driving our stock price, last thing before closing, is a short position, is hard to deliver dividend if short on closing.'"

*Hundahl* demonstrates the "claims are not cognizable under federal law," 465 F. Supp. at 1366, which the Fifth Circuit in *Regents* "adopted [then district court] Judge Higginbotham's reasoning and definition in full."  482 F.3d at 391.

These items "are not cognizable under federal law" because they "seek a disclosure of management's motive" and the SEC's "allegation as to these would require management to label its decisions."  *Hundahl*, 465 F. Supp. at 1365.  None of these items "point[] to misstated or nondisclosed facts."  *Id.*  The SEC does not allege press releases were false nor what other aspect of the merger agreement were de-emphasized.  Similarly, the SEC does not allege the consultants were hired to peddle false information but rather "to ensure investors 'understand the dividend properly.'"  [Opp. at 37.]  Again, the SEC alleges "Defendants never disclosed the short squeeze," [*id.*], but the Complaint does not even allege a short squeeze ever happened.  [*See* Compl. ¶ 96 ("inconclusive").]    With respect to the March 2021 conference statement, the Opposition improperly attempts to re-write the note-taker's notes and in turn what the Complaint alleged; this further underscores the Rule 9(b) deficiencies identified in the Motion.  [*See* Mot. at 45; *see also infra* at Section III.B.]  The SEC does not dispute that Mr. Brda was not the "maker" of statements at the Italian Call, nor the "maker" of Mr. Palikaras' tweets. [Mot. at 41–43.]  The catch-all "social media messaging" does not satisfy Rule 9(b)'s particularity requirement.  [*See* Mot. at 27–28.]

To the extent the SEC attempts to shoehorn its alleged misrepresentation claims into purported manipulative or deceptive acts, this is improper.[8]  "Scheme liability . . . hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement."  [Mot. at 45 (citing *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011)).]  Without more, "a fully disclosed corporate transaction" is not manipulative or deceptive. *Overstock*, 119 F.4th at 793.

---

[8] Notably, the Opposition makes no claim that Mr. Brda committed "deceptive or manipulative conduct . . . separate and apart from his misstatements and omissions." [Opp. Section V.B.2(iv) at 50–52.]

In sum, "where as here the central thrust of a claim or series of claims arises from acts of corporate mismanagement, the claims are not cognizable under federal law" and "[t]o hold otherwise would be to eviscerate the obvious purpose of the *Santa Fe* decision, and to permit evasion of that decision by artful legal draftsmanship." *Hundahl*, 465 F. Supp. at 1365–66.

## III.     THE SEC FAILS TO ALLEGE AN ACTIONABLE MISREPRESENTATION.

The SEC concedes it is not attempting to attribute statements at the Italian Call to Mr. Brda; thus, leaving only (i) Torchlight's disclosure of "commercially reasonable efforts" to sell O&G Assets; (ii) a third party's notes from a March 2021 conference; and (iii) the anticipated and intended impact of the Preferred Dividend.  [*See* Opp. at 21–24.]  None of those are actionable.

### A.     "Commercially Reasonable Efforts"

The Motion argued that the SEC's purported misrepresentation claim based on "'commercially reasonable efforts' to sell Torchlight's O&G Assets" fails for numerous independent reasons, including: (i) failure to allege scienter; (ii) the statements were forward looking, protected by the bespeaks caution doctrine, and were non-actionable expressions of corporate optimism; (iii) failure to allege falsity; and (iv) the statements were true.  [*See* Mot. at 35.]  Most notably, the SEC's Opposition fails to distinguish or even address *Faulkner I*, where a court extensively analyzed "commercially reasonable efforts" language as a purported misrepresentation [*i.e.*, "use all commercially reasonable efforts" to consummate merger] and held the statements "were not actionable because they were mere predictions or statements of opinion," 156 F. Supp.2d 384 (S.D.N.Y. 2001), despite being cited extensively throughout the Motion.  [*See* Mot. at 13, 38–41].[9]  Likewise, in *Faulkner II*, the court held that "allegations that defendant

---

[9] [*See also* Mot. at 40 (citing *Kas v. First Union Corp.*, 857 F. Supp. 481, 484 (E.D. Va. 1994) (because statement that defendants would use "best efforts" to consummate merger at earliest practicable date "were no more than 'expressions of optimism' about the future consummation of the merger, they are not actionable under § 10(b) or Rule 10b-5"); *In re First Am. Fin. Corp.*, 2021 WL 4807648, at *4 (C.D. Cal.

'harbored a secret intent' to ultimately terminate merger agreement was insufficient to plead falsity of statements that it would use 'commercially reasonable efforts' to consummate merger." [Mot. at 50 (citing *Faulkner II*, 189 F. Supp. 2d 161, 173 (S.D.N.Y. 2002)).]

Here, Torchlight not only heavily caveated and fully disclosed its statements that it "will use commercially reasonable efforts" to sell O&G Assets, but also, the ultimate outcome was also fully disclosed (numerous times) as the alternative if a sale was not consummated. [*Compare* Mot. at 38–39 ("possibility that the Combined Company may not be able to sell all of the O&G Assets") (citing Definitive Proxy) *with* Opp. at 28 ("Brda assured investors that 'commercially reasonable efforts' would be undertaken to sell Torchlight's assets . . . .").][10]

## B.    Third Party's Notes From March 2021 Conference

This purported allegation, related to a third party's notes, cannot constitute a cognizable misrepresentation for at least four independent reasons.  *First*, the allegation made in the Complaint does not comport with the Opposition's argument.  Citing to paragraph 44 of the Complaint, the SEC asserts Mr. "Brda privately told an investor the opposite: that he believed the Preferred Dividend would cause a short squeeze and thereby drive up Torchlight's stock price before the merger closing." [Opp. at 24.]  But what the Complaint actually alleges is that "a note-taker at an investor conference on March 17, 2021—the day before Torchlight filed its 2020 Form 10-K—recorded Brda telling an investment firm:  '15 things driving our stock price, last thing before closing, is a short position, is hard to deliver dividend if short on closing.'" [Compl. ¶ 44.]

---

Sept. 22, 2021) (dismissing claims based on defendant's statement that it would use its 'best efforts" to protect customer data).]

[10] Indeed, the verb "*will*" as used in the Definitive Proxy indicates a future possibility.  *Cf Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1331 (11th Cir. 2024) ("In this context, 'will' seems to be used as merely a future tense verb as to what Protective may choose to do in the future.").

*Second*, the SEC relies on this same alleged statement to constitute an alleged manipulative or deceptive act.  [*See* Opp. at 24, 38.]  But the two are "distinct."  [Mot. at 34 (quoting *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011).]

*Third*, the SEC's reliance "on an annotated, out-of-context excerpt from a 'note-taker' at the conference" does not satisfy Rule 9(b).  [Mot. at 28.]  The Opposition's attempt, [*see* Opp. at 47 n.30], to make a Rule 9(b) showing is unavailing and contrary to Fifth Circuit law because the paraphrased "excerpts, standing alone, cannot satisfy the 'who, what, when, where, and how' required by Rule 9(b)," especially where "the excerpts do not quote a defendant" or when they "paraphrase previous statements."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179–80 (5th Cir. 1997) ("This lack of specificity stands in contrast to the widespread nature of the conspiracy that [plaintiffs] attempt to allege.").

*Fourth*, information already known to the market is not material.  *See In re Compaq Sec. Litig.*, 848 F. Supp. 1307, 1317 (S.D. Tex. 1993).  Here, the market was already apprised of the possibility of a short squeeze by March 2021.  [*See* Mot. at 20 n.23; *see also* Dkt. #44 at 16.]

## C.     Intended Impact of Preferred Dividend

The SEC alleges that "Brda failed to disclose that his 'anticipated and intended impact of the Preferred Dividend was that it would cause a short squeeze.'"  [Opp. at 24.]  The SEC's theory here with respect to the intended impact of the Preferred Dividend, hinges on a "September 6, 2020 email, a member of Meta I's board wrote the other members of Meta I's board."  [Compl. ¶ 36; *see also* Opp. at 25.]  Mr. Brda's alleged intent based on a third party's noncontextualized email that paraphrases his understanding of Mr. Brda's mindset constitute material misrepresentation or omission.  [*See* Dkt. #44 at 30–31.]  Indeed, "Mr. Brda did not make the statement."  [Mot. at 42.]

An executive's "very public disdain for short sellers is beside the point because there was a legitimate business purpose for issuing the dividend."  *Overstock I*, 2020 WL 5775845, at *8

(D. Utah Sept. 28, 2020); *see id.* at \*10.  That is because courts "will not find liability where the defendant may have had both manipulative and non-manipulative purposes."  *Id.* at \*11.[11]  As a result, the mere presence of a secondary or alternative purpose is insufficient to support a manipulation claim where a legitimate purpose for the corporate action exists.

## IV.   THE SEC FAILS TO PLEAD SCIENTER.

Even if the Complaint contained sufficient allegations to plausibly allege a material omission or manipulative acts, the SEC's failure to plead scienter is fatal to its claims.

*No Motive*.  "Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud."  [Mot. at 37 (citing *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001))].  Thus, "bare allegations of motive and opportunity will not suffice to demonstrate scienter because, to hold otherwise, 'would effectively eliminate the state of mind requirement as to all corporate officers and defendants.'"  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867 (5th Cir. 2003).  In particular, the motive to protect executive compensation is "common to all corporate executives and, thus, too generalized to demonstrate scienter."  *Kalnit*, 264 F.3d at 139; *see also Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 434 (5th Cir. 2002) (no scienter where executives were "motivated to commit fraud by the need to raise capital, the desire for enhanced incentive compensation and the desire to sell stock at inflated prices").  Here, the Opposition attempts to clarify the SEC's theory:  that Mr. Brda "was motivated to inflate Torchlight's stock price—which was trading below \$1.00—and to raise funds at inflated prices to pay drilling costs and his

---

[11] *See also United States v. Mulheren*, 938 F.2d 364, 369 (2d Cir. 1991) (government could not prove market manipulation where it did not show defendant purchased stock "for the sole purpose" of altering the price); *Technest Holdings, Inc. v. Deer Creek Fund LLC*, 2008 WL 3449941, at \*11 (S.D.N.Y. Aug. 12, 2008) ("Actions taken, at least in part, to promote or advance [defendant's] economic self-interest are, by definition, not taken for the sole purpose of harming [plaintiff].") (citation omitted).

compensation." [Opp. at 53.]  But these alleged motives are still too generalized to support scienter because they are common to all corporate executives.  *See Abrams*, 292 F.3d at 434.  Thus, the motive allegations against Mr. Brda are insufficient to plead scienter.

*Full Disclosure*.  There can be no scienter, or even negligence, in repeating truthful information already in the public domain because truthful disclosures inform, rather than deceive, investors.  [*See* Mot. at 34]; *see also Neiman v. Bulmahn*, 854 F.3d 741, 750 (5th Cir. 2017) (disclosure of truthful information weighed against inference of scienter); *Overstock II*, 2021 WL 4267920, at *14 (D. Utah Sept. 20, 2021), *aff'd*, 119 F.4th 787 (10th Cir. 2024) ("it defies common sense that Defendants would attempt to issue an 'illegal' dividend or attempt to mislead investors by fully disclosing their plan not to register the dividend").

## V.    THE SEC FAILS TO ALLEGE NEGLIGENCE.

The SEC does not dispute that a "tag-along claim will fail for the same reasons afflicting a Rule 10b-5(c) claim, with the exception of the requisite mental state." [Mot. at 44.]  Rather than refute that "the SEC fail[ed] to identify any negligence-based theory," [*id.*], the SEC asserts "the same factual allegations discussed above showing that Brda acted with scienter also plausibly establish that he acted, at minimum, negligently." [Opp. at 45.]  In other words, the SEC admits that it is not alleging an independent negligence-based theory.

## VI.    THE SEC FAILS TO PLEAD A PROXY FRAUD CLAIM.

The SEC does not dispute that "[t]he Complaint has no allegations to support [the solicitation] prong" of the Proxy Fraud Claim.  [*See* Mot. at 44 n.42.]  Even under the standard urged by the SEC, the Proxy Fraud Claim still fails as to Mr. Brda because the "the Supreme Court has already foreclosed a Proxy Fraud Claim that hinges on the theory the SEC relies." [*Id.* at 45 (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1096 (1991).]

**VII.    THE SEC FAILS TO PLEAD AIDING AND ABETTING CLAIMS.**

The SEC does not dispute that its aiding and abetting claims are derivative of its alleged misrepresentation claim for "commercially reasonable efforts" and doubles down on its "generic contracts" theory, that is unsupported by law and cannot survive Rule 9 scrutiny.  [Opp. at 58–59.]

**VIII.    REQUEST FOR DISGORGEMENT AND OFFICER/DIRECTOR BAR ARE IMPROPER.**

The SEC argues that Mr. Brda's motion to strike unjustifiable relief "should be rejected as a matter of law." [Opp. at 59.]  But the Motion provided law striking similar relief sought by the SEC in similar circumstances at the pleadings stage.  [*See* Mot. at 59–60 (citing *SEC v. Berry*, 2008 WL 4065865, at *9 (N.D. Cal. Aug. 27, 2008).]  The SEC does not attempt to distinguish *Berry*.  Even more egregious, in the Opposition, the SEC expressed its intent to seek to disgorge more than what was even pled in the Complaint.  [*See* Opp. at 60 ("disgorge, *at a minimum*, Brda's $1.5 million bonus") (emphasis added).]

**IX.    LEAVE TO AMEND IS NOT PROPERLY MADE.**

The SEC's alternative request for leave to amend is improper.  [Opp. at 60.]  Pursuant to the Eastern District of Texas Local Rules, a party moving "for leave to file a document should [file the motion] separately and immediately before the document for which leave is sought."  Local Rule CV-7(k).  Despite the SEC's self-described "abundance of caution," [Opp. at 60], it did not: (i) file a proposed amended pleading; (ii) file a separate motion; (iii) nor did the SEC confer or attempt to confer.  *See* Local Rules CV-7(h) and (i); *see also CHU de Quebec - Universite Laval v. Dreamscape Dev. Grp. Holdings, Inc.*, 2023 WL 2695092, at *3 (E.D. Tex. Mar. 29, 2023) (Jordan, J.) (denying leave to amend for failure to comply with Local Rule CV-7(k)).

**CONCLUSION**

For the foregoing reasons, Defendant Brda respectfully requests the Court dismiss all asserted claims for failure to state a claim upon which relief can be granted.

Dated:  March 21, 2025.

Respectfully submitted,

*/s/ Jason S. Lewis*

Jason S. Lewis
  Texas Bar No. 24007551
  jason.lewis@us.dlapiper.com
Jason M. Hopkins
  Texas Bar No. 24059969
  jason.hopkins@us.dlapiper.com
Ryan D. Lantry
  Texas Bar No. 24125130
  ryan.lantry@us.dlapiper.com
**DLA PIPER LLP**
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone:  214.743.4546
Facsimile:  214.743.4545

**ATTORNEYS FOR DEFENDANT JOHN BRDA**

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing brief on all counsel of record via the Court's CM/ECF

system on March 21, 2025.

*/s/ Jason S. Lewis*

Jason S. Lewis

**DEFENDANT BRDA'S REPLY IN SUPPORT OF MOTION TO DISMISS – PAGE 16**