## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br><br>     - v -<br><br>JOHN BRDA,<br>GEORGIOS PALIKARAS,<br><br>           Defendants. | Civil No. 4:24-CV-1048-SDJ |

## DEFENDANT JOHN BRDA'S REPLY IN SUPPORT OF
## MOTION TO EXCLUDE IMPROPERLY OBTAINED EVIDENCE [DKT. #54]

Pursuant to Rules 26, 30, and 45 of the Federal Rules of Civil Procedure and in accordance with Local Rule CV-7(a)(2), Defendant John Brda files this reply brief in support of his Motion to Exclude Improperly Obtained Evidence ("**Motion**") [Dkt. #54] against Plaintiff Securities and Exchange Commission.[1]

---

[1] Capitalized terms having the meanings set forth in the Motion and any references to page numbers are to the ECF stamped filing page numbers.

## PRELIMINARY STATEMENT

The SEC's response in opposition to the Motion (the "**Response**") [Dkt. #61] further underscores "the SEC is using its investigative power to conduct discovery into matters squarely relevant to this case, but that discovery is being conducted in violation of the Court's order and the Federal Rules of Civil Procedure, and without any oversight whatsoever." [Mot. at 12.]  The SEC attempts to unilaterally draw the temporal line in the sand of this lawsuit's relevancy to the time period "***before*** the June 28, 2021 merger between Torchlight and Meta I."  [Resp. at 5 (emphasis in original).]  The SEC's relevant time period argument is a straw man and fails for numerous independent reasons.

*First*, in the Torchlight Matter, the Torchlight Subpoena Mr. Brda received identified the relevant "period January 1, 2020 to the present" (*i.e.*, after the June 28, 2021 merger).  [Dkt. #54-2 at 9.]  The SEC's investigation of the Torchlight Matter began in August 2021 and was conducted across nearly three years.  [*See* Mot. at 10–11.]  The materials in the SEC's investigative file from the Torchlight Matter unquestionably include numerous relevant documents and other materials from ***after*** the June 28, 2021 merger.  In other words, the scope of relevant evidence in this case includes post-merger documents and communications.

*Second*, the SEC falsely describes Mr. Brda's post-merger bonus as the "sole exception" to its self-pronounced rule that everything relevant in this case pre-dated the merger.  [Resp. at 7 n.3.]  The Complaint alleged that Mr. "Brda misrepresented in Torchlight's public filings that Torchlight would make 'commercially reasonable efforts' to sell its oil and gas assets and distribute the net proceeds to holders of the Preferred Dividend within six months of the merger closing," but that, "[i]n reality, there were no prospects for selling Torchlight's oil and gas assets within six months of the merger closing, and Brda had started planning to spin off the assets as

soon the merger agreement was signed." [Dkt. #1 ¶ 68.] All of that necessarily occurred post-merger and is thus contrary to the SEC's position in its Response.

*Third*, the SEC's Response does not engage with the actual substance of the Subpoenas it issued. [*See* Mot. at 10–11; *see also* Dkt. #54-4 at 10–11.] The SEC's Subpoenas, purportedly issued in the name of the MMTLP Matter, expressly seek communications with Torchlight's former employees, board members, and consultants—which would necessarily only contain pre-merger communications and information (*i.e.*, this lawsuit). The Subpoenas also sought communications with Torchlight's current or former investors. The Subpoenas even included "John Brda" and "TRCH" as defined terms. The substance of the requests contained in the SEC's Subpoenas flatly contradict the SEC's representation to the Court that its extrajudicial Subpoenas bear no relevance to this case.

*Fourth*, the same SEC staff—namely, SEC Staff attorney Christopher Rogers of the Fort Worth Regional Office—simultaneously:  (i) conducted the Torchlight Matter investigation; (ii) filed this lawsuit; (iii) continues to participate in this lawsuit, including attending party conferrals and signing pleadings; (iv) continues to investigate the MMTLP Matter; and (v) improperly issued and signed the Subpoenas to third parties. The SEC avers that it "does not believe the MMTLP materials are relevant to the claims in this case and at most may incidentally include some limited amount of discoverable information." [Resp. at 11.] The SEC knew its proposal is faulty for reasons discussed with it by undersigned counsel during the conferral. For instance, when Mr. Rogers learns of a relevant document from the MMTLP Matter as a result of the improper third party Subpoenas, he cannot unknow what he learns and somehow compartmentalize the information. There is nothing preventing Mr. Rogers and the SEC Staff from then crafting a specific request for that document in this lawsuit that he only knows about as

result of the MMTLP investigation.[2]  Mr. Rogers and the SEC cannot selectively have one foot in this lawsuit and the other foot in the MMTLP investigation, invoking the Federal Rules when convenient and claiming an exemption from Court oversight when strategic.

*Fifth*, the full scope and extent of the SEC's impropriety and discovery abuse under the guise of the MMTLP Matter is unknown; the SEC has not explained to Mr. Brda or to the Court what it is doing.

*Sixth*, rather than await the Court's ruling on the Motion after it was filed on February 26, 2025, the SEC issued another subpoena for the same third party the very next day on February 27, 2025.[3]  And the SEC affirmed it "intends to continue to send" third party subpoenas.  [Resp. at 9.]

*Finally*, if the SEC's position was taken to its literal and logical end, then no party in this lawsuit would be permitted to collect any discovery arising from June 29, 2021 to present because—according to the SEC—it is flatly irrelevant.  The Court should grant Mr. Brda's Motion.

## ARGUMENT

## I.    THE SUBPOENA IS RELATED TO THIS LAWSUIT.

For the reasons set forth in the Motion and summarized above, the SEC's third-party Subpoenas are squarely related to this lawsuit, which the SEC concedes "may incidentally include some limited amount of discoverable information."  [Resp. at 11.]  The categories of documents sought by the Subpoenas are targeted to obtain documents relevant to allegations made in the Complaint.  [*See* Mot. at 10–11.]

---

[2] An analogy to *Brady* material is apt.  If the purportedly separate and distinct investigation truly is either, the SEC would have little difficulty agreeing not only to a bar (in this case) on evidence collected through the investigation, but also any fruit derived from that poisonous tree.  In pre-filing conversations, the SEC flatly refused to agree to either.  Instead, the SEC offered only to consider any request for production that Mr. Brda might make in this case seeking documents located by the SEC in its illicit investigation.

[3] A copy of the subpoena is attached as **Exhibit A**.  The name of the recipient is redacted to protect privacy.  Mr. Brda will provide unredacted copies to the Court *in camera* should the Court desire.

## II.    THE SEC IS BOUND BY THE FEDERAL RULES OF CIVIL PROCEDURE.

"Although the Federal Rules of Civil Procedure do not bind administrative agencies in conducting purely administrative investigations, . . . administrative agencies are unquestionably bound by the rules when they are parties in civil actions." *FTC v. Turner*, 609 F.2d 743, 745 n.3 (5th Cir. 1980).  Once the SEC commenced this civil action, it is not permitted to decide, without any judicial oversight, whether or not it will comply with the Federal Rules in seeking relevant discovery.

Bizarrely, the SEC makes the same (rejected) argument here that it made a decade ago in *SEC v. Life Partners Holdings, Inc.*, No. 1:12-CV-00033-JRN, 2012 WL 12850253 (W.D. Tex. Aug. 17, 2012), which the SEC is simultaneously trying to distance itself from.  For example, the SEC argues that "federal courts have recognized that the SEC may continue to conduct an administrative investigation without complying with the Federal Rules of Civil Procedure after litigation is filed."  [Resp. at 12.][4]  Attached as **Exhibit B** is the SEC's July 11, 2012 response brief from *Life Partners*.  [*See* Ex. B. at 6 ("In fact, courts have long recognized that federal agencies, including the SEC, may continue to investigate after filing suit." (citing *Bowles*, *F.N. Wolf & Co.*, and *Loyd*)).]  None of these cases support what the SEC has done here; namely, circumventing the Federal Rules in order to obtain evidence relevant to claims in this lawsuit.

Indeed, the SEC's own Enforcement Manual expressly cautions to staff the dangers of issuing investigative subpoenas after commencement of a related civil action because "[a] court might conclude that the use of investigative subpoenas to conduct discovery is a misuse of the SEC's investigative powers and circumvents the court's authority and the limits on discovery in

---

[4] (Citing *Bowles v. Bay of N.Y. Coal & Supply Corp.*, 152 F.2d 330 (2d Cir. 1945); *SEC v. F.N. Wolf & Co., Inc.*, 1993 WL 568717 (S.D.N.Y. Dec. 14, 1993); *SEC v. Loyd*, No. 8:02-cv-1613-T-26EAJ (M.D. Fla. Dec. 3, 2002)).

**DEFENDANT BRDA'S REPLY IN SUPPORT OF MOTION TO EXCLUDE – PAGE 4**

the Federal Rules of Civil Procedure."  Manual § 3.1.3.  The SEC knows that it "should exercise judgment when deciding whether to continue investigating while litigating a related case."  *Id.* Specifically, "[i]n assessing whether to issue subpoenas, the staff should consider all relevant facts and circumstances, including the degree of factual and legal overlap, the prior course of the litigation and investigation, and the likely views of counsel and the judge assigned to the case" and "should revisit the issue whenever contemplating the service of investigative subpoenas that could be seen as relating to pending litigation."  *Id.*

In short, "while the filing of a civil suit does not inhibit the SEC's broad authority to investigate securities-law violations and that the SEC is not bound by the FRCP when investigating potential securities-law violations pursuant to its investigatory power, the agency is clearly bound by the Rules when it is [conducting third party discovery] in order to elicit testimony regarding allegations made in the Complaint for use against Defendants."  *SEC v. Life Partners Holdings, Inc.*, 2012 WL 12918375, at *1–2 (W.D. Tex. Sept. 27, 2012) (citing § 3.1.3 of the Manual).

### III.    MR. BRDA'S REQUESTED RELIEF SHOULD BE GRANTED.

The SEC's conduct is even more egregious than in *Life Partners* because here:  (i) the SEC continues to improperly seek third party discovery after the Motion was filed; (ii) the SEC was on notice of the potential consequences after the *Life Partners* ruling; (iii) discovery had not even commenced here; and (iv) not only is the SEC violating the Federal Rules of Civil Procedure, but also the Court's January 24, 2025 Order.  [*See* Dkt. #45.]  As a result, the Court has the full panoply of its various sanction powers to be deployed at the Court's broad discretion.  *See Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993).

### CONCLUSION

Defendant John Brda respectfully requests the Court grant the Motion in its entirety and that he be awarded the relief sought therein.

Dated:  March 26, 2025.

Respectfully submitted,

/s/ *Jason S. Lewis*

Jason S. Lewis
  Texas Bar No. 24007551
  jason.lewis@us.dlapiper.com
Jason M. Hopkins
  Texas Bar No. 24059969
  jason.hopkins@us.dlapiper.com
Ryan D. Lantry
  Texas Bar No. 24125130
  ryan.lantry@us.dlapiper.com
**DLA PIPER LLP**
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone:  214.743.4546
Facsimile:  214.743.4545

**ATTORNEYS FOR DEFENDANT JOHN BRDA**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing brief on all counsel of record via the Court's CM/ECF system on March 26, 2025.

/s/ *Jason S. Lewis*
Jason S. Lewis