AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Texas

| | |
|---|---|
| Securities and Exchange Commission<br>*Plaintiff*<br>v.<br>John Brda,<br>Georgios Palikaras<br>*Defendant* | )<br>)<br>) Civil Action No. 4:24-cv-01048-SDJ<br>)<br>)<br>) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS**
**OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: KPMG LLP
2323 Ross Avenue, Suite 1400, Dallas, Texas 75201
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A.

| Place: Holland & Knight LLP<br>One Arts Plaza, 1722 Routh Street, Suite 1500<br>Dallas, Texas 75201 | Date and Time:<br>09/04/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/21/2025

*CLERK OF COURT*

OR

_____           /s/ Jessica B. Magee
*Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Georgios Palikaras
_____, who issues or requests this subpoena, are:

Jessica B. Magee; Holland & Knight LLP, 1722 Routh Street, Ste. 1500, Dallas, TX 75201; jessica.magee@hklaw.com; 214.969.1375

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:24-cv-01048-SDJ

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____
_____
on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Pursuant to Fed. R. Civ. P. 45, Georgios Palikaras hereby requests that You produce Documents responsive to the following requests for production ("Requests").

### I. DEFINITIONS AND INSTRUCTIONS

As used herein, the following definitions and instructions shall apply:

1. "And" and "Or." The terms "and" and "or" should be interpreted to provide the broadest meaning to a request and may not be used to limit the Documents provided in response to the request.

2. "ATM Offering." The term "ATM Offering" refers collectively to the at-the-market equity offering programs conducted by Torchlight pursuant to a single Registration Statement on Form S-3 (No. 333-256632), filed with the SEC on May 28, 2021 and declared effective on June 14, 2021, which registered an aggregate offering amount not to exceed $250 million. The ATM Offering includes: (a) an initial issuance of up to $100 million of Torchlight common stock pursuant to a Sales Agreement dated June 14, 2021, with Roth Capital Partners, LLC acting as the exclusive sales agent; and (b) a subsequent expansion and utilization of the remaining $150 million in registered capacity under the same Form S-3 shelf, completed prior to the closing of the merger with Meta I on or about June 28, 2021. The term includes all related offering documents, sales agreements, SEC filings, investor communications, internal board or management authorizations, and any disclosures concerning the structure, timing, intent, or market impact of the offerings.

3. "Communication." The term "Communication" means the transmittal or receipt of information in whatever form through any medium including, but not limited to, email, text, instant message, and messaging apps or chat platforms such as WhatsApp, Telegram, Signal, and Discord.

4. "Complaint." The term "Complaint" refers to the complaint filed by the SEC in the above-captioned lawsuit, filed on June 25, 2024, currently pending in the United States District Court for the Eastern District of Texas, Sherman Division.

5. "Concerning" and "Regarding." The terms "concerning" and "regarding" include referring to, alluding to, responding to, relating to, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, or constituting.

6. "Defendants." The term "Defendants" refers to the named Defendants in the above-captioned lawsuit, John Brda and Georgios Palikaras.

7. "Document" or "Documents." The terms "Document" or "Documents" shall mean both Documents and Electronically Stored Information as described in Federal Rule of Civil Procedure 34(a), and shall include, without limitation, every writing or record of every type or description that is or has been in the possession, custody, or control of the party responding to these Requests or of which the party responding to these Requests has knowledge, including, without limitation, originals (or copies where originals are not available) and drafts of all papers, letters, correspondence, e-mails, text messages, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, photographs, films, videotapes, voice records, transcriptions, notes or sound records of any type of personal or telephone conversations or meetings or conferences, minutes of director(s) or committee(s) meetings, other minutes, interoffice and interagency communications or correspondence, stenographer's notebooks, meeting notes, calendars, appointment books, call logs, telephone slips, diaries, time sheets or logs, job or transaction files, drawings, maps, graphs, reports, studies, surveys, written forecasts projects, analyses, agreements, journals, vouchers, working papers, drafts, instructions, reports of examination, findings of investigation, statements of witnesses, claim forms, claim reports,

2

statistical compilations, websites, social media postings and messages, Internet postings and messages, computer disks, tapes, flash drives, external drives or other computer data storage devices; every copy of such writing or records where the original is not in the possession, custody, or control of the party responding to these Requests; and each and every copy of each such writing or record where such copy is not an identical copy of an original or where such copy contains any commentary, notation, or marginalia that does not appear on the original writing or record.

8. "Electronically Stored Information" or "ESI." The terms "Electronically Stored Information" or "ESI" shall mean electronic information that is stored in a medium from which it can be retrieved and examined. ESI shall be produced in native format with metadata intact. Searchable PDFs are required for scanned documents. It includes, but is not limited to, all electronic files that are electronically stored, including but not limited to: voicemail messages and files; e-mail messages and files; deleted files; temporary files; system-history files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer-activity logs; files or data contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, integrated-circuit cards (e.g., SIM cards), or any cloud-based or online storage media accessible to You; text, SMS, or multimedia messages (e.g. SLACK); and social media postings or messages, including direct messages and posts. "Electronically Stored Information" or "ESI" also includes all metadata associated with any such electronically stored information or file.

9. "Exchanged Between." A Document or Communication "exchanged between" two persons shall include and Document or Communication that was transmitted between those two persons, including where one or more third parties were addressed or copied.

10. "February 2021 Roth Underwritten Offering" The term "Roth Underwritten Offering" refers to the firm-commitment underwritten public offering of 23,000,000 shares of common stock by Torchlight at a price of $1.20 per share, which closed on or about February 10, 2021. This offering was managed exclusively by Roth Capital Partners, LLC and generated approximately $27.6 million in gross proceeds. The Roth Underwritten Offering was conducted pursuant to a separate and independent registration statement on Form S-3 (Registration No. 333-249062), which was filed with the U.S. Securities and Exchange Commission and declared effective on October 8, 2020. For the avoidance of doubt, this offering is entirely distinct from Torchlight's later ATM equity offering program conducted under Form S-3 (Registration No. 333-256632).

11. "Litigation." The term "Litigation" shall mean Civil Action No. 4:24-cv-01048 styled *Securities and Exchange Commission v. Brda et al.,* originally filed on June 25, 2024 in the United States District Court for the Southern District of New York (Civil Action No. 1:24-cv-04806) and now pending in the United States District Court for the Eastern District of Texas, Sherman Division.

12. "Merger." The term "Merger" refers to the reverse merger between Torchlight and Meta I, which closed on June 28, 2021.

13. "Meta I." The term "Meta I" refers to Metamaterial, Inc. (CSE: MMATF), a nanotechnology company that was publicly traded on the Canadian Securities Exchange, and includes all of its officers, directors, employees, agents, representatives, and all other persons acting or purporting to act on its behalf.

14. "Meta II." The term "Meta II" refers to Meta Materials, Inc. (Nasdaq: MMAT), a Nevada nanotechnology company created on June 28, 2021 through the merger of Torchlight and

Meta I, and includes all of its officers, directors, employees, agents, representatives, and all other persons actin or purporting to act on its behalf.

15. "Meta II Settlement Action." The term "Meta II Settlement Action" refers to SEC's settled action against Meta II in In re Meta Materials, Inc., Securities Act Release No. 11292, Exchange Act Release No. 100415 (June 25, 2024), available at https://www.sec.gov/files/litigation/admin/2024/33-11292.pdf.

16. "Person." The term "person" is gender neutral, and includes the plural, as well as the singular, and means any natural person, a business, a legal or governmental entity, or an association.

17. "Preferred Dividend" means the Series A Preferred Stock dividend issued by Torchlight in connection with the Merger, including all planning, structuring, valuation, and public communications regarding the same.

18. "Relating," "Related," or "Which Relate(s)." A Document "relating," "related," or "which relate(s)" to any given subject means any Document that constitutes, contains, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject, including, without limitation, Documents concerning the preparation of other Documents.

19. "SEC." The term "SEC" refers to the U.S. Securities and Exchange Commission and its staff, agents, representatives, employees, contractors, assigns, attorneys, and each and every person acting on its behalf or at its direction.

20. "Statement." The term "Statement" refers to (i) a written statement signed or otherwise adopted or approved by the person making it, and/or (ii) a stenographic, mechanical, electrical, or other recording of an oral statement, or transcription thereof.

21. "Torchlight." The term "Torchlight" refers to Torchlight Energy Resources, Inc (Nasdaq: TRCH), an oil and gas exploration company that was headquartered in Plano, Texas and publicly traded on the Nasdaq exchange, and includes all of its officers, directors, employees, agents, representatives, and all other persons actin or purporting to act on its behalf.

22. "You," "Your," and "KPMG." The terms "You," "Your," and "KPMG" refer to the KPMG LLP KPMG LLP Canada, and any related entity, including its predecessors, successors, parents, subsidiaries, affiliates, and branch offices, and all of its officers, directors, employees, agents, representatives, and all other persons acting or purporting to act on its behalf

23. The singular includes the plural and the plural includes the singular.

24. Unless otherwise indicated, these requests call for documents from the time period May 1, 2020, to the present (the "Relevant Time Period").

25. The Requests follow the requirements set forth in the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Eastern District of Texas (the "Local Rules").

26. Notwithstanding any definition above, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules

27. With respect to each Request, You shall identify and/or produce all Documents which are known to You or which can be located or discovered by You through diligent effort on the part of You, Your employees, representatives, attorneys, or accountants, including but not limited to all Documents which are in the possession of you or your representatives, attorneys, or accountants, or accessible to You or Your representatives, attorneys, or accountants. You shall categorize each document so as to conform to the numbered request.

28. If a Request asks for Documents that no longer exist, then in Your response to that Request: (1) identify each such Document; (2) identify all information that was contained in each such Document; (3) state the date when each such Document ceased to exist; (4) state what happened that caused each such Document to cease to exist; (5) state why each such Document was caused to or happened to cease to exist; (6) state the time periods during which such types of Documents were maintained; (7) identify each person having knowledge of the circumstances under which each such Document ceased to exist; and (8) identify each person having knowledge of each such Document and state the substance of said knowledge.

29. The obligations regarding the assertion of claims of privilege set forth in Federal Rule of Civil Procedure 45(e)(2) are incorporated by reference in the Requests. As to any Document withheld from production on any ground, state or describe: (i) the type of Document; (ii) the general subject matter of the Document; (iii) the date of the Document; (iv) the Document's author; and (v) the Document's recipient(s).

30. The Requests are continuing in nature and, to the extent that Your response may be enlarged, diminished, or otherwise modified by information acquired subsequent to Your initial response, You are required promptly to produce supplemental responses reflecting such changes.

## II.     DOCUMENT REQUESTS

1. All Documents and Communications relating to the Preferred Dividend, the Merger, the ATM Offering, the February 2021 Roth Underwritten Offering, the Meta II Settlement Action, the Litigation, or Defendants including but not limited to engagement letters, fee arrangements, work product, analyses, presentations, meeting notes, internal memoranda, reports, and correspondence with Meta I, Torchlight, or any third party.

2. All financial analyses, valuation materials, or due diligence materials prepared or received by You in connection with the Preferred Dividend, Merger, the ATM Offering, the February 2021 Roth Underwritten Offering, the Meta II Settlement Action, the Litigation, or Defendants, including but not limited to:

   (a) Analyses of transaction structure and terms;

   (b) Fairness opinions or equivalent analyses;

   (c) Valuations of Torchlight's oil and gas assets, including the Orogrande and Hazel projects;

   (d) Analyses of the Preferred Dividend structure, purpose, or value; and

   (e) Market analyses or comparable transaction analyses.

3. All Documents and Communications concerning presentations or written recommendations made by You, or at Your direction, to Meta I's or Meta II's management, board of directors, or any committee, member, or representative thereof, regarding the Preferred Dividend, the Merger, the ATM Offering, the February 2021 Roth Underwritten Offering, the Meta II Settlement, the Litigation, or Defendants.

4. All Documents and Communications concerning Your analysis, assessment, or evaluation of Meta I's business, operations, financial condition, or prospects.

5. All Documents and Communications concerning Your analysis, assessment, or evaluation of Torchlight's business, operations, financial condition, prospects, or risks, including analyses of Torchlight's oil and gas assets.

6. All Documents and Communications concerning any potential purchasers or bidders for Torchlight's oil and gas assets.

7. All Documents and Communications concerning efforts to market Torchlight's oil and gas assets for possible sale.

8. All Documents and Communications concerning any valuation, assessment, or analysis of Torchlight's oil and gas assets, including Your assessment of the marketability of such assets and potential timeframes for liquidation.

9. All Documents and Communications concerning the timing, structure, purpose, risks, potential benefits, or the anticipated value of the Preferred Dividend, the Merger, the ATM Offering, or the February 2021 Roth Underwritten Offering.

10. All Documents and Communications concerning any discussions, meetings, or presentations about the potential impact of the Preferred Dividend on Torchlight's stock price or market dynamics, including any discussion of short interests, short sellers, short selling, or short squeezes.

11. All Documents and Communications between You and Roth Capital Partners, LLC concerning the Preferred Dividend, the Merger, the ATM Offering, the February 2021 Roth Underwritten Offering, the Meta II Settlement Action, the Litigation, or Defendants.

12. All Documents and Communications received from or produced to the SEC concerning Meta I, Meta II, Torchlight, or Defendants, including but not limited to correspondence, emails, memorandum, meeting notes, summaries, analyses, and filings.

13. All Documents and Communications received from or produced to any state or federal regulatory or law enforcement agency or any self-regulatory organization concerning Meta I, Meta II, Torchlight, or Defendants, including but not limited to correspondence, emails, memorandum, meeting notes, meeting notes, summaries, analyses, and filings.

14. All Documents and Communications relating to Your audit or review of Meta I and Meta II during the Relevant Time Period, including but not limited to:

    (a) All audit work papers, planning materials, risk assessments, internal control evaluations, substantive testing documentation, audit conclusions, and management letters for Meta I and Meta II;

    (b) All Communications exchanged between You and Meta I's or Meta II's management, board of directors, audit committee, or other representatives concerning financial statements, accounting practices, internal controls, regulatory compliance, or audit findings;

    (c) All Documents and Communications concerning Your assessment of the accounting treatment, financial reporting, or disclosures related to the Preferred Dividend, the Merger, the ATM Offering, or the February 2021 Roth Underwritten Offering;

    (d) All Documents and Communications concerning any identified audit adjustments, control deficiencies, management override concerns, or disagreements with management regarding accounting treatments or disclosures; and

    (e) All audit planning memoranda, engagement letters, representation letters, and management letters relating to Meta I and Meta II.